*Appeal No. 23-15199*

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

SAFARI CLUB INTERNATIONAL,
an Arizona nonprofit corporation, et al.,

Plaintiff-Appellants,

v.

ROB BONTA, in his official capacity as
Attorney General of the State of California,

Defendant-Appellee.

---

On Appeal from the United States District Court
for the Eastern District of California
Hon. Dale A. Drozd
Case No. 2:22-cv-01395-DAD-JDP

---

## APPELLANTS' OPENING BRIEF

---

Michael B. Reynolds
Colin R. Higgins
Cameron J. Schlagel
SNELL & WILMER L.L.P.
600 Anton Blvd, Suite 1400
Costa Mesa, California 92626-7689
Telephone: 714.427.7000
Facsimile: 714.427.7799
mreynolds@swlaw.com
chiggins@swlaw.com
cschlgel@swlaw.com

Attorneys for Plaintiff-Appellants

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Safari Club International, the United States Sportsmen's Foundation, and the

Congressional Sportsmen's Foundation have no parent companies. Nor does any

publicly-held company have a 10% or greater ownership interest in Safari Club

International, the United States Sportsmen's Foundation, or the Congressional

Sportsmen's Foundation.


Dated: March 10, 2023

SNELL & WILMER L.L.P.


By: */s/ Cameron J. Schlagel*

Michael B. Reynolds
Colin R. Higgins
Cameron J. Schlagel

Attorneys for Plaintiff-Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellants respectfully request oral argument. This cases raises important questions about the Fifth Amendment's void-for-vagueness doctrine, the First Amendment rights to free speech, association, and assembly, and the Fourteenth Amendment right to equal protection. Counsel's responses to this Court's questions may aid the Court in its decisional process. *See* Fed. R. App. P. 34(a)(1).

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........................................................................ 2

STATEMENT REGARDING ORAL ARGUMENT .............................................. 3

INTRODUCTION ............................................................................................... 16

JURISDICTIONAL STATEMENT ..................................................................... 17

STATEMENT OF ISSUES .................................................................................. 17

CIRCUIT RULE 28.2.7 STATEMENT ................................................................ 18

STATEMENT OF THE CASE ............................................................................. 18

I. Statutory Background. ............................................................................ 18

    A. Section 22949.80 Singles Out "Firearm Industry Members" and Prohibits Them from Engaging in a Broad Range of Advertising and Marketing of Lawful Products .................................. 19

    B. Section 22949.80 Requires Courts to Evaluate the Content of Advertisements and Grants Them Nearly Unlimited Discretion in Determining Whether an Advertisement Violates the Statute ........ 21

II. Factual and Procedural Background. ...................................................... 23

III. The District Court's Order ...................................................................... 25

SUMMARY OF ARGUMENT ............................................................................ 28

STANDARD OF REVIEW .................................................................................. 30

ARGUMENT ....................................................................................................... 31

I. The District Court Erred in Holding that Appellants Are Unlikely To Succeed on the Merits of Their Claim That Section 22949.80 Is Unconstitutionally Vague. ...................................................................... 31

    A. Section 22949.80 Is Subject to Strict Review for Vagueness Because it Regulates Protected Speech. .............................................. 32

    B. Section 22949.80 is Unconstitutionally Vague. ................................. 33

        1. Section 22949.80 Fails to Provide Fair Notice. ....................... 33

        2. Section 22949.80 Invites Arbitrary Enforcement. .................... 36

            a. The Factors are Nonexclusive and Unweighted. ............ 39

TABLE OF CONTENTS
(continued)

Page

b.    The Six Factors are Vague and Ambiguous. ................39

II.   The District Court Erred in Holding That Appellants Are Unlikely To Succeed on the Merits of Their Claims That Section 22949.80 Violates the First Amendment. ..........................................................42

A.    Section 22949.80 Violates the First Amendment Overbreadth Doctrine. ......................................................................42

B.    Section 22949.80 Violates the First Amendment. ............45

1.    The District Court Erred in Applying the *Central Hudson* Test, Instead of Strict Scrutiny, Because Section 22949.80 is Impermissibly Content-Based on its Face and Regulates Truthful Speech. ...............................45

a.    Section 22949.80 Is Viewpoint-Based and Facially Invalid Under the First Amendment. ...........................46

b.    Strict Scrutiny Applies Because Section 22949.80 Is Content- and Speaker-Based and Regulates Truthful Commercial Speech Concerning Lawful Products. ........................................................49

c.    Section 22949.80 Impermissibly Regulates Speech that is Inextricably Intertwined with Constitutionally-Protected Activity. ...............................56

2.    Section 22949.80 Violates the First Amendment's Protection of Commercial Speech under *Central Hudson*. ......60

a.    Section 22949.80 Restricts Truthful Speech Concerning Lawful Activity. .........................................61

b.    The State Has No Interest in Banning Appellants' Protected Speech. ............................................64

c.    The State Cannot Establish That Section 22949.80 Directly and Materially Advances a Legitimate Government Interest. .......................................65

d.    Section 22949.80 Is More Extensive than Necessary. ........................................................69

## TABLE OF CONTENTS
### (continued)

Page

C.  Section 22949.80 Violates Appellants' Right to Associate. ...............73

D.  Section 22949.80 Unconstitutionally Discriminates against Appellants......................................................................................75

III. Appellants Satisfy the Remaining Preliminary Injunction Factors. ..............76

A.  Irreparable Harm is Presumed Because Section 22949.80 Infringes on Appellants' Rights under the First and Fourteenth Amendments.......................................................................................76

B.  The Balance of the Equities and Public Interest Warrant Preliminary Relief. ..............................................................................77

CONCLUSION .....................................................................................................79

NOTICE OF RELATED CASE ...........................................................................80

# TABLE OF AUTHORITIES

Page

## Cases

*44 Liquormart, Inc. v Rhode Island*,
  517 U.S. 484 (1996) ................................................................. 65, 69, 70

*A.C.L.U. of Nevada v. City of Las Vegas*,
  466 F.3d 784 (9th Cir. 2006) .................................................................. 51

*ACLU v. Alvarez*,
  679 F.3d 583 (7th Cir. 2012) .................................................................. 78

*Am. Freedom Def. Initiative v. King Cnty.*,
  904 F.3d 1126 (9th Cir. 2018) ................................................................ 47

*Amidon v. Student Ass'n of State Univ. of New York at Albany*,
  508 F.3d 94 (2d Cir. 2007) ..................................................................... 39

*Aschcroft v. Free Speech Coal.*,
  535 U.S. 234 (2002) ................................................................................ 65

*Ashcroft v. Free Speech Coal.*,
  535 U.S. 234 (2002) ................................................................................ 66

*Ass'n of Firearms Retailers v. City of Chicago*,
  961 F. Supp. 2d 928 (N.D. Ill. 2014) ..................................................... 58

*Austin v. Mich. Chamber of Commerce*,
  494 U.S. 652 (1990) ................................................................................ 75

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
  140 S. Ct. 2335 (2020) ..................................................................... 52, 55

*Bates v. State Bar of Arizona*,
  433 U.S. 350 (1977) ...................................................................... 42, 66, 78

*Bd. of Tr. of State Univ. of N.Y. v. Fox*,
  492 U.S. 469 (1989) ................................................................................ 58

*Bolger v. Youngs Drug Prods.*,
  463 U.S. 60 (1983) ......................................................................... 57, 66

*Brandenburg v. Ohio*,
  395 U.S. 444 (1969) ................................................................................ 58

TABLE OF AUTHORITIES
(continued)

Page

*Buckley v. Valeo,*
424 U.S. 1 (1976) ..................................................................................73

*Butler v. Michigan,*
352 U.S. 380 (1957) ..............................................................................70

*California v. Azar,*
911 F.3d 558 (9th Cir. 2018) ...............................................................77

*Carey v. Population Servs. Int'l,*
431 U.S. 678 (1977) ................................................................. 57, 58, 60

*Carter v. Welles-Bowen Realty, Inc.,*
719 F. Supp. 2d 846 (N.D. Ohio 2010) ................................................37

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,*
447 U.S. 557 (1980) ...................................................................... passim

*Chalk v. U.S. Dist. Ct. (Orange Cnty. Superin. of Schs.),*
840 F.2d 701 (9th Cir. 1998) ...............................................................30

*Chesapeake B & M, Inc. v. Harford County,*
58 F.3d 1005 (4th Cir. 1995) ...............................................................38

*Children of the Rosary v. City of Phoenix,*
154 F.3d 972 (9th Cir. 1998) ...............................................................47

*Cincinnati v. Discovery Network, Inc.,*
507 U.S. 410 (1993) ....................................................................... 50, 73

*City of Cleburne v. Cleburne Living Ctr., Inc.,*
473 U.S. 432 (1985) ..............................................................................75

*Citz. United v. Fed. Elec. Comm'n,*
558 U.S. 310 (2010) ..............................................................................75

*Coates v. City of Cincinnati,*
402 U.S. 611 (1971) ................................................................. 34, 37, 45

*Cohen v. San Bernardino Valley College,*
92 F.3d 968 (9th Cir. 1996) .................................................................32

*Connally v. General Construction Co.,*
269 U.S. 385 (1926) ................................................................. 31, 33, 36

TABLE OF AUTHORITIES
(continued)

Page

*Cox v. Louisiana*,
    379 U.S. 536 (1965) .................................................................. 37, 45

*Ctr. for Bio-Ethical Reform, Inc. v. City & Cnty. of Honolulu*,
    455 F.3d 910 (9th Cir. 2006) ............................................................47

*Dep't of Hous. & Urb. Devel. v. Rucker*,
    535 U.S. 125 (2002) .......................................................................30

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) .......................................................................58

*Edenfield v. Fane*,
    507 U.S. 761 (1993) .......................................................................66

*Elrod v. Burns*,
    427 U.S. 347 (1976) .......................................................................77

*Ezell v. City of Chicago (Ezell I)*,
    651 F.3d 684 (7th Cir. 2011) ...........................................................58

*Ezell v. City of Chicago (Ezell II)*,
    846 F.3d 888 (7th Cir. 2017) ...................................................... 59, 61

*F.C.C. v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) .................................................................. 31, 33

*Forsyth County, Ga. v. Nationalist Movement*,
    505 U.S. 123 (1992) .............................................................. 39, 50, 51

*Garrett v. City of Escondido*,
    465 F. Supp. 2d 1043 (S.D. Cal. 2006) .............................................77

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ................................................................. passim

*Greater New Orleans Broad. Ass'n v. United States*,
    528 U.S. 173 (1999) .......................................................................65

*Hibbs v. Winn*,
    542 U.S. 88 (2004) ........................................................................62

*Holt v. Hobbs*,
    574 U.S. 352 (2015) .......................................................................72

TABLE OF AUTHORITIES
(continued)

Page

*Hunt v. City of Los Angeles*,
601 F. Supp. 2d 1158 (C.D. Cal. 2009), *aff'd* 638 F.3d 703 (9th Cir. 2011) ......51

*Ill. Ass'n of Firearms Retailers v. City of Chicago*,
961 F. Supp. 2d 928 (N.D. Ill. 2014) ..................................................58

*IMDb.com Inc. v. Becerra*,
962 F.3d 1111 (9th Cir. 2020) ........................................................71

*Int'l Outdoor, Inc. v. City of Troy, Michigan*,
974 F.3d 690 (6th Cir. 2020)...........................................................55

*Interpipe Contracting, Inc. v. Becerra*,
898 F.3d 879 (9th Cir. 2018)...........................................................48

*Jones v. Bonta*,
34 F.4th 704, 720–23 (9th Cir. 2022) ........................................ 59, 61

*Karnoski v. Trump*,
926 F.3d 1180 (9th Cir. 2019) ........................................................30

*Klein v. City of San Clemente*,
584 F.3d 1196 (9th Cir. 2009) .................................................. 77, 78

*Kolender v. Lawson*,
461 U.S. 352 (1983)...................................................................33

*Lorillard Tobacco Co. v. Reilly*,
533 U.S. 525 (2001)...................................................................69

*Matal v. Tam*,
582 U.S. 218 (2017)............................................................. 46, 47

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012)..........................................................76

*Metro Display Advertising, Inc. v. City of Victorville*,
143 F.3d 1191 (9th Cir. 1998) .......................................................47

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009).................................................... 46, 48

*N.A.A.C.P. v. Button*,
371 U.S. 415 (1963) ........................................................ 32, 45, 74

TABLE OF AUTHORITIES
(continued)

Page

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
142 S. Ct. 2111 (2022) ................................................................. 58, 61

*NAACP v. Patterson*,
357 U.S. 4492 (1958 ...........................................................................74

*New York v. Ferber*,
458 U.S. 747 (1982)............................................................................68

*Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*,
354 F.3d 249 (4th Cir. 2003)..............................................................34

*Nordyke v. King*,
319 F.3d 1185 (9th Cir. 2003) ...........................................................57

*Nordyke v. Santa Clara*,
110 F.3d 707 (9th Cir. 2009)..............................................................61

*Northwest Forest Res. Council v. Glickman*,
82 F.3d 825 (9th Cir. 1996)...............................................................36

*Pacific Mut. Life Ins. Co. v. Haslip*,
499 U.S. 1 (1991) ...............................................................................31

*Papachristou v. Jacksonville*,
405 U.S. 156 (1972) ..................................................................... 33, 37

*Police Dept. of Chicago v. Mosley*,
408 U.S. 92 (1972) ....................................................................... 49, 50

*Preminger v. Principi*,
422 F.3d 815 (9th Cir. 2005)..............................................................78

*Project 80's, Inc. v. City of Pocatello*,
942 F.2d 635 (9th Cir. 1991)..............................................................71

*R.A.V. v. St. Paul*,
505 U.S. 377 (1992)............................................................................54

*Rec. Head Corp. v. Sachen*,
682 F.2d 672 (7th Cir. 1982)..............................................................39

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015)................................................................... passim

TABLE OF AUTHORITIES
(continued)

Page

*Rendish v. City of Tacoma,*
    123 F.3d 1216 (9th Cir. 1997) ..............................................................76

*Reno v. American Civil Liberties Union,*
    521 U.S. 844 (1997) ..............................................................................37

*Retail Digital Network, LLC v. Prieto,*
    861 F.3d 839 (9th Cir. 2017) ................................................ 52, 54, 56

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,*
    487 U.S. 781 (1988) ..............................................................................56

*Rodriguez v. Robbins,*
    715 F.3d 1127 (9th Cir. 2013) ..............................................................78

*Rosenberger v. Rector and Visitors of Univ. of Va.,*
    515 U.S. 819 (1995) ..............................................................................46

*Rucker v. Davis,*
    237 F.3d 1113 (9th Cir. 2001) ..............................................................30

*Shelton v. Tucker,*
    364 U.S. 479 (1960) ..............................................................................73

*Shuttlesworth v. Birmingham,*
    394 U.S. 147 (1969) ..............................................................................38

*Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.,*
    502 U.S. 105 (1991) ..............................................................................53

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552 (2011) ...................................................................... passim

*Staub v. City of Baxley,*
    355 U.S. 313 (1958) ..............................................................................38

*Stormans, Inc. v. Selecky,*
    586 F.3d 1109 (9th Cir. 2009) ..............................................................77

*Thompson v. Western States Medical Center,*
    535 U.S. 357 (2002) ...................................................................... 68, 69

*United States v. Hansen,*
    25 F.4th 1103 (9th Cir. 2022) ...................................................... 42, 43

TABLE OF AUTHORITIES
(continued)

Page

*United States v. Playboy Entm't Grp., Inc.*,
529 U.S. 803 (2000)........................................................ 56, 70, 71, 72

*United States v. Reese*,
92 U.S. 214 (1875)........................................................................37

*United States v. Stevens*,
559 U.S. 460 (2010)............................................................... passim

*United States v. Williams*,
553 U.S. 285 (2008)................................................................ 42, 63

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
425 U.S. 769.................................................................. 60, 66, 70, 78

*Valle Del Sol Inc. v. Whiting*,
709 F.3d 808 (9th Cir. 2013)............................................... 56, 71, 77

*Victory Processing, LLC v. Fox*,
937 F.3d 1218 (9th Cir. 2019) ........................................................72

*Village of Hoffman Estates v. Flipside, Hoffman Estates*, *Inc.*,
455 U.S. 489 (1982)............................................................... 32, 40, 41

*W. Va. State Bd. of Educ. v. Barnette*,
319 U.S. 624 (1943)........................................................................51

*Washington Mercantile Ass'n v. Williams*,
733 F.2d 687 (9th Cir. 1984).........................................................61

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)..................................................................... 30, 76

*Wooley v. Maynard*,
430 U.S. 705 (1977).......................................................................75

**Statutes**

28 U.S.C. § 1292(a)(1)....................................................................17

28 U.S.C. § 1331 ..............................................................................17

Cal. Bus. & Prof. Code § 22949.80 ............................................ passim

Cal. Bus. & Prof. Code § 22949.80(a).................................... 52, 62, 67

Cal. Bus. & Prof. Code § 22949.80(a)(1) ................................... passim

TABLE OF AUTHORITIES
(continued)

Page

Cal. Bus. & Prof. Code § 22949.80(a)(2) ............................................ 21, 22, 37, 40

Cal. Bus. & Prof. Code § 22949.80(a)(2)(A) .......................................................... 51

Cal. Bus. & Prof. Code § 22949.80(a)(2)(B) .......................................................... 51

Cal. Bus. & Prof. Code § 22949.80(a)(2)(B)–(E) ................................................... 45

Cal. Bus. & Prof. Code § 22949.80(a)(3) ............................................................... 19

Cal. Bus. & Prof. Code § 22949.80(c)(3) ....................................................... passim

Cal. Bus. & Prof. Code § 22949.80(c)(4) ......................................................... 20, 52

Cal. Bus. & Prof. Code § 22949.80(c)(5) ........................................... 20, 36, 62, 67

Cal. Bus. & Prof. Code § 22949.80(c)(6) ....................................................... passim

Cal. Bus. & Prof. Code § 22949.80(e)(1) ............................................................... 23

Cal. Bus. & Prof. Code § 22949.80(e)(3) ............................................................... 23

Cal. Bus. & Prof. Code § 22949.80(e)(3)–(5) ........................................................ 23

Cal. Bus. & Prof. Code § 29615 ............................................................................. 59

Cal. Pen. Code § 27505(b)(2) ................................................................................. 59

Cal. Pen. Code § 29655 ........................................................................................... 59

Mich. Pen. Code § 343 ............................................................................................ 70

U.S. CONST., amend. I ............................................................................................. 73

U.S. CONST., amend. XIV ........................................................................................ 75

**Rules**

Fed. R. App. P. 4(a)(1)(B)(i) ................................................................................... 17

**Other Authorities**

2022 Cal. Stats. Ch. 771, § 1 .................................................................................. 19

2022 Cal. Stats., Ch. 77, § 1(a) ........................................................................ 67, 68

2022 Cal. Stats., Ch. 77, §§ 1(b) & 3 ..................................................................... 18

AB 160 ............................................................................................................... 18, 19

AB 2571 ..................................................................................................... passim

TABLE OF AUTHORITIES
(continued)

Page

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF
    LEGAL TEXTS 174–79 (2012) ...............................................................................36

## INTRODUCTION

In June 2022, the California Legislature enacted Assembly Bill 2571, opening a new chapter in its decades-long assault on the First Amendment rights of firearm industry members and proponents of hunting and the shooting sports. Through AB 2571, California seeks to preclude truthful speech concerning the lawful use of firearms by adults and minors. The California Legislature made its purpose clear: to stamp out a way of life it disdains by restricting speech that might stimulate minors' interest in firearms, conservation, and the shooting sports. This, California hopes, will stunt the growth of hunting and shooting culture among future generations, thereby stifling demand for lawful firearm products.

AB 2571 is an unprecedented assault on First Amendment freedoms and the State utterly fails to justify its constitutionality. At base, the State does not have any legitimate interest in curbing demand for products and activities that are not only lawful, but also constitutionally-protected under the Second Amendment. Even putting that aside, AB 2571 violates the First, Fifth, and Fourteenth Amendments because it is vague and overbroad on its face. The statute also violates the First Amendment by: (i) imposing viewpoint-, content-, and speaker-based restrictions on protected speech; (ii) regulating nonmisleading commercial speech concerning lawful activities; and (iii) infringing Appellants' right to free

16

assembly and association. Finally, AB 2571 discriminates against Second Amendment advocates without any constitutionally permissible justification.

Appellants sued Attorney General Rob Bonta seeking preliminary injunctive relief and a declaration that AB 2571 is unconstitutional. The district court held that Appellants were unlikely to succeed on the merits and denied Appellants' motion for preliminary injunction (the "Motion"). This Court should vacate that decision.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. § 1331. The district court entered an order on January 12, 2023, denying Appellants' Motion.[1] Appellants timely filed their notice of appeal on February 10, 2023.[2] *See* Fed. R. App. P. 4(a)(1)(B)(i). This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF ISSUES

1.      Whether the district court erred in concluding that Appellants are unlikely to succeed on their claim that AB 2571 violates their rights under the Fifth and Fourteenth Amendments because it is impermissibly vague.

---

[1] 1-ER-02–42.

[2] 3-ER-602–03.

2.      Whether the district court erred in concluding that Appellants are unlikely to succeed on their claim that AB 2571 violates their First Amendment rights to free speech and association.

3.      Whether the district court erred in concluding that Appellants are unlikely to succeed on their claim that AB 2571 violates their Fourteenth Amendment rights to equal protection.

4.      Whether the district court erred in concluding that the balance of equities and the public interest did not warrant a preliminary injunction.

## CIRCUIT RULE 28.2.7 STATEMENT

All applicable constitutional provisions and statutes are contained in the addendum to this Opening Brief.

## STATEMENT OF THE CASE

### I.      STATUTORY BACKGROUND.

On June 30, 2022, "to further restrict the marketing and advertising of firearms to minors," the California Legislature passed, and Governor Newsom signed into law, AB 2571, adding Section 22949.80 to California's Business and Professions Code. 2022 Cal. Stats., Ch. 77, §§ 1(b) & 3. Then, in August 2022, AB 160 was signed into law, amending the newly-added Section 22949.80.

A.     **Section 22949.80 Singles Out "Firearm Industry Members" and Prohibits Them from Engaging in a Broad Range of Advertising and Marketing of Lawful Products.**

As amended, Section 22949.80 broadly prohibits "firearm industry members" from making, distributing, or arranging for the placement of "an advertising or marketing communication" that offers or promotes "any firearm-related product" in a manner that "is designed, intended, or reasonably appears to be attractive to minors." Cal. Bus. & Prof. Code § 22949.80(a)(1). In August 2022, the California Legislature, through AB 160, amended Section 22949.80 to exempt certain advertising communications. As amended, Section 22949.80 exempts communications:

> [O]ffering or promoting any firearm safety program, hunting safety or promotional program, firearm instructional course, sport shooting event or competition, or any similar program, course, or event, nor does it apply to a communication offering or promoting membership in any organization, or promotion of lawful hunting activity, including, but not limited to, any fundraising event, youth hunting program, or outdoor camp.

*Id.* § 22949.80(a)(3), *amended* 2022 Cal. Stats. Ch. 771, § 1.

Three terms are particularly important to understanding Section 22949.80's prohibitions: "firearm industry member," "firearm-related product," and "marketing or advertising."

*First*, "firearm industry member" means any person or entity whose purpose is "promoting, encouraging, or advocating for the purchase, use, or ownership of

19

firearm-related products" that: "(i) advertises firearm-related products[;] (ii) advertises events where firearm-related products are sold or used[;] (iii) endorses specific firearm-related products[;] [or] (iv) sponsors or otherwise promotes events at which firearm-related products are sold or used." *Id.* § 22949.80(c)(4).

This broad definition sweeps within its scope not only firearm manufacturers and sellers, but also a multitude of other non-commercial organizations that publish content concerning hunting, conservation, and other lawful firearm-related activities, as well as sponsor sporting, shooting, and other events where firearm-related products are used or sold. Moreover, this definition must be read together with the statute's operative language, which prohibits marketing, advertising, ***and*** "arranging for placement of" an advertisement. *Id.* § 22949.80(a)(1).

*Second*, a "firearm-related product" is "a firearm, ammunition, reloaded ammunition, a firearm precursor part, a firearm component, or a ***firearm accessory***" sold in California or directed towards California residents. *Id.* § 22949.80(c)(5) (emphasis added). "Firearm accessory" is, in turn, "an attachment or device designed or adapted to be inserted into, affixed onto, ***or used in conjunction with***, a firearm which is designed, intended, or functions to alter ***or enhance*** the firing capabilities of a firearm, the lethality of the firearm, ***or*** a shooter's ability to ***hold, carry, or use*** a firearm." *Id.* § 22949.80(c)(3) (emphasis added). The latter term is practically limitless and its inclusion ***within*** the

definition of "firearm-related product"—the subject of the statute's advertising prohibition—means that Section 22949.80 regulates not only advertisements of firearms, but also a vaguely defined universe of otherwise benign products. These products might include, for example, the scopes that attach to a hunting rifle, or accessories that might be considered to "enhance . . . a shooter's ability to hold, carry, or use a firearm," like slings, hunting vests, and eyewear.

*Third*, the phrase "marketing or advertising" means "in exchange for monetary compensation," to make or disseminate to individuals or the public "a communication" about a firearm-related product, "the primary purpose of which is to encourage recipients of the communication to engage in a commercial transaction." Cal. Bus. & Prof. Code § 22949.80(c)(6).

In sum, Section 22949.80 prohibits "firearm industry members" from engaging in, or facilitating, speech that (1) offers or promotes a firearm or firearm-related accessory, (2) is designed, intended, or "reasonably appears to be attractive to minors," and (3) appears to encourage "a commercial transaction." Cal. Bus. & Prof. Code §§ 22949.80(a)(1) & (c)(6).

### B. Section 22949.80 Requires Courts to Evaluate the Content of Advertisements and Grants Them Nearly Unlimited Discretion in Determining Whether an Advertisement Violates the Statute.

Section 22949.80 vests courts with broad, nearly unlimited, discretion to determine whether an advertisement violates the statute. Cal. Bus. & Prof. Code

§ 22949.80(a)(2). To determine whether an advertisement of a "firearm-related product" "reasonably appears to be attractive to minors," courts are directed to consider the "totality of the circumstances, including, but not limited to," whether the communication:

> (A) Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.
>
> (B) Offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals, that promotes a firearm industry member or firearm-related product.
>
> (C) Offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors.
>
> (D) Is part of a marketing or advertising campaign designed with the intent to appeal to minors.
>
> (E) Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products.
>
> (F) Is placed in a publication created for the purpose of reaching an audience that is predominately composed of minors and not intended for a more general audience composed of adults.

Cal. Bus. & Prof. Code § 22949.80(a)(2). This provision is content-based in two respects:

- *First*, the prefatory clause plainly directs courts to evaluate the content of the advertisement and any broader communication.

22

- *Second*, the nonexclusive factors require courts to evaluate not only the advertisement's content, but also surrounding, contextual content.

Finally, the statute authorizes the California Attorney General and any district, county, or city attorney to sue for a civil penalty of up to $25,000 for each copy of an offending advertisement. *Id.* § 22949.80(e)(1). Private parties "harmed by a violation" also have standing to sue for actual damages. *Id.* § 22949.80(e)(3). Courts are directed to order injunctive relief and to award attorney's fees and costs, but only to a prevailing plaintiff. *Id.* § 22949.80(e)(4)–(5).

## II.  FACTUAL AND PROCEDURAL BACKGROUND.

Appellants engage in, or facilitate, a broad range of advertising communications concerning lawful Second Amendment conduct— communications that are now prohibited. Appellants publish, for example, magazines and other communications featuring articles about youth engagement in hunting, conservation, and shooting-sports activities, as well as images depicting minors lawfully using firearms and firearm-related products.[3] Appellants also sell space for traditional advertising concerning firearm-related products that California

---

[3] *See* 3-ER-373–74, 378–83, 387, 400–04, 415–19, 428, 456, 461, 467, 471–72, 478–80, 500–01, 524–26, 531–33, 536–42, 544–551.

law allows minors to use and possess.[4] These advertisements are featured next to, or in close proximity with, the editorial content of Appellants' publications.[5]

Appellants also offer and sell branded merchandise, some of which feature caricatures and cartoons to promote their organizations, solicit membership and other support, and promote pro-Second Amendment messages.[6] Many of these items, and the symbols and caricatures they bear, are designed to be attractive to both minors and adults.

Finally, Appellants advertise, promote, sponsor, and facilitate lawful recreational youth shooting events, educational programs and safety courses, or gun shows where youths are likely to attend.[7] These events often involve the handling or use of firearms and firearm-related products, and exhibitions or advertising by third parties concerning firearm-related products, promoting membership in their organizations, distributing of branded merchandise, or promoting the safe and lawful use of firearms.[8]

Appellants commenced the underlying action for declaratory and injunctive relief on August 5, 2022,[9] and filed the operative First Amended Complaint on

---

[4] *See ibid*.

[5] *See, e.g.*, 3-ER-531–33, 538–42, 544–551.

[6] *See* 3-ER-373–74, 386, 428.

[7] *See* 3-ER-373–74, 386, 428.

[8] *See* 3-ER-374–77, 386–88.

[9] 3-ER-605 (ECF No. 1).

October 18, 2022.[10] Appellants moved for a preliminary injunction on October 21, 2022.[11] Defendant-Appellee Attorney General Rob Bonta answered the Amended Complaint on November 1, 2022.[12] Appellee opposed the Motion on November 4, 2022,[13] and Appellants filed their Reply on November 14, 2022.[14]

The district court, on December 20, 2022, held a hearing on Appellants' Motion,[15] and then denied the Motion in an Order entered on January 12, 2023.[16] Appellants timely filed their Notice of Appeal on February 10, 2023.[17]

## III. THE DISTRICT COURT'S ORDER.

The district court evaluated each of Appellants' constitutional claims and determined they were unlikely to succeed on the merits. First, the district court determined Appellants were not likely to succeed on their political and ideological speech claim because "the speech which § 22949.80 seeks to regulate is commercial speech."[18] Although Appellants argued that strict scrutiny applied

---

[10] 3-ER-555–601.

[11] 3-ER-337–554.

[12] 2-ER-275–301.

[13] 2-ER-96–273.

[14] 2-ER-85–95.

[15] 2-ER-44–84.

[16] 1-ER-2–42.

[17] 3-ER-602–03.

[18] 1-ER-13–14.

because Section 22949.80 implicates core political and economic messages related to the Second Amendment, the district court disagreed.[19]

Second, the district court rejected Appellants' assertion that Section 22949.80 violates the First Amendment's protection of commercial speech.[20] Although recognizing that "[Section] 22949.80 regulates some commercial speech that is not misleading and which concerns certain lawful activities involving minors and firearms,"[21] the district court deferred to the State's proffered interest in reducing gun violence involving minors.[22] "Simple common sense," according to the district court, supported the State's argument that Section 22949.80 directly and materially advances its claimed interest,[23] and is "a reasonable fit."[24]

Third, because it rejected Appellants' political and ideological free speech claim, the district court held that Appellants were not likely to succeed on their First Amendment right to associate claim.[25] According to the district court, Section 22949.80 does not apply to "a communication offering or promoting membership

---

[19] 1-ER-14–16.

[20] 1-ER-15–29.

[21] 1-ER-18.

[22] 1-ER-20–21.

[23] 1-ER-25.

[24] 1-ER-26–29.

[25] 1-ER-29–30.

in any organization" and the right to associate does not extend to commercial speech.[26] The court rejected Appellants' overbreadth claim for a similar reason.[27]

Fourth, the district court determined Appellants were unlikely to succeed on their void-for-vagueness claim. This was based on the district court misreading the statute so narrowly as to avoid the definitional ambiguity of "firearm-related product" and "firearm accessories."[28] It also rejected Appellants' contention that Section 22949.80's nonexclusive and subjective "totality of the circumstances" test for determining what "reasonably appears to be attractive to minors" invites arbitrary enforcement.[29]

Fifth, the district court rejected Appellants' equal protection claim based on its finding that Section 22949.80 does not violate Appellants' First Amendment rights.[30]

Based on these erroneous findings, the district court further found no irreparable harm, and that the balance of the equities tipped in the State's favor.[31]

---

[26] 1-ER-29–30.

[27] 1-ER-30–31.

[28] 1-ER-32.

[29] 1-ER-33–40.

[30] 1-ER-40.

[31] 1-ER-41–42.

## SUMMARY OF ARGUMENT

Section 22949.80 is unconstitutional for at least the following reasons:

•      It is unduly vague on its face. The statute fails to provide fair notice of what conduct it prohibits, not least because of its imprecise definition of "firearm-related product" and "firearm accessory." Furthermore, Section 22949.80 invites arbitrary enforcement because it requires judges to determine subjectively whether a particular advertisement "reasonably appears to be attractive to minors" based on the "totality of the circumstances," including six ***non-exclusive factors***. And even if the six factors were exclusive, they are so permeated with subjectivity that they do not cure the vagueness that inheres in the statute's enforcement provision.

•      Section 22949.80 violates the First Amendment overbreadth doctrine. The statute encompasses ***all communications*** "offering or promoting any firearm-related product" made by "firearm industry members" "in exchange for monetary compensation" that "reasonably appear[] to be attractive to minors"—even communications concerning lawful and constitutionally protected products, and those that are equally attractive to adults who have a right to obtain information about those products.

•      Strict scrutiny applies because Section 22949.80 (i) imposes content- and speaker-based restrictions on protected speech, and (ii) regulates speech that is inextricably intertwined with Second Amendment-protected conduct. To the extent

28

this Court's precedents hold that restrictions on commercial speech—even ones that are content- and speaker-based—are subject to only intermediate scrutiny, this Court should abandon those precedents in view of contemporary Supreme Court decisions holding that content-based regulations are subject to strict scrutiny.

- Section 22949.80 fails even intermediate scrutiny under *Central Hudson*. The statute regulates nonmisleading commercial speech concerning lawful activity but does not materially advance any legitimate State interest. Moreover, there are plausible less-restrictive means for the State to achieve its objectives. In view of Section 22949.80's breadth, coupled with the availability of plausible alternatives, the statute is not reasonably fit to achieve the State's claimed interests.

- Section 22949.80 infringes on Appellants' right to freely associate and assemble because it prohibits them from advertising or marketing their firearm-related programs, where Appellants and members of the public, including youths, lawfully assemble and associate with one another. And the statute is not narrowly tailored to the ends the State seeks to achieve.

- Section 22949.80 unconstitutionally discriminates against a disfavored group of speakers—"firearm industry members"—in violation of the Fourteenth Amendment's Equal Protection Clause.

- Appellants are likely to succeed on the merits and, in view of the restrictions on protected speech that Section 22949.80 imposes, they will be irreparably harmed without an injunction. The balance of the equities tips in Appellants' favor, and an injunction is in the public interest.

## STANDARD OF REVIEW

"The purpose of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct. (Orange Cnty. Superin. of Schs.)*, 840 F.2d 701, 704 (9th Cir. 1998). To obtain a preliminary injunction, Appellants need only show "that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). This Court reviews "order[s] regarding preliminary injunctive relief for abuse of discretion, but review[s] any underlying issues of law de novo." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019). Further, where applying the correct rule compels the resolution of the ultimate issues, the court of appeals may reach the merits. *Rucker v. Davis*, 237 F.3d 1113, 1118–19 (9th Cir. 2001) (en banc), *rev'd on other grounds*, *Dep't of Hous. & Urb. Devel. v. Rucker*, 535 U.S. 125 (2002).

30

**ARGUMENT**

I.    **THE DISTRICT COURT ERRED IN HOLDING THAT APPELLANTS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM THAT SECTION 22949.80 IS UNCONSTITUTIONALLY VAGUE.**

The void for vagueness doctrine is rooted in the due process principle that a law is unconstitutional "if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see also Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 44 (1991) (O'Connor, J., dissenting) ("Due process requires that a State provide meaningful standards to guide the application of its laws."). This doctrine "addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

Thus, there are two ways in which a statute can be unconstitutionally vague. First, if the statute fails to provide "fair warning" of what conduct will subject a person to liability. *See, e.g.*, *Grayned*, 408 U.S. at 108–09; *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926). Second, a law is vague if it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108–09. To

prevent those dangers, statutes "must provide explicit standards for those who apply them." *Id.*

### A. Section 22949.80 Is Subject to Strict Review for Vagueness Because it Regulates Protected Speech.

The most important factor affecting the degree of clarity that the Constitution requires is whether constitutional rights are at stake. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982). Laws that intrude upon "basic First Amendment Freedoms"—like Section 22949.80—require a higher degree of clarity because "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109 (citations and internal quotation marks omitted); *see also N.A.A.C.P. v. Button*, 371 U.S. 415, 433 (1963); *Cohen v. San Bernardino Valley College*, 92 F.3d 968, 972 (9th Cir. 1996) ("Where the guarantees of the First Amendment are at stake the [Supreme] Court applies its vagueness analysis strictly.").

Section 22949.80 on its face regulates First-Amendment-protected speech by restricting advertising of "firearm-related products" by "firearm industry members."[32] It is therefore subject to the strictest vagueness standard.

---

[32] *See* Sections II.A. & II.B.1., *infra*.

**B.**    <u>Section 22949.80 is Unconstitutionally Vague</u>.

Section 22949.80 is unduly vague in two respects. First, it fails to provide "fair warning" of what conduct will subject a person to liability. *See Grayned*, 408 U.S. at 108–09. Second, and perhaps most important, the statute invites arbitrary enforcement and abuse because it requires judges to determine subjectively whether a particular advertisement "reasonably appears to be attractive to minors" based on the "totality of the circumstances," including consideration of six non-exclusive factors. *See id.*; *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (the "more important aspect of the vagueness doctrine" is "the requirement that a legislature establish minimal guidelines to govern" its enforcement).

**1.**    **Section 22949.80 Fails to Provide Fair Notice.**

It is fundamental to our legal system that "laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C.*, 567 U.S. at 253; *see also Connally*, 269 U.S. at 391 ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law"); *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972) ("Living under a rule of law entails various suppositions, one of which is that '[all persons] are entitled to be informed as to what the State commands or forbids'" (alteration in original)).

33

The most glaring example of Section 22949.80's vagueness is its definition of the most important term in the statute's operative clause: "firearm-related product." *See* Cal. Bus. & Prof. Code § 22949.80(a)(1). Though the term does include commonly known products like "firearm[s], ammunition, reloaded ammunition, a firearm precursor part, [and] a firearm component," the inclusion of "firearm accessory" gives "firearm-related product" nearly unlimited application. This is because "firearm accessory" is defined so vaguely[33] as to encompass an entire panoply of products that are useful for both firearm-related activities and non-firearm-related activities (such as optics, braces, slings, clothing, and eye-and-ear protection)—none of which are unlawful for minors to possess.[34] That, coupled with the statute's use of the word "promoting," makes it impossible to know what communications Section 22949.80 prohibits. *Cf. Coates v. City of Cincinnati*,

---

[33] "Firearm accessory" is defined as "an attachment or device designed or adapted to be inserted into, affixed onto, or used in conjunction with, a firearm which is designed, intended, or functions to alter or enhance the firing capabilities of a firearm, the lethality of the firearm, or a shooter's ability to hold, carry, or use a firearm." Cal. Bus. & Prof. Code § 22949.80(c)(3).

[34] The Fourth Circuit held that a school district's dress code prohibiting students from wearing "messages on clothing . . . that . . . relate to weapons" likely was unconstitutionally overbroad. *Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 259–60 (4th Cir. 2003). Citing the dress code, the school had prohibited the plaintiff from wearing a t-shirt depicting three black silhouettes of men holding firearms superimposed on the letters "NRA" positioned above the phrase "SHOOTING SPORTS CAMP." The Fourth Circuit held that the dress code improperly "exclude[d] a broad range and scope of symbols, images, and political messages that are entirely legitimate and even laudatory." *Id.* at 260.

402 U.S. 611, 614–15 (1971).

In addressing this issue, the district court both misinterpreted the statute and misapplied a fundamental canon of statutory interpretation.[35] First, the district court erroneously found that a "firearm accessory" "is limited to 'an attachment or device'" and, worse, narrowly interpreted "device" to mean only "mechanical or electronic equipment."[36] It therefore concluded the statute excludes items such as backpacks, shooting vests, and safety glasses, "because those items cannot be affixed to a firearm to perform a particular function, nor could those items constitute 'mechanical or electronic equipment.'"[37] But the statute plainly does not impose either of these limitations. *See* Cal. Bus. & Prof. Code § 22949.80(c)(3). Putting aside that "attachment" and "device" are both undefined, "firearm accessory" broadly includes any device that "functions to alter or enhance" not only the performance of a firearm, but also "a shooter's ability to hold, carry, or use a firearm." *Id*. The district court effectively re-wrote the statute so the California Legislature did not have to.

---

[35] *See* 1-ER-32–33.

[36] *See* 1-ER-32–33. Confusingly, the district court limited the definition of "device" to include only "mechanical or electronic equipment," even though the definition it cited states more broadly: "[a] thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment." 1-ER-33 n.11.

[37] 1-ER-32–33.

Second, the district court fundamentally misapplied the *ejusdem generis*

canon. According to the district court, the term "firearm accessory" is "limited by

the more specific words listed before it **in the definition of** 'firearm-related

product.'"[38] But this neglects that "firearm accessory" is defined independently of

"firearm-related product." *Compare* Cal. Bus. & Prof. Code § 22949.80(c)(3), *with*

*id.* § 22949.80(c)(5). The latter therefore cannot limit the former. Otherwise, the

separate definition of "firearm accessory" would be superfluous. *See Northwest*

*Forest Res. Council v. Glickman*, 82 F.3d 825, 834 (9th Cir. 1996) ("Courts have

long followed the principle that statutes should not be construed to make

surplusage of any provision."); ANTONIN SCALIA & BRYAN A. GARNER, READING

LAW: THE INTERPRETATION OF LEGAL TEXTS 174–79 (2012) (no provision should

be given an interpretation which causes it to have no consequence).

## 2. Section 22949.80 Invites Arbitrary Enforcement.

Citizens must have fair warning of what conduct will subject them to

liability. *Grayned*, 408 U.S. at 108–09; *Connally*, 269 U.S. at 391. Thus, a law is

unconstitutionally vague if it "impermissibly delegates basic policy matters to . . .

judges . . . for resolution on an *ad hoc* and subjective basis, with the attendant

dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108–09.

The vice of such enforcement is two-fold. First, it undermines the sense a citizen

---

[38] 1-ER-33 (emphasis added).

body must have, if it is to respect a system of law, that the law is the same for any offender. Second, it encourages legislators to evade difficult decisions that would otherwise subject them to political pressures and accountability. *Cf. id.* at 108–09 & n.5. Statutes must, therefore, "provide explicit standards." *Id.* at 108–09.

Here, Section 22949.80 invites arbitrary enforcement and abuse because it grants judges unbridled discretion to determine subjectively whether a particular communication "reasonably appears to be attractive to minors" based on the "totality of the circumstances," including consideration of six ***nonexclusive*** factors. Cal. Bus. & Prof. Code § 22949.80(a)(2). Statutes like Section 22949.80 impermissibly allow "the legislature [to] set a large enough net to catch all possible offenders, and leave it to the courts to step in" and decide who has or has not committed a violation. *United States v. Reese*, 92 U.S. 214 (1875), *quoted in Papachristou*, 405 U.S. at 165. This concern is particularly acute in a case such as this where the statute is a content-based regulation of speech. *See Reno v. American Civil Liberties Union*, 521 U.S. 844, 870–71 (1997) (the vagueness of a content-based regulation "raises special First Amendment concerns because of its obvious chilling effect").

The Supreme Court has consistently struck down similarly subjective statutes as unconstitutional. *See, e.g.*, *Coates*, 402 U.S. at 614; *Cox v. Louisiana*, 379 U.S. 536, 551–52 (1965); *see also Carter v. Welles-Bowen Realty, Inc.*, 719 F.

Supp. 2d 846, 852 (N.D. Ohio 2010), *aff'd*, 736 F.3d 722 (6th Cir. 2013) (HUD's

ten factor test for distinguishing "sham" and "bona fide" providers, for purposes of

an exception to the statute, was void for vagueness because the factors themselves

were vague, and that vagueness was compounded by the inherently subjective

balancing test). And it has likewise condemned broadly worded licensing

ordinances granting such standardless discretion to public officials that they are

free to censor ideas and enforce their own personal preferences. *See, e.g.*,

*Shuttlesworth v. Birmingham*, 394 U.S. 147, 153–55, 158–59 (1969); *Staub v. City*

*of Baxley*, 355 U.S. 313, 322, 325 (1958).

The existence of "standards"—like Section 22949.80's six nonexclusive,

unweighted factors—does not save the statute from its vagueness. This is for two

reasons. First, the factors are nonexclusive. Second, the factors are themselves

clothed with subjectivity. Thus, the existence of discretion turns on the looseness

of the standards such that they are meaningless as to some or all persons subject to

the regulation. *Cf. Shuttlesworth*, 394 U.S. at 153 (1969) ("[W]e have consistently

condemned licensing systems which vest . . . official discretion . . . upon broad

criteria unrelated to proper regulation of public places." (internal quotation marks

omitted)); *Chesapeake B & M, Inc. v. Harford County*, 58 F.3d 1005, 1009 (4th

Cir. 1995) ("Unbridled discretion naturally exists when a licensing scheme does

not impose ***adequate standards*** to guide the licensor's discretion." (emphasis

added)). Indeed, it is the risk of ***an abuse of discretion*** that has motivated the Supreme Court's decisions in this area, and a risk of abuse exists wherever a decisionmaker can effectively discriminate against certain viewpoints, the existence of standards notwithstanding. *See Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 130–31 (1992).

### a. The Factors are Nonexclusive and Unweighted.

Because Section 22949.80's six factors are nonexclusive, there is a disconcerting risk that a court's application of the law would be guided by post-hoc reliance on unspecified criteria to justify the State's action. Just as written criteria alone do not ensure that official discretion is adequately "bridled," Section 22949.80's nonexclusive factors do not save it from its vagueness. *See*, *e.g.*, *Amidon v. Student Ass'n of State Univ. of New York at Albany*, 508 F.3d 94, 103–04 (2d Cir. 2007) (nonexclusive factors were insufficient to clarify the statute's vagueness); *Rec. Head Corp. v. Sachen*, 682 F.2d 672, 677–78 (7th Cir. 1982) (to similar effect).

### b. The Six Factors are Vague and Ambiguous.

Section 22949.80 fails to provide any standard capable of objective application. The six nonexclusive factors are themselves permeated by subjectivity, turning upon words and phrases like "reasonably appear" and "appeal," the meaning of which depends on the particular judge's idiosyncratic interpretation of

the communication at issue. *Id.* § 22949.80(a)(2). These factors, therefore, do not ameliorate the vagueness that otherwise inheres in the "reasonably appears to be attractive to minors" language—they exacerbate it. The proceeding below is a case in point.

The district court concluded that the words and phrases "appeal," "design," and "reasonably appear" do not invite subjective application because the factors in which they are used "involve deciphering the intent behind the product or advertisement at issue."[39] In so holding, the district court relied on *Flipside*. But, contrary to the district court's conclusion, the statute evaluated in *Flipside* is distinguishable from Section 22949.80 in key respects that illustrate the vagueness of the latter.

The statute in *Flipside* required a retailer to obtain a license if it sold "any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs." 455 U.S. at 500. The Supreme Court construed the phrase "designed or marketed for use" in a way that minimized vagueness. *Id.* at 500–01. "Designed for use" referred to the objective characteristics of an item as manufactured, not to the intent—or possible adaptive ingenuity—of the retailer or his customers. *Id.* at 501. "Marketed for use," on the other hand, referred to a "retailer's intentional display and marketing of merchandise . . . in a manner that

---

[39] 1-ER-34.

appeals to or encourages illegal drug use," thus stating a scienter requirement. *Id.* at 502. Under the Court's construction then, the statute reached only two forms of conduct: the sale of objects manufactured as drug paraphernalia, and the sale of other, more ambiguous implements if they are deliberately displayed to encourage drug use.

Section 22949.80, by comparison, is much broader. Its prohibitions attach to advertising of "firearm-related product[s]," including "firearm accessor[ies]," which together broadly encompass firearm products that are lawful for minors to possess and use under specific circumstances, and accessory products that are unconditionally lawful for minors to possess and use. Thus, in contrast to *Flipside*, Section 22949.80 prohibits not only advertisements of products with definite, objective design characteristics, but also products with a range of independent uses and adaptive possibilities. *Cf. Flipside*, 455 U.S. at 500–01. Furthermore, the six enumerated factors encompass a range of conduct and products so broad that they fail to make the prohibited conduct any clearer. The gloss on these factors is far less precise than "marketed for use," which the Supreme Court has read to refer to the deliberate marketing strategy of retailers to encourage ***illegal use of drugs***. *See Flipside*, 455 U.S. at 502.

In sum, Section 22949.80 is impermissibly vague and must be stricken. The six factors that are supposed to help define an advertisement that "reasonably

appears to be attractive to minors," are fuzzy, contradictory, and dangerously open to erratic and after-the-fact interpretation. And this risk of arbitrary enforcement has already caused Appellants to refrain from speech that might arguably fall within the statute's indeterminable unlawful zone.[40] *Grayned*, 408 U.S. at 109.

## II. THE DISTRICT COURT ERRED IN HOLDING THAT APPELLANTS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS THAT SECTION 22949.80 VIOLATES THE FIRST AMENDMENT.

### A. Section 22949.80 Violates the First Amendment Overbreadth Doctrine.

A statute is "facially invalid" under the First Amendment overbreadth doctrine "if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). This doctrine recognizes that overbroad restrictions of speech tend to chill the speech of third parties. "First Amendment interests are fragile interests, and a person who contemplates protected activity might be discouraged by the in terrorem effect" of an overbroad statute. *Bates v. State Bar of Arizona*, 433 U.S. 350, 380 (1977). A statute is overbroad where "there is a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court,' or the statute is 'susceptible of regular application to protected expression." *United States v. Hansen*, 25 F.4th 1103, 1106 (9th Cir. 2022) (internal quotation marks omitted).

---

[40] *See* 3-ER-376–77, 387–88, 429.

"The government may restrict speech 'in a few limited areas,' including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct." *Id.* at 1109 (quoting *United States v. Stevens*, 559 U.S. 460, 468 (2010)). But none of the speech that Section 22949.80 regulates falls within these traditional "limited areas." Instead, it prohibits a substantial amount of lawful, constitutionally protected speech. *See Stevens*, 559 U.S. at 475–77 (focusing heavily on the requirement that the underlying act of animal cruelty be illegal but nevertheless invalidating a statute banning depictions of animal cruelty as overbroad).

The Supreme Court's decision in *Stevens* is instructive. There the Court invalidated a statute that imposed criminal penalties on "anyone who knowingly 'creates, sells, or possesses a depiction of animal cruelty,' if done 'for commercial gain' in interstate or foreign commerce." 559 U.S. at 464–65. The problem with the statute, the Court explained, was that it did not actually require the depiction of animal cruelty; it required only that an animal be "intentionally maimed, mutilated, tortured, wounded, or killed." *Id*. at 474. The statute plainly outlawed, for example, all hunting imagery. *Id*. at 474–76. Accordingly, the Court concluded that because "the protection of the First Amendment presumptively extends to many forms of speech that . . . fall within the broad reach of" the statute, it was overbroad. *Id*. at 480.

43

The same is true here. Section 22949.80 encompasses ***all*** communications "offering or promoting any firearm-related product" made by "firearm industry members" "in exchange for monetary compensation" that are "designed, intended, or reasonably appear[] to be attractive to minors"—even communications concerning lawful and constitutionally protected products as well as communications that are equally attractive to adults who have a right to obtain information about those products. And the statute's prohibitions are not limited to advertisements concerning only firearms. It also prohibits advertising of "firearm accessor[ies]," none of which are illegal for minors to purchase or possess. Thus, Section 22949.80 has the effect of barring a wide range of truthful speech concerning ***lawful*** products and activities.

Additionally, by restricting advertising that promotes the sale of "firearm-related products" to minors, Section 22949.80 burdens a vast amount of pure speech. For example, Section 22949.80 bans advertising and marketing of "firearm-related products" in any manner that may relate to youth shooting events, competitions, and education programs designed to instill students with an appreciation of the history, text, and tradition of the Second Amendment and firearms ownership in the United States. And by including content-based factors ***unrelated to firearms***—such as whether the advertiser also "[o]ffers brand name

merchandise for minors"—Section 22949.80 also burdens swathes of non-commercial speech. *See id.* § 22949.80(a)(2)(B)–(E).

The intent underlying Section 22949.80 is irrelevant in an overbreadth challenge because "[t]he First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs." *Stevens*, 559 U.S. at 470. Here, the statute will have the effect of chilling constitutionally protected speech and activities. In fact, Appellants have already started to curtail speech that ***might*** fall under Section 22949.80's overly broad ban.[41] This chilling of speech itself offends the First Amendment. *See, e.g.*, *Coates*, 402 U.S. at 614–15; *Cox*, 379 U.S. at 551–52; *Button*, 371 U.S. at 433.

### B. <u>Section 22949.80 Violates the First Amendment</u>.

#### 1. The District Court Erred in Applying the *Central Hudson* Test, Instead of Strict Scrutiny, Because Section 22949.80 is Impermissibly Content-Based on its Face and Regulates Truthful Speech.

Appellants argued below that AB 2571 imposes content- and speaker-based restrictions on commercial speech and is therefore subject to strict scrutiny. 3-ER-357–59. They also argued that AB 2571 is subject to heightened scrutiny because it regulates commercial speech that is inextricably intertwined with constitutionally-protected activities. 3-ER-356–57. Without any meaningful analysis, the district

---

[41] *See* 3-ER-376–77, 387–88, 429.

court rejected these arguments and, based on its erroneous conclusion that

heightened scrutiny is never appropriate when a statute regulates only commercial

speech, proceeded to apply intermediate scrutiny under *Central Hudson*. *See* 1-ER-

016–17. This was error.

> a. *Section 22949.80 Is Viewpoint-Based and Facially Invalid Under the First Amendment.*

Viewpoint-based speech discrimination, which "is a 'more blatant' and

'egregious form of content discrimination,'" *Reed v. Town of Gilbert*, 576 U.S.

155,168–69 (2015) (quoting *Rosenberger v. Rector and Visitors of Univ. of

Va.,* 515 U.S. 819, 829 (1995)), is forbidden under the First Amendment, *Matal v.

Tam*, 582 U.S. 218, 234 (2017) (plurality); *Moss v. U.S. Secret Serv.*, 572 F.3d 962,

970 (9th Cir. 2009). "[T]he test for viewpoint discrimination is whether—within

the relevant subject category—the government has singled out a subset of

messages for disfavor based on the views expressed." *Matal*, 582 U.S. at 248

(Kennedy, J., Concurring). As this Court said: "Viewpoint discrimination occurs

when the government prohibits speech by particular speakers, thereby suppressing

a particular view about a subject." *Moss*, 572 F.3d at 970 (cleaned up). In other

words, the government is acting "***because of*** not merely in spite of" the message.

*Id.* (italics in original).

In *Matal*, "all eight Justices (Justice Gorsuch was recused) held that

offensive speech is, itself, a viewpoint and that the government engages in

viewpoint discrimination when it suppresses speech on the ground that the speech offends." *Am. Freedom Def. Initiative v. King Cnty.*, 904 F.3d 1126, 1131 (9th Cir. 2018) (citation omitted). The *Matal* Court invalidated the Lanham Act's prohibition on trademarking disparaging content and held that a band called "The Slants," based on the shape of its Asian members' eyes, could trademark its name. *Matal,* 582 U.S. at 223, 247; *compare Metro Display Advertising, Inc. v. City of Victorville,* 143 F.3d 1191 (9th Cir. 1998) (finding unconstitutional viewpoint discrimination in city's refusal to renew contract with lessor of bus shelter advertising space after lessor's refusal to remove pro-union advertisements from the shelter, because act was clearly aimed at the message the speech conveyed), *with Children of the Rosary v. City of Phoenix,* 154 F.3d 972 (9th Cir. 1998) (city's ban on all noncommercial advertising on municipal buses was viewpoint neutral).

California, likewise, has engaged in viewpoint discrimination by banning advertisements that might "reasonably appear attractive to minors." Cal. Bus. & Prof. Code § 22949.80(c)(6). Appearing attractive to minors is not constitutionally different than disparaging or offensive content. It is also "a subset of" firearms advertising that is "disfavor[ed] based on the views expressed," *Matal,* 582 U.S. at 248 (Kennedy, J., Concurring), and similar to pro-union advertising under *Metro Display Advertising, Inc. See also Ctr. for Bio-Ethical Reform, Inc. v. City & Cnty. of Honolulu*, 455 F.3d 910, 921 (9th Cir. 2006) (ordinance prohibiting tow-banners

being dragged from airplanes was viewpoint neutral but noting that if the ordinance distinguished among views on abortion, then it would be viewpoint based). There is no question that the State is acting "***because of***" the message. *Moss*, 572 F.3d at 970.

Moreover, if "the law includes indicia of discriminatory motive, [the Court] may peel back the legislative text and consider legislative history and other extrinsic evidence to probe the legislature's true intent," and "statements by government officials . . . help to determine legislative intent." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 899 (9th Cir. 2018) (citations omitted).[42] The California Legislature made clear when it enacted the AB 2571 that it was intended to stifle interest in firearms, firearm accessories, and firearm-related activities among youth.[43] Indeed, the materials that the Legislature relied on—in particular, the publication *Starting Them Young*[44]—clearly show that its target was to prevent the growth of youth gun culture by restricting dissemination of truthful information about firearm-related products and activities from being

---

[42] Over and underinclusive statutes also indicate discriminatory intent. *Id*. As briefed above, Section 22949.80 is overbroad. But it is also underinclusive given the fact that the state allows several other types of violent imagery to be shown, most of which is created in Hollywood.

[43] *See, e.g.*, 2-ER-166–74.

[44] *See* 2-ER-200–60; *see also, e.g.*, 2-ER-166–74 (legislative history relying on *Starting Them Young*).

disseminated to minors. For instance, *Starting Them Young* highlights an advertisement in the National Rifle Association's junior member magazine that depicts a father and son hunting,[45] and attacks the viewpoint that it is appropriate to "encourage youth shooters" to become "lifelong firearms enthusiasts and Second Amendment advocates."[46] It also targets similar viewpoints and messages disseminated by other organizations.[47] This viewpoint discrimination is unconstitutional on its face.

> b.     *Strict Scrutiny Applies Because Section 22949.80 Is Content- and Speaker-Based and Regulates Truthful Commercial Speech Concerning Lawful Products.*

Under the First Amendment, the State "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed*, 576 U.S. at 163 (quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). Laws that "target speech based on its communicative content . . . are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* Regulation of speech is content-based and therefore subject to strict scrutiny "if a law applies to particular speech because of the topic discussed or the idea or message expressed"; some obvious facial distinctions based on a message include "defining regulated speech

---

[45] 2-ER-235.

[46] 2-ER-237.

[47] *See, e.g.*, 2-ER-227–34, 237–40.

by particular subject matter" or "by its function or purpose." *Id.* at 163–64. A law is also considered content based if, to enforce it, an official "must necessarily examine the content of the message that is conveyed." *Forsyth*, 505 U.S. at 134.

The "crucial first step in the content-neutrality analysis" involves "determining whether the law is content neutral on its face." *Reed*, 576 U.S. at 165. A facially content-based law is "subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). As the Supreme Court in *Reed* explained, "[b]ecause strict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based, a court must evaluate each question before it concludes that the law is content neutral and thus subject to a lower level of scrutiny." *Id.* at 166.

Section 22949.80 is plainly content based. It specially targets speech "concerning firearm-related products" that might appear "attractive to minors." Cal. Bus. & Prof. Code § 22949.80(c)(6) (emphasis added); *cf. Reed*, 576 U.S. at 163. Worse, the statute requires judges to "evaluate the substantive content of a message" to decide whether it "reasonably appears to be attractive to minors." *Reed*, 576 U.S. at 164 (content-based laws include those that cannot be "justified without reference to the content of the regulated speech, or that were adopted by

the government because of disagreement with the message [the speech] conveys" (citation and internal quotation marks omitted)); *Forsyth*, 505 U.S. at 134 (law was content-based because, in order to enforce it, "the administrator must necessarily examine the content of the message that is conveyed"); *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 796 n.12 (9th Cir. 2006) (same).

For instance, one consideration that Section 22949.80 prescribes is whether the advertising communication "[o]ffers brand name merchandise for minors" such as "hats, t-shirts, or other clothing, or toys, games, or stuffed animals, that promotes a firearm industry member or firearm-related product." Cal. Bus. & Prof. Code § 22949.80(a)(2)(B). Another is whether the advertisement "[u]ses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products." Cal. Bus. & Prof. Code § 22949.80(a)(2)(A). Both are classic indicia of a content-based law. Moreover, these factors also infringe symbolic speech. *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 632–33 (1943). Indeed, "the Ninth Circuit has reaffirmed its holding that the sale of merchandise inextricably intertwined with a religious, political, ideological, or philosophical message is fully protected by the First Amendment." *Hunt v. City of Los Angeles*, 601 F. Supp. 2d 1158, 1176 (C.D. Cal. 2009), *aff'd* 638 F.3d 703 (9th Cir. 2011) (collecting and summarizing authorities).

Furthermore, Section 22949.80 engages in speaker-based discrimination by singling out "firearm industry member[s]." Cal. Bus. & Prof. Code § 22949.80(a) & (c)(4). For example, Section 22949.80 prohibits Appellants from advertising and advocating, even indirectly, the possession and use of a "firearm-related product," such as by soliciting or promoting pro-Second Amendment activity using branded merchandise. The statute does not, however, prohibit non-firearm industry members from engaging in the same speech—using similar imagery irrespective of the content of the message—to promote their organizations, solicit support, and spread political ideas.

In summarily rejecting Appellants' argument that AB 2571 is subject to heightened scrutiny because it imposes content- and speaker-based restrictions, the district court relied on *Retail Digital Network, LLC v. Prieto*, 861 F.3d 839 (9th Cir. 2017), which held that regulations of commercial speech—regardless of whether they are content-based—are subject to intermediate scrutiny under *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980). But in *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335 (2020), the Supreme Court reaffirmed that under its precedents, including *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011), a "'law that is content based' is 'subject to strict scrutiny.'" *Barr*, 140 S. Ct. at 2347 (quoting *Reed*, 576 U.S. at 165).

The Supreme Court has consistently emphasized the danger of content-based restrictions: the government may use them to "effectively drive certain ideas or viewpoints from the marketplace." *Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105 (1991). The Court in *Simon & Schuster* invalidated New York's "Son of Sam" law, which regulated an accused or convicted criminal's receipt of income generated by works that described his crime. *Id.* at 108. Such laws, the Court explained, are particularly prone to abuse because they establish a "financial disincentive to create or publish works with a particular content." *Id.* at 118. Notwithstanding the commercial purpose of the speech, the Court applied strict scrutiny and held the law was "significantly overinclusive" as a "means of ensuring that victims [were] compensated from the proceeds of crime." *Id.* at 121.

Commercial speech is no exception. *Sorrell*, 564 U.S. at 566. The Supreme Court held in *Sorrell* that "heightened judicial scrutiny is warranted" when a statute is "designed to impose a specific, content-based burden on protected expression." 564 U.S. at 565. There, the Court invalidated a Vermont law that restricted pharmaceutical companies from using industry information to market drugs to doctors. *Id.* at 557–58. It explained that States are not permitted to advance policy goals "through the indirect means of restraining certain speech by certain speakers," *id.* at 577, nor may they "burden the speech of others in order to

53

tilt public debate in a preferred direction," *id.* at 578–79. "The First Amendment requires heightened scrutiny whenever the government creates a regulation of speech because of disagreement with the message it conveys," even in the commercial speech context. *Id.* at 566 (internal quotations omitted). Accordingly, laws that impose content- and speaker-based burdens on protected speech are "presumptively invalid" and "the outcome is the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied." *Sorrell*, 564 U.S. at 571 (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992)).[48]

Following this reasoning, the appellant in *Retail Digital* argued that "for content- or speaker-based regulations of commercial speech, *Sorrell* requires courts to apply a greater level of scrutiny than *Central Hudson* previously required." 861 F.3d at 846. This Court rejected that argument, concluding instead that *Sorrell* did not "mark a fundamental departure from *Central Hudson's* four-factor test, and *Central Hudson* continues to apply." *Id.* In so holding, this Court emphasized that *Sorrell's* discussion of "heightened scrutiny" and whether the "law at issue imposed a content- or speaker-based burden" appeared only in the Supreme Court's consideration of whether the Vermont statute "was a speech

---

[48] Both the majority and dissent in *Sorrell* agreed on one thing: the test the majority prescribed was stricter than *Central Hudson's* test for commercial speech. *See Sorrell*, 564 U.S. at 588 (Breyer, J., dissenting) (agreeing the majority applied a stricter test than *Central Hudson*).

regulation in the first instance." *Id.* at 847. Therefore, in the panel's view, the *Sorrell* Court's reference to "heightened scrutiny" was simply a reference to "the scrutiny that courts apply to speech regulations—as opposed to the rational basis review that courts apply to non-speech regulations of commerce and non-expressive conduct." *Id.* at 847.

The Supreme Court's decision in *Barr* undermines this distinction. By reaffirming that content-based restrictions of ***any*** speech are subject to strict scrutiny, the Supreme Court emphasized that although the "First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech," content- and speaker-based laws inherently impose more than an incidental burden on protected expression. *Barr*, 140 S.Ct. at 2347 (citing *Sorrell*, 564 U.S. at 567). Thus, the dispositive issue is not whether the regulated speech is commercial, but rather, whether the law "is directed at certain content and is aimed at particular speakers." *Id.* (quoting *Sorrell*, 564 U.S. at 567).

Since *Barr*, at least one circuit court has held that "the intermediate-scrutiny standard applicable to commercial speech under *Central Hudson* . . . applies only to a speech regulation that is content-neutral on its face." *Int'l Outdoor, Inc. v. City of Troy, Michigan*, 974 F.3d 690, 703 (6th Cir. 2020). Put differently, "a regulation of commercial speech that is not content-neutral is still subject to strict scrutiny under *Reed*." *Id.* There, the district court determined "that the speech at issue—

erecting advertising billboards—was commercial speech and therefore not subject to strict scrutiny," and held that the law at issue survived intermediate scrutiny under *Central Hudson*. *Id.* at 707. The Sixth Circuit vacated this decision, holding that because the ordinance was a content-based restriction on speech, the district court should have applied "strict and not intermediate scrutiny." *Id.* at 708.

In view of the foregoing, this Court should abandon *Retail Digital* and hold that ***all*** content- and speaker-based restrictions are subject to strict scrutiny under *Reed*. Applying this standard, the State bears the burden to "prov[e] the constitutionality of its actions." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000). Accordingly, if this Court agrees that AB 2571 imposes a content- and speaker-based restriction on protected speech, it should hold that Appellants have established a likelihood of success on the merits of their First Amendment speech claim.

> c.      *Section 22949.80 Impermissibly Regulates Speech that is Inextricably Intertwined with Constitutionally-Protected Activity.*

When an advertisement is "inextricably intertwined with core political and economic messages," the statute regulates core political speech, not just commercial speech, and is subject to strict scrutiny. *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 818 (9th Cir. 2013) (citing *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,* 487 U.S. 781, 796 (1988)). For instance, the Supreme Court has struck down

bans on advertising of contraceptives, partly because "the information suppressed by this statute 'related to activity with which . . . the State could not interfere.'" *Carey v. Population Servs. Int'l*, 431 U.S. 678, 700–01 (1977) (citation omitted); *see also Bolger v. Youngs Drug Prods.*, 463 U.S. 60, 69 (1983) (striking down ban on mailing contraceptive advertisements, partly because "advertising for contraceptives . . . relates to activity which is protected from unwarranted state interference"). This Court has also noted that political speech on a firearm is protected speech. *Nordyke v. King*, 319 F.3d 1185, 1190 (9th Cir. 2003).

The Supreme Court's decision in *Carey* illustrates this concept. There, the Court affirmed the district court's holding that "the prohibition of any 'advertisement or display' of contraceptives is unconstitutional." *Carey*, 431 U.S. at 700. The Court distinguished the ban on contraceptive advertising from a regulation that is "a mere time, place, and manner restriction," that "prohibits only misleading or deceptive advertisements," or restricts advertisements that propose illegal transactions. *Id.* (citation omitted). And it emphasized that "in addition to the 'substantial individual and societal interests' in the free flow of commercial information . . . the information suppressed by this statute" related to constitutionally-protected activity. *Id.* at 700–01. Finally, the Court rejected the appellants' contention that the advertisements might legitimate illicit sexual behavior, finding that none of the advertisements could be even remotely

"characterized as 'directed to inciting or producing imminent lawless action and

. . . likely to incite or produce such action.'" *Id.* at 701 (quoting *Brandenburg v.*

*Ohio*, 395 U.S. 444, 447 (1969)).

The same heightened constitutional protection extends to the lawful

possession and use of firearms, which the Second Amendment protects. *N.Y. State*

*Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2127, 2129–30 (2022); *District*

*of Columbia v. Heller*, 554 U.S. 570, 628–29, 635 (2008). The Second Amendment

implicitly includes the right to acquire firearms. *See Ezell v. City of Chicago*

*(Ezell I)*, 651 F.3d 684, 704 (7th Cir. 2011) ("[t]he right to possess firearms for

protection implies a corresponding right to acquire and maintain proficiency in

their use; the core right wouldn't mean much without the training and practice that

make it effective."); *Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F.

Supp. 2d 928, 930 (N.D. Ill. 2014) ("the right to keep and bear arms for self-

defense under the Second Amendment . . . must also include the right to ***acquire*** a

firearm") (emphasis added).

Thus, the advertisements restricted by Section 22949.80 do much more than

merely "link[] a product to a current public debate." *Bd. of Tr. of State Univ. of*

*N.Y. v. Fox*, 492 U.S. 469, 475 (1989). They directly concern constitutionally-

protected conduct. *Cf. id.* at 473–74 (the commercial speech of selling Tupperware

at "Tupperware parties" was not "inextricably intertwined" with the fully protected

58

speech discussed at those parties because "nothing . . . prevents the speaker from conveying, or the audience from hearing, these noncommercial messages, and nothing in the nature of things requires them to be combined with commercial messages.").[49]

There can be no question that Section 22949.80 restricts advertisements intertwined with the lawful possession and use of firearms. Although minors cannot lawfully purchase firearms in California, the State conceded below that the law allows them to possess and use firearms under certain circumstances with adult supervision.[50] *See, e.g.*, Cal. Penal Code § 27505(b)(2) (permitting the loan of a firearm to a minor for lawful recreational, agricultural, hunting, or artistic performance purposes); *id.* § 29615 (permitting a minor to possess a firearm for lawful recreational, agricultural, hunting, or artistic performance purposes if accompanied by a parent or adult guardian)). Indeed, minors have a constitutional right to do so. *See Jones v. Bonta*, 34 F.4th 704, 720–23 (9th Cir. 2022) ("young adults have Second Amendment protections"); *Ezell v. City of Chicago (Ezell II)*, 846 F.3d 888, 896 (7th Cir. 2017) ("There's zero historical evidence that firearm training for [minors under 18] is categorically unprotected" by the Second

---

[49] *See, e.g.*, 3-ER-531–33, 538–42, 544–551.
[50] 2-ER-108–09.

Amendment). The State, therefore, cannot claim that Section 22949.80 facially restricts only unlawful activity.

Nor may the State "'completely suppress the dissemination of concededly truthful information about entirely lawful activity,' even when that information could be categorized as 'commercial speech.'" *Carey*, 431 U.S. at 700 (quoting *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,* 425 U.S. 748, 773 (1976)). As in *Carey*, here, there is no legitimate rationale for the State to completely suppress the dissemination of truthful information about lawful activity.

### 2. Section 22949.80 Violates the First Amendment's Protection of Commercial Speech under *Central Hudson*.

The First Amendment protects commercial speech—speech that "does no more than propose a commercial transaction" or relates solely to the economic interests of the speaker and audience—provided it is not misleading and concerns lawful activity. *Cent. Hudson*, 447 U.S. at 563. Under *Central Hudson*, a court first inquires "whether the expression [being restricted] is protected by the First Amendment," which means that "it at least must concern lawful activity and not be misleading." *Id.* at 566. Second, the State must show that the "asserted governmental interest is substantial." *Id.* Then, "[i]f both inquiries yield positive answers," a court "must determine whether the regulation directly advances the

governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Id.*

        *a.    Section 22949.80 Restricts Truthful Speech Concerning Lawful Activity.*

As the district court recognized, "Section 22949.80 regulates some commercial speech that is not misleading and which concerns certain lawful activities involving minors and firearms."[51] Indeed, on its face, Section 22949.80 restricts a broad range of truthful speech concerning lawful activity. "An offer to sell firearms or ammunition" is constitutionally protected commercial speech. *Nordyke v. Santa Clara*, 110 F.3d 707, 710 (9th Cir. 2009). And the Second Amendment protects the right of minors to bear arms and maintain proficiency in their use, subject to limited and well-established historical regulations such as those requiring adult approval and supervision. *See Jones*, 34 F.4th at 720–23 ("young adults have Second Amendment protections"); *Ezell*, 846 F.3d at 896; *see also Bruen*, 142 S. Ct. at 2127, 2129–30. This is reflected in California's laws, which allow minors to possess and use firearms, with adult supervision, for hunting and other recreational shooting activities.[52] *Cf. Washington Mercantile Ass'n v. Williams*, 733 F.2d 687, 691 (9th Cir. 1984) (advertising drug

---

[51] 1-ER-18.

[52] *See* 2-ER-108–09 (citing statutes).

paraphernalia in states where it is legal is protected speech, but advertising in Washington, where it was illegal, is not).

As discussed, Appellants engage in a range of speech that Section 22949.80 now prohibits. Appellants widely distribute printed and electronic communications promoting their events and programs, including images or depictions of adults and minors handling or "using firearm-related products."[53] Furthermore, their lawful activities regularly involve signage, flyers, discussions, branded merchandise and giveaways, and/or other communications depicting minors exercising (often accompanied by supervising adults), or otherwise encouraging the exercise of the Second Amendment right to possess and use lawful firearms for lawful purposes.[54]

Section 22949.80 is not limited to commercial sales of firearms and ammunition. It encompasses much more. *See* Cal. Bus. & Prof. Code § 22949.80(c)(3), (5), & (6); *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (a statute must be interpreted "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant"). Read together with its constituent parts, Section 22949.80 prohibits advertising of not only firearms, but also a wide range of "firearm-related products," including vaguely-defined "firearm accessor[ies]." Cal. Bus. & Prof. Code §§ 22949.80(a), (c)(3), (5), & (6).

---

[53] *See* 3-ER-373–74, 387, 428–29.
[54] *See* 3-ER-374–77, 386–88.

This interpretation is consistent with the "evidence" that lawmakers cited in support of the statute, which shows the statute's purpose is to prevent firearm industry members from "attract[ing] future legal gun owners" and "recruiting children into gun culture."[55]

The State here cannot rely on the principle that "offers to give or receive what it is unlawful to possess . . . enjoy no First Amendment protection." *Williams*, 553 U.S. at 298. As discussed, minors may lawfully possess and use firearms under certain circumstances.[56] Nor can the State, relying on generalized statistics about the effects of advertising on minors, show that Section 22949.80 restricts only speech concerning the unlawful sale of firearms to minors. There is no evidence of, for example, a scourge of unlawful sales of firearms to minors. Even if there were, there is no evidence linking Appellants' protected speech to such sales. Nor is there any support for the State's assumption that the advertisements restricted by Section 22949.80 propose illegal firearm sales to minors, instead of lawful sales to adults.

Even in cases involving unlawful sales, an intent to "initiat[e] the transfer" of the unlawful product is required. *Id*. at 300. However, Section 22949.80 does not require scienter—it requires only that the advertisement "reasonably appear to

---

[55] *See* 2-ER-168–74.

[56] *See* 2-ER-108–09 (citing statutes).

be attractive to minors." Cal. Bus. & Prof. Code § 22949.80(a)(1). Even if Section

22949.80's loose discussion of intent could be considered as requiring scienter, this

language falls well short of the constitutional requirements because it does not

require showing an intent to initiate an unlawful transfer. *Cf. Stevens*, 559 U.S. at

474 (statute was overbroad because its "ban on a 'depiction of animal cruelty'

nowhere requires that the depicted conduct be cruel."); *id.* at 475 (although the

statute required that the depicted conduct be "illegal," it did not distinguish "based

on the reason the . . . killing of an animal is made illegal"). Rather, the language

asks only whether an advertisement might be attractive to minors. This bears on

the lawfulness of some of the prohibited images—not scienter, which is a separate

concept.

> b.    *The State Has No Interest in Banning Appellants'*
>        *Protected Speech.*

AB 2571 claims to advance two "compelling" state interests: (1) "ensuring

that minors do not possess these dangerous weapons," (i.e., firearms); and (2)

"protecting its citizens, especially minors, from gun violence and from intimidation

by persons brandishing these weapons." Appellants dispute the genuineness of

these interests and contend Section 22949.80 does nothing to advance them. *See*

Section II.B.2.c., *infra*. The Supreme Court has repeatedly said that "bans that

target truthful, nonmisleading commercial messages rarely protect consumers from

[commercial] harms. Instead, such bans often serve only to obscure an 'underlying

governmental policy' that could be implemented without regulating speech." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 502–03 (1996).

Though the State claims to be concerned with unlawful gun violence, as discussed, Section 22949.80 was enacted to curb interest in firearms and Second Amendment-protected activities among minors. The district court recognized this at the hearing on Appellants' Motion.[57] But there is no legitimate State interest in restricting demand for lawful, constitutionally-protected products and activities. *See Aschcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002) ("The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it."); *44 Liquormart*, 517 U.S. at 502–03 (bans of nonmisleading information "serve only to obscure an 'underlying governmental policy' that could be implemented without regulating speech").

> c. *The State Cannot Establish That Section 22949.80 Directly and Materially Advances a Legitimate Government Interest.*

The third *Central Hudson* prong requires the government to show "that the speech restriction directly and materially advances the asserted governmental interest[s]." *Greater New Orleans Broad. Ass'n v. United States*, 528 U.S. 173, 188 (1999). This requires more than "mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must

---

[57] *See* 2-ER-81–82.

demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield*, 507 U.S. at 770–71. The direct advancement prong requires the government to advance its goals "in a permissible way," not by operating based on "the 'fear that people would make bad decisions if given truthful information.'" *Sorrell*, 564 U.S. at 570 (citation omitted); *see also Free Speech Coal.*, 535 U.S. at 245.

Thus, regulations that "only indirectly advance the state interest involved" have consistently been declared unconstitutional. *Cent. Hudson*, 447 U.S. at 564. For example, in *Va. State Bd. of Pharmacy*, the Supreme Court invalidated a law declaring it unprofessional for a pharmacist to advertise prescription drug prices because "[t]he advertising ban [did] not directly affect professional standards one way or the other." 425 U.S. at 769. Likewise, in *Bates v. State Bar of Arizona*, the Court invalidated an advertising prohibition designed to protect the "quality" of a lawyer's work, finding that "[r]estraints on advertising . . . are an ineffective way of deterring shoddy work." 433 U.S. at 378. In *Bolger*, the Supreme Court held that although the government had a substantial interest in "aiding parents' efforts to discuss birth control with their children," the federal ban on "mailing of unsolicited advertisements for contraceptives" was only marginally related to that goal and therefore unconstitutional. 463 U.S. at 73.

Section 22949.80 is even more attenuated from the State's declared interests. The California Legislature found that "the proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, this state." 2022 Cal. Stats., Ch. 77, § 1(a). This finding was based in part on the fact that "[i]n 2021 there were approximately 259 *unintentional shootings* by children, resulting in 104 deaths and 168 injuries."[58] The Legislature then declared that "[f]irearms marketing contributes to the unlawful sale of firearms to minors, as well as the unlawful transfer of firearms to minors by adults who may possess those weapons lawfully." 2022 Cal. Stats., Ch. 77, § 1(a). The Legislature, in effect, speculates that prohibiting a broad category of speech promoting firearms and "firearm-related products" in a manner that ***might*** be attractive to minors will reduce demand for firearms. The Legislature then concludes by drawing another attenuated (or more likely nonexistent) connection between this speculative reduction in demand and the interest in protecting minors from gun violence.

As discussed, Section 22949.80 prohibits advertising of a wide range of "firearm-related products," not just firearms. Cal. Bus. & Prof. Code §§ 22949.80(a), (c)(3), (5), & (6). That notwithstanding, the advertising ban does not directly affect the unlawful sale of firearms to minors, nor can it directly affect the

---

[58] *See* 2-ER-170.

number of shootings involving minors. *Cf. New York v. Ferber*, 458 U.S. 747, 759, 761 (1982) (the market for child pornography was "intrinsically related" to the underlying abuse, and was therefore "an integral part of the production of such materials, an activity illegal throughout the Nation"); *Stevens*, 559 U.S. at 470–72. Moreover, there is no finding or evidence tying these unintentional shootings to the unlawful sale of a firearm, let alone to advertising related to any such unlawful sale. The State cannot point to a single instance showing that a "firearm industry member" would advertise an illegal sale of a firearm to a minor. Instead, to the extent any commercial transaction is proposed, it is a lawful transaction to be consummated by an adult through a licensed firearms dealer.

Nor does the advertising ban conceivably affect "the unlawful transfer of firearms to minors by adults who may possess those weapons lawfully." 2022 Cal. Stats., Ch. 77, § 1(a). Notwithstanding the Legislature's failure to relate these purported unlawful transfers to minors with the cited incidences of unintentional shootings involving minors, any such transfer is too attenuated from the commercial transaction for the advertising ban to reduce the instances of these alleged unlawful transfers from adults to minors.

Moreover, the State lacks an interest "in preventing the dissemination of truthful commercial information in order to prevent members of the public from making bad decisions with the information." *Thompson*, 535 U.S. at 374; *Sorrell*,

564 U.S. at 577. Thus, to the extent Section 22949.80 aims to reduce demand for firearms—not just among minors, but also adults (i.e., the finding that adults may transfer **lawfully-owned** firearms)—it does what the Supreme Court has condemned: prevent consumers' supposedly "bad" but perfectly lawful "decisions" by denying them "truthful commercial information." The State "may not seek to remove a popular but disfavored product from the marketplace by prohibiting truthful, nonmisleading advertisements." *Sorrell*, 564 U.S. at 577–78.

> *d.*      *Section 22949.80 Is More Extensive than Necessary.*

Section 22949.80 also fails the final step of the *Central Hudson* analysis, in which the government must prove "the speech restriction is not more extensive than necessary to serve the interests that support it." *Lorillard Tobacco*, 533 U.S. at 556 (citation and quotation marks omitted). This step reflects the view that, "[i]f the First Amendment means anything, it means that regulating speech must be a last—not first—resort." *Thompson*, 535 U.S. at 373. "[I]f the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so." *Id.* at 371–72.

The Supreme Court has consistently struck down broadly based bans on truthful, nonmisleading commercial speech designed to serve ends unrelated to consumer protection. *44 Liquormart*, 517 U.S. at 497–98. It is true that the Court has recognized that States may require commercial messages to "appear in such a

69

form, or include such additional information, warnings, and disclaimers, as are necessary to prevent its being deceptive." *Va. Bd. of Pharmacy*, 425 U.S. at 772 n.24. But the State has far less regulatory authority "when its commercial speech restrictions strike at 'the substance of the information communicated' rather than the 'commercial aspect of [it]—with offerors communicating offers to offerees.'" *44 Liquormart*, 517 U.S. at 498 (citation omitted).

Here, Section 22949.80's ostensible purpose is to prevent minors from seeing content that will make them more likely to use firearms in an unlawfully. But the Supreme Court, more than 65 years ago, invalidated a Michigan ban on material "tending to incite minors to violent or depraved or immoral acts, manifestly tending to the corruption of the morals of youth." *Butler v. Michigan,* 352 U.S. 380, 381 (1957) (quoting former Mich. Penal Code § 343)).

The Court's decision in *Playboy Ent.* is also instructive. There, the Court invalidated a statute that "require[d] cable television operators who provide channels 'primarily dedicated to sexually-oriented programming' either to 'fully scramble or otherwise fully block' those channels or to limit their transmission to hours when children are unlikely to be viewing, set by administrative regulation as the time between 10 p.m. and 6 a.m." 529 U.S. at 806. There was, however, a less-restrictive measure: blocking the channels at individual homes upon the homeowner's requests. *Id.* at 816.

This Court has likewise invalidated commercial speech regulations as overinclusive where enforcement of preexisting laws would serve its interest without burdening speech. *Valle Del Sol*, 709 F.3d at 826–27; *Project 80's, Inc. v. City of Pocatello*, 942 F.2d 635, 638 (9th Cir. 1991) ("restrictions which disregard far less restrictive and more precise means are not narrowly tailored").

In *Valle Del Sol*, the plaintiffs challenged an Arizona law barring in-street solicitation of day laborers, which the state claimed was justified by its interest in traffic safety. The solicitation ban failed the fourth step of the *Central Hudson* test because Arizona could have served its interest without burdening speech by enforcing its existing traffic safety regulations and by enacting additional speech-neutral regulations. 709 F.3d at 826–27; *see Stevens*, 559 U.S. at 474–77.

Section 22949.80 fails the fourth prong of the *Central Hudson* test for the same reasons as in *Playboy Ent.* and *Valle Del Sol*. California comprehensively regulates the sale, purchase, and possession of firearms, particularly by minors. It could achieve its interest in preventing unlawful sales or transfers to minors by enforcing existing laws and regulations. If such enforcement is insufficient, the Legislature can pass additional direct regulations (within constitutionally permissible boundaries). *See Valle Del Sol*, 709 F.3d at 826–27; *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1125 (9th Cir. 2020). The State could also take steps to achieve its asserted interest that do not involve restricting protected speech.

California could, for example, ban only advertisements depicting minors engaging in unlawful conduct with firearms. It could also conduct educational campaigns promoting responsible firearm use by minors. Indeed, State agencies already promote such campaigns.[59]

Once "a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals." *Playboy Ent.*, 529 U.S. at 816. "To meet this burden, the state must provide 'more than anecdote and supposition;' it must point to evidence in the legislative record or present other evidence that demonstrates why the challenged restriction, rather than a less restrictive alternative, is necessary to further its significant interests. *Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1228 (9th Cir. 2019) (quoting *Playboy Ent.,* 529 U.S. at 820–22). Courts "must not 'assume a plausible, less restrictive alternative would be ineffective.'" *Holt v. Hobbs*, 574 U.S. 352, 369 (2015) (citation omitted).

On this point, the district court committed reversible error by shifting the burden to Appellants to present evidence "supporting the efficacy of the alternative

---

[59] *See, e.g.*, *California's In-Person Hunter Education Instruction Returns; Online Courses Remain a Permanent Option*, CAL. DEP'T OF FISH & WILDLIFE (Apr. 15, 2022), *available at* https://wildlife.ca.gov/News/californias-in-person-hunter-education-instruction-returns-online-courses-remain-a-permanent-option. (Cited at 3-ER-366).

means they propose."[60] The State, for its part, dismissed Appellants' alternatives out of hand, arguing not that they are implausible, but rather that the State's chosen means are proportional to the interests they purport to serve.[61] However, where, as here, "there are numerous and obvious less-burdensome alternatives to the restriction on commercial speech, that is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable." *City of Cincinnati*, 507 U.S. at 417 n.13. The district court erred both by improperly placing the burden on Appellants to justify the facially plausible alternatives, and by failing to meaningfully analyze whether, in view of numerous plausible alternatives, Section 22949.80's restriction on commercial speech is a "reasonable fit" to achieve the State's objective.

### C. Section 22949.80 Violates Appellants' Right to Associate.

The First Amendment protects not only the right of free speech, but also "the right of the people peaceably to assemble." U.S. Const., amend. I. The right to assemble is closely associated, and often merges, with the right to free expression. *Buckley v. Valeo*, 424 U.S. 1, 25 (1976); *Shelton v. Tucker*, 364 U.S. 479, 486 (1960). Because the "threat of sanctions may deter" the exercise of First Amendment freedoms "as potently as the actual application of sanctions,"

---

[60] 1-ER-28–29.

[61] *See* 2-ER-116.

government may regulate expressive and associational conduct "only with narrow specificity." *Button*, 371 U.S. at 433; *see NAACP v. Patterson*, 357 U.S. 449, 461–62 (1958). The State must prove that the regulation is "necessary" to achieve a "compelling" and "legitimate" state interest. *Button*, 371 U.S. at 433, 438–39.

Section 22949.80 burdens associational conduct and, for the reasons discussed in preceding sections, the State cannot prove that the regulation is necessary to achieve either a compelling or a legitimate interest. Section 22949.80 infringes on Appellants' right to freely associate and assemble because it prohibits them from advertising or marketing their various firearm-related programs, where Appellants and members of the public, including youths, peacefully and lawfully assemble and associate with one another. Likewise, it prohibits Appellants from advertising or marketing events that they sponsor where firearm-related products are exhibited and sold—core Second Amendment-related activity—and where members of the public and youths often assemble together.

There is no compelling (or legitimate) government interest in prohibiting "firearm industry members" from advertising or marketing their firearm-related youth programming and services and the "firearm-related products" used, sold, endorsed, recommended, or advertised at such events. Section 22949.80 effectively puts an end to such events and, by extension, the rights of Appellants to associate and assemble at them. *See Button*, 371 U.S. at 433–34. Even if the State's interests

74

were compelling, they could be achieved through less drastic means. *See Wooley v. Maynard*, 430 U.S. 705, 716–17 (1977) ("The breadth of legislative abridgement must be viewed in the light of less drastic means for achieving the same purpose.").

    **D.**    <u>**Section 22949.80 Unconstitutionally Discriminates against Appellants**</u>.

The Fourteenth Amendment provides that no state shall deny to any person within its jurisdiction the equal protection of the laws. Singling out speakers because of the content of their speech violates their fundamental rights under the Equal Protection Clause. U.S. CONST., amend. XIV. If unequal treatment occurs in the context of exercising a fundamental right, or the government is motivated by animus toward a disfavored group, courts apply heighted scrutiny. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985). Indeed, "[b]ecause the right to engage in political expression is fundamental to our constitutional system, statutory classifications impinging upon that right must be narrowly tailored to serve a compelling governmental interest." *Austin v. Mich. Chamber of Commerce*, 494 U.S. 652, 666 (1990), *rev'd on other grounds*, *Citzs. United v. Fed. Elec. Comm'n*, 558 U.S. 310 (2010).

As discussed, Section 22949.80 is a content- and speaker-based restriction on Plaintiffs' protected speech that serves no compelling governmental interest. The legislative history of Section 22949.80 evinces an intent to thwart the

promotion and preservation of the nation's historical tradition of firearms ownership in California through the passing down of pro-gun attitudes and traditions to future generations. Section 22949.80 does not apply to similar or opposing speech made by businesses, organizations, or people who are not considered "firearm industry members." There is no legitimate interest in singling out politically disfavored "firearm industry members," while leaving members of other industries, like the popular entertainment and video game industries, as well as anti-gun organizations, free to engage in similar or identical speech.

## III. APPELLANTS SATISFY THE REMAINING PRELIMINARY INJUNCTION FACTORS.

### A. Irreparable Harm is Presumed Because Section 22949.80 Infringes on Appellants' Rights under the First and Fourteenth Amendments.

To obtain a preliminary injunction, a party must show that it "is likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. As discussed, the district court erred as a matter of law in determining that Appellants are not likely to succeed on their claims.

Appellants' likelihood of success on the merits presumptively establishes irreparable harm because Section 22949.80 causes the constitutional injury. *Rendish v. City of Tacoma*, 123 F.3d 1216, 1226 (9th Cir. 1997); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). This is because "constitutional violations cannot be adequately remedied through damages and therefore generally

76

constitute irreparable harm." *Stormans, Inc. v. Stelecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (quotation marks omitted). As the State conceded below, "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Klein v. City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Accordingly, Appellants "established a threatened and imminent irreparable harm that cannot be adequately compensated at a later time," so as to warrant injunctive relief. *Garrett v. City of Escondido*, 465 F. Supp. 2d 1043, 1052 (S.D. Cal. 2006). The district court's conclusion to the contrary is legally incorrect; it should have found that the irreparable harm factor tipped in Appellants' favor.

## B. The Balance of the Equities and Public Interest Warrant Preliminary Relief.

When a government entity is a party to a lawsuit, it is appropriate to "consider the balance of equities and the public interest together." *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018). As Plaintiffs explained below, the balance of equities tips sharply in their favor "because they have a significant First Amendment and economic interest in engaging in [the prohibited] speech," and California "need not impede that speech in order to pursue its" interests. *Valle Del Sol Inc.*, 709 F.3d at 828–29. If Section 22949.80 is not enjoined, Defendant-Appellee will enforce this unconstitutional law against Appellants, who will be

forced to choose between sacrificing their First Amendment rights or incurring devastating financial penalties.

Conversely, an injunction would impose no administrative burden on the State, nor threaten public safety, since California's direct restrictions on the unlawful purchase, sale or possession of firearms would remain intact. And California "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Additionally, the Ninth Circuit has "consistently recognized the 'significant public interest' in upholding free speech principles, as the 'ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of plaintiffs, but also the interests of other people subjected to the same restrictions." *Klein*, 584 F.3d at 1208 (citation omitted). A preliminary injunction would also promote the public interest by allowing for the free flow of commercial information. *See e.g.*, *Bates*, 433 U.S. at 364; *Va. Bd. of Pharmacy*, 425 U.S. at 765. On the other hand, enforcement of an unconstitutional law is against the public interest. *See e.g.*, *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005); *ACLU v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) ("[T]he public interest is not harmed by preliminarily enjoining the enforcement of a law that is

probably unconstitutional."). Given these considerations, the balance of the equities plainly tips in Appellants' favor.

## CONCLUSION

For the foregoing reasons, the district court committed reversable error in denying Appellants' motion for preliminary injunction. Appellants, therefore, respectfully ask this Court to reverse that order and remand for further proceedings.

Dated: March 10, 2023

<div style="margin-left:40%">

SNELL & WILMER L.L.P.

By: */s/ Cameron J. Schlagel*
    Michael B. Reynolds
    Colin R. Higgins
    Cameron J. Schlagel

Attorneys for Plaintiff-Appellants

</div>

**NOTICE OF RELATED CASE**

This appeal involves several issues that are the same as or closely related to those raised in another currently pending appeal: *Junior Sports Magazines, Inc.,* et al., *v. Rob Bonta*, Case No. 22-56090.

Dated: March 10, 2023

SNELL & WILMER L.L.P.

By: */s/ Cameron J. Schlagel*
    Michael B. Reynolds
    Colin R. Higgins
    Cameron J. Schlagel

Attorneys for Plaintiff-Appellants

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-15199

I am the attorney or self-represented party.

**This brief contains** | 13,829 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Cameron J. Schlagel | **Date** | March 10, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**        *Rev. 12/01/22*