*Appeal No. 23-15199*

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

SAFARI CLUB INTERNATIONAL,
an Arizona nonprofit corporation, et al.,

Plaintiff-Appellants,

v.

ROB BONTA, in his official capacity as
Attorney General of the State of California,

Defendant-Appellee.

---

On Appeal from the United States District Court
for the Eastern District of California
Hon. Dale A. Drozd
Case No. 2:22-cv-01395-DAD-JDP

---

## APPELLANTS' REPLY BRIEF

---

Michael B. Reynolds
Colin R. Higgins
Cameron J. Schlagel
SNELL & WILMER L.L.P.
600 Anton Blvd, Suite 1400
Costa Mesa, California 92626-7689
Telephone: 714.427.7000
Facsimile: 714.427.7799
mreynolds@swlaw.com
chiggins@swlaw.com
cschlagel@swlaw.com

Attorneys for Plaintiff-Appellants

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

ARGUMENT ..........................................................................................................2

I.    Section 22949.80 is Subject to Strict Scrutiny, Not *Central Hudson*. ...........2

    A.    Section 22949.80 Discriminates Against Speech Based on the Viewpoint of the Message. ..................................................................3

    B.    Section 22949.80 Imposes Content-Based Restrictions on Both Noncommercial and Commercial Speech. ..........................................7

        1.    Section 22949.80 Restricts Noncommercial Speech. ...............8

        2.    Section 22949.80 Restricts Commercial Speech That Is Inextricably Intertwined with Fully Protected Speech. ...........12

II.    Section 22949.80 Fails *Central Hudson*......................................................13

    A.    Section 22949.80 Targets Truthful, Non-Misleading Speech. ..........13

        1.    Section 22949.80 Prohibits Speech Regarding Lawful Products that Minors and Adults may Lawfully Purchase and Possess...................................................................................14

        2.    Section 22949.80 Does Not Exclude Lawful Activity. ...........18

    B.    Section 22949.80 Does Not Serve a Significant Government Interest. ..........................................................................................19

    C.    Section 22949.80 Does Not Directly Advance Any of the State's Proffered Interests. ............................................................21

        1.    The State Fails to Establish Any Relation between Firearm-Related Advertisements and Unlawful Possession or Use of Firearms by Minors. .............................21

        2.    The State's Dampening Demand Justification Is Disconnected from Firearm-Related Advertisements. ...........22

    D.    Section 22949.80 Is Not Narrowly Tailored to Achieve the State's Interests..................................................................................24

III.    Section 22949.80 is Unconstitutionally Overbroad and Vague. .................27

    A.    Section 22949.80 is Overbroad. ......................................................27

## TABLE OF CONTENTS
(continued)

Page

B.      Section 22949.80 is Vague...................................................................28

IV.    Section 22949.80 Violates Appellants' Right to Associate. ........................29

V.     Section 22949.80 Violates Appellants' Equal Protection Rights.................30

VI.   Appellants Satisfy the Remaining Preliminary Injunction Factors.............30

CONCLUSION .......................................................................................31

TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*44 Liquormart, Inc. v. Rhode Island*,
   517 U.S. 484 (1996)..................................................................... 10, 19, 25

*Bad Frog Brewery, Inc. v. New York State Liquor Auth.*,
   134 F.3d 87 (2d Cir. 1998)........................................................... 21, 22

*Bates v. State Bar of Arizona*,
   433 U.S. 350 (1977)..................................................................... 24, 27

*Bigelow v. Virginia*,
   421 U.S. 809 (1975).............................................................................9

*Bolger v. Youngs Drug Products Corp.*,
   463 U.S. 60 (1983)......................................................................... 8, 24

*Brown v. Entm't Merchants Ass'n*,
   564 U.S. 786 (2011).........................................................................6, 27

*Carey v. Population Servs. Int'l*,
   431 U.S. 678 (1977).........................................................................13

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
   447 U.S. 557 (1980).........................................................................24

*Dex Media W., Inc. v. City of Seattle*,
   696 F.3d 952 (9th Cir. 2012) ........................................... 8, 10, 11, 12

*Educ. Media Co. at Virginia Tech, Inc. v. Swecker*,
   602 F.3d 583 (4th Cir. 2010) ............................................................23

*Elrod v. Burns*,
   427 U.S. 347 (1976)........................................................................30

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972)..................................................................... 28, 29

*Greater New Orleans Broad. Ass'n, Inc. v. United States*,
   527 U.S. 173 (1999)..................................................................... 20, 24

*Hunt v. City of Los Angeles*,
   638 F.3d 703 (9th Cir. 2011) ..........................................................7, 8

*Iancu v. Brunetti*,
   139 S. Ct. 2294 ................................................................................5

*Interpipe Contracting, Inc. v. Becerra*,
   898 F.3d 879 (9th Cir. 2018) ............................................................6

TABLE OF AUTHORITIES
(continued)

Page(s)

*Lorillard Tobacco Co. v. Reilly*,
  533 U.S. 525 (2001) ........................................................................ 21, 25
*Matal v. Tam*,
  582 U.S. 218 (2017) ................................................................... 3, 5, 25
*Miracle v. Hobbs*,
  427 F. Supp. 3d 1150 (D. Ariz. 2019) ................................................. 31
*NAACP v. Button*,
  371 U.S. 415 (1963) .......................................................................... 9, 30
*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022) ........................................................................ 12
*Nordyke v. Santa Clara*,
  110 F.3d 707 (9th Cir. 2009) ............................................................... 14
*Project 80's, Inc. v. City of Pocatello*,
  942 F.2d 635 (9th Cir. 1991) ............................................................... 26
*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992) ............................................................................ 12
*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) .............................................................................. 3
*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
  487 U.S. 781 (1988) ............................................................................ 12
*Rubin v. Coors Brewing Co.*,
  514 U.S. 476 (1995) ............................................................................ 25
*S.O.C., Inc. v. Cnty. of Clark*,
  152 F.3d 1136 (9th Cir. 1998) .................................................... passim
*SEC v. Wall St. Pub. Inst., Inc.*,
  851 F.2d 365 (D.C. Cir. 1988) .............................................................. 9
*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ................................................................. 7, 19, 20
*Thompson v. W. States Med. Ctr.*,
  535 U.S. 537 (2002) .................................................................... 20, 25
*United States v. Edge Broad. Co.*,
  509 U.S. 418 (1993) .................................................................... 19, 20
*United States v. Stevens*,
  559 U.S. 460 (2010) ............................................................................ 18
*United States v. Williams*,
  553 U.S. 285 (2008) ............................................................. 18, 19, 27

iv

TABLE OF AUTHORITIES
(continued)

Page(s)

*Va. State Board of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976)..................................................................................24
*Washington Mercantile Ass'n v. Williams*,
    733 F.2d 687 (9th Cir. 1984) ...............................................................13

Statutes

Cal. Bus. & Prof. Code § 17200 ....................................................... 15, 32
Cal. Bus. & Prof. Code § 22949.80(a)(1) ...............................................4
Cal. Bus. & Prof. Code § 22949.80(a)(2) ...............................................30
Cal. Bus. & Prof. Code § 22949.80(a)(2)(E) ...........................................5
Cal. Bus. & Prof. Code § 22949.80(a)(2)(F) ...........................................12
Cal. Bus. & Prof. Code § 22949.80(b).............................................. 17, 27
Cal. Bus. & Prof. Code § 22949.80(c)(3) ...................................... 17, 28, 29
Cal. Bus. & Prof. Code § 22949.80(c)(4)(A)...........................................15
Cal. Bus. & Prof. Code § 22949.80(c)(5) ...............................................29
Cal. Bus. & Prof. Code § 22949.80(c)(6) ...................................... passim
Cal. Civ. Code §1714.3..........................................................................27
Cal. Pen. Code §§ 25100, 27505, 27510, 29610, 29650 .......................27
Cal. Penal Code §§ 27505(b)(2) ............................................................17

Other Authorities

AB 2571 ...................................................................................................7

## INTRODUCTION

The Attorney General attempts to justify Section 22949.80 by effectively re-writing it as a narrow ban on the advertisement of firearm sales to minors. But Section 22949.80 goes far beyond banning the advertisement of illegal transactions. Nor is the statute restricted to firearms or devices that fit into or attach onto firearms such as high-capacity magazines.

Instead, Section 22949.80 is a regulatory broadside that seeks to curtail enthusiasm for firearms and Second Amendment culture among younger generations by restricting dissemination of information concerning a wide range of lawful products and constitutionally-protected activities. Through this legislation, the State runs roughshod over the First, Fifth, and Fourteenth Amendments.

Section 22949.80 violates the First Amendment because it blatantly discriminates against disfavored viewpoints and imposes content-based restrictions on mixed-content speech. And even if Section 22949.80 is interpreted as restricting only commercial speech, it fails scrutiny under *Central Hudson* because it does not materially advance the State's broad public safety interests, nor is it sufficiently tailored to achieve those interests.

The statute also violates the First and Fifth Amendments because it is unconstitutionally vague and overbroad on its face and, due to the breadth of its restrictions, violates Appellants' First Amendment associational rights. Finally,

Section 22949.80 violates Appellants' equal protection rights by discriminating against "firearm industry members."

## ARGUMENT

### I.   SECTION 22949.80 IS SUBJECT TO STRICT SCRUTINY, NOT *CENTRAL HUDSON*.

Section 22949.80 is subject to strict scrutiny for at least two reasons:

First, it not only requires an examination of the content of communications, but also discriminates against disfavored speakers and viewpoints. The statute thus must be invalidated regardless of whether it restricts purely commercial speech.

Second, the statute plainly restricts noncommercial *and* commercial speech, because it extends to communications that merely "*encourage* recipients . . . to engage in a commercial transaction." Cal. Bus. & Prof. Code § 22949.80(c)(6) (emphasis added). Thus, the statute on its face reaches beyond commercial speech—that which "does *no more* than propose a commercial transaction." *S.O.C., Inc. v. Cnty. of Clark*, 152 F.3d 1136, 1143 (9th Cir. 1998), *amended* 160 F.3d 541 (9th Cir. 1998) (bold added). And given the absence of any clear language limiting Section 22949.80's application to commercial speech, there is a high likelihood it will also inhibit fully-protected expression.

2

**A.** **Section 22949.80 Discriminates Against Speech Based on the Viewpoint of the Message.**

The First Amendment protects against laws that target "specific subject matter," known as content-based discrimination. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). "This category includes a subtype of laws that go further, aimed at the suppression of 'particular views . . . on a subject.'" *Matal v. Tam*, 582 U.S. 218, 248 (2017) (Kennedy, J., concurring) (citation omitted). Viewpoint-based discrimination "is a more blatant and egregious form of content discrimination." *Reed*, 576 U.S. at 168–69 (cleaned up). Thus, a law that discriminates based on viewpoint is presumptively unconstitutional, even if it restricts only commercial speech. *Matal*, 582 U.S. at 251 (Kennedy, J., concurring). "[T]he test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed." *Id.* at 248.

Section 22949.80 plainly discriminates against speech depending on the viewpoint it conveys. It restricts speech that "promot[es]" firearm-related products in a manner that might be deemed "attractive to minors," while permitting speech that advocates against these products or is designed to make them seem unattractive to minors. Cal. Bus. & Prof. Code § 22949.80(a)(1). California exacerbated this viewpoint discrimination when it amended Section 22949.80 to exempt the apparently-State-approved viewpoint that firearms are safe and suitable for minors

3

to use for recreation, like hunting and sport shooting, while still prohibiting other viewpoints, such as that firearms are important for self-defense. *Id.* § 22949.80(a)(1), (3).

Consider the advertisement at 2-ER-216, upon which the California Legislature relied:





Section 22949.80(a)(2)(E) would prohibit this advertisement because it contains an image of a youth hunter using firearm-related products.[1] The advertisement is also prohibited under Section 22949.80(a)(2)(C) because it promotes firearm-related products apparently designed to appeal to youth hunters. But the statute would allow the publication of an identical image with a caption that the same firearm is

---

[1] Project Appleseed is a non-profit dedicated to "promot[ing] civic responsibility through the teaching of colonial history and the American tradition of rifle marksmanship." *Available at* https://appleseedinfo.org/ (visited April 26, 2023).

dangerous for minors to use, especially if accompanied by a short description of an anti-firearm organization's mission and a solicitation for donations, or a promotion of youth merchandise branded with anti-firearm expression. This is quintessential viewpoint discrimination.

Other content-based features of Section 22949.80 confirm this conclusion. The statute singles out "firearm industry members," which it defines to include not just sellers of firearms, but also anyone who "promot[es] . . . the purchase, use, or ownership of firearm-related products . . ." *Id.* § 22949.80(c)(4). It also requires evaluation of communicative content, including whether advertisements use "cartoon characters to promote firearm-related products," *id.* § 22949.80(a)(2)(A), or offer brand name merchandise for minors "that promotes a firearm industry member," *id.* § 22949.80(a)(2)(B).

But Section 22949.80 does not restrict speech by the myriad speakers who ***oppose*** the purchase, use, and ownership of firearm-related products, use "cartoon characters" to espouse anti-firearm points of view, or sell branded merchandise bearing anti-firearm symbols and slogans. This differential treatment has nothing to do with commerce and plainly violates the First Amendment. *See Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019); *Matal*, 582 U.S. at 251 (Kennedy, J., concurring).

The State claims that Section 22949.80 is not aimed at cultural interest in guns, pointing to the Legislature's declared purpose to "address the serious problem

of gun injuries and fatalities among and caused by minors." State Br. [Dkt. No. 17] at 23. But this nothing-to-see-here argument falls woefully short. Where, as here, "the law includes indicia of discriminatory motive, [the Court] may peel back the legislative text and consider legislative history and other extrinsic evidence to probe the legislature's true intent." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 899 (9th Cir. 2018) (citations omitted). The legislative record lays bare the Legislature's real aim: to restrict speech that might "attract future legal gun owners," or "recruit[] children into the gun culture."[2]  Indeed, the State contradicts its own argument by subsequently citing demand dampening as a legitimate justification for the law, implicitly conceding its real target—curtailing ***interest*** in firearm-related products (*i.e.*, gun culture). *See* State Br. at 31–36.

The State simply cannot escape the First Amendment's unequivocal prohibition against legislative attempts to suppress "the ***ideas*** expressed by speech— whether it be violence, or gore, or racism"—even "speech directed at children." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 794–95, 799 (2011) (bold added).

---

[2] 2-ER-326–27; *see also* 2-ER-328 (AB 2571's author touting the legislation as "[t]aking away [a] tool of violent indoctrination from the gun industry"); 2-ER-135; 2-ER-168–69. In much the same way that adolescents cannot legally purchase a firearm, they cannot legally purchase a sports car. Nevertheless, an advertisement for a Corvette or a Mustang directed at a youthful audience is not designed to promote an illegal sale, but rather to generate youth interest in car culture and to attract future (legal) customers.

Section 22949.80 plainly discriminates based on viewpoint and must be invalidated for this reason alone.

**B.**   **Section 22949.80 Imposes Content-Based Restrictions on Both Noncommercial and Commercial Speech.**

*Central Hudson* does not apply where a law restricts both noncommercial and commercial speech. *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 & n.6 (9th Cir. 2011). Rather, strict scrutiny applies when a law imposes content-based restrictions on mixed noncommercial and commercial speech. *See City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 142 S.Ct. 1464, 1471 n.3 (2022); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011); State Br. at 21 (citing cases).

The State does not dispute this point. *See* State Br. at 19. Nor does it meaningfully contest that Section 22949.80 is content-based. *See id.* at 19–21; *cf.* Appellants' Br. [Dkt. No. 7-1] at 49–52. The State instead insists that Section 22949.80 restricts only commercial speech. *See* State Br. at 17–19. But this relies on an exceedingly cramped interpretation that cannot be reconciled with the statute's plain text or admitted legislative purpose.

Because the statute regulates "mixed-content," the analysis should end there—the State effectively concedes that Section 22949.80 is content-based. But strict scrutiny also applies because the restricted speech is inextricably intertwined with otherwise fully-protected speech.

### 1. Section 22949.80 Restricts Noncommercial Speech.

Commercial speech is "defined as speech that does no more than ***propose*** a commercial transaction." *Hunt*, 638 F.3d at 715 (emphasis added). Given the effect of this finding, courts have cautioned that "the commercial speech doctrine not be defined too broadly lest speech deserving of greater constitutional protection be inadvertently suppressed." *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 961 (9th Cir. 2012) (citation omitted). Thus, courts do not apply *Central Hudson* to "mixed-content speech." *Id.*

Here, Section 22949.80 pays lip service to the factors for identifying commercial speech discussed in *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983), but goes well beyond restricting speech that "does no more than propose a commercial transaction." *S.O.C., Inc.*, 152 F.3d at 1143 (cleaned up). The statute on its face regulates speech that does not propose a commercial transaction, but rather merely "***encourage[s]*** recipients" to engage in a "commercial transaction," without requiring that the transaction be linked to the product being "promote[d]." Cal. Bus. & Prof. Code § 22949.80(c)(6) (emphasis added). This is underscored by the statute's regulation of not only firearms sellers, but also speakers that simply promote the use of firearm-related products. *Id.* § 22949.80(c)(4)(B). The statute thus reaches beyond commercial speech, restricting communications like magazine articles reviewing firearm-related products or promoting pro-Second Amendment

viewpoints, such as those that Appellants publish.[3] *See* NSSF Amicus Br. [Dkt. No. 12] at 18–19 (citing examples in the record). These articles "encourage" commercial transactions involving firearm-related products, but are not in advertisement format and contain significant amounts of noncommercial speech. Thus, it is difficult to draw a line where noncommercial expression ends and commercial expression begins. *See SEC v. Wall St. Pub. Inst., Inc.*, 851 F.2d 365, 372 (D.C. Cir. 1988).

Seeking to avoid strict scrutiny, the State argues that the statute regulates only "speech with an obvious economic or commercial motivation" because it uses terms like "advertising," "marketing," and "commercial transaction." State Br. at 18. But "a State cannot foreclose the exercise of constitutional rights by mere labels"— calling something "commercial speech" does not make it so. *NAACP v. Button*, 371 U.S. 415 (1963); *Bigelow v. Virginia*, 421 U.S. 809, 826 (1975) (state labels are not dispositive of degree of First Amendment protection).

This Court's decision in *S.O.C.*, *Inc.*, is instructive. At issue there was an ordinance restricting "off-premises canvassing," defined to mean "distributing . . . printed or written literature, materials, or information, which advertise or promote services or goods for sale . . . or which otherwise propose one or more commercial transaction . . . and which are distributed with an economic motivation." 152 F.3d at 1140 n.3. This Court held that although the statute tracked "the language of *Bolger*,"

---

[3] *See, e.g.*, 3-ER-544–552.

it plainly did not "limit the scope of the regulated activity to purely commercial expression." *Id.* at 1143. The statute did not use "any limiting language"; it failed to provide exceptions for materials containing mixed-content expression; and the phrase "or otherwise propose one or more commercial transactions" failed adequately "to limit its application to those materials that do 'no more' than propose a commercial transaction." *Id.* at 1143–44.

Section 22949.80 similarly fails to limit its application only to commercial speech. For instance, "to encourage" has a much broader meaning than "to propose." *Compare* Encourage, MERRIAM-WEBSTER (2023) ("to attempt to persuade"), *with* Propose, MERRIAM-WEBSTER ("to set forth for acceptance or rejection"). By restricting communications that merely "encourage" recipients, Section 22949.80 reaches well beyond the commercial aspect of the information communicated— "offerors communicating offers to offerees." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 499 (1996).

Section 22949.80 also burdens noncommercial expression supported by advertising revenue, like Appellants' publications. In *Dex Media West, Inc.*, this Court held that the "yellow pages" directory is "entitled to the full protection of the First Amendment," even though "portions of [it] are obviously commercial in nature," and concluded that regulations imposing conditions and costs on distribution failed strict scrutiny. 696 F.3d at 954–55, 963–66. The First

Amendment, the court observed, necessarily protects the right to "distribute noncommercial expressive material containing some form of advertising," recognizing that parties "seeking to distribute noncommercial expressive material" often depend on advertising revenue. *See id.* at 963–64.

Similarly, here, Section 22949.80 restricts not only advertisements, but also the "placement of . . . advertising or marketing" in noncomercial publications. Cal. Bus. & Prof. Code § 22949.80(a)(1), (a)(2)(F). Indeed, there are numerous examples in the record showing that, before California enacted Section 22949.80, Appellants relied on advertisements for firearm-related products to finance their publications containing noncommercial expression about minors lawfully using firearms for hunting and recreational shooting.[4] But Section 22949.80 now restricts this expression, because merely "arrang[ing] for . . . placement" of a firearm-related advertisement close to youth-related content could make the advertisement "appear[] to be attractive to minors." *See id.* § 22949.80(a)(1). The First Amendment forbids California from removing Appellants' publications from ciculation by preventing them from placing advertisements concerning lawful products.

---

[4] *See, e.g.,* 3-ER-373–74, 378–83, 387, 400–04, 415–19, 428, 456, 461, 467, 471–72, 478–80, 500–01, 524–26, 531–33, 536–42, 544–551.

**2.     Section 22949.80 Restricts Commercial Speech That Is Inextricably Intertwined with Fully Protected Speech.**

Even speech that is "commercial" in the abstract does not retain "its commercial character when it is inextricably intertwined with otherwise fully protected speech." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988). In such cases, the publication "sheds its commercial character and becomes fully protected speech." *Dex Media West, Inc.*, 696 F.3d at 958. The lesser protection for commercial speech does not mean that the government may make any content-based distinction it wants, but only that it may regulate content based on the "characteristics of commercial speech that justif[y] depriving it of full First Amendment protection." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992).

By restricting not only "advertisement[s]," but also their placement in expressive publications, Section 22949.80 burdens fully protected speech concerning lawful products and constitutionally-protected activities. Minors are undeniably part of the "people" under the plain text of the Second Amendment. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen* 142 S. Ct. 2111, 2134 (2022). They therefore have basic Second Amendment rights, even though those rights are limited by well-established historical regulations, such as restrictions on sales or the requirement that minors be supervised by adults when using a firearm.

What is more, Section 22949.80 is not based on the claimed elimination of particularized commercially harmful devices used in advertising. Instead, it is based

on the censorial theory that ***merely*** by expressing a favorable message about firearms, a broad swathe of advertisements must be suppressed lest they be seen by minors who may get the wrong idea.

Because Section 22949.80 is "directed not at any commercial aspect of the prohibited advertising but at the ideas conveyed," the regulation strikes at "the core of First Amendment values" and is subject to strict scrutiny. *Carey v. Population Servs. Int'l*, 431 U.S. 678, 701, n.28 (1977). The statute cannot survive that standard because it bans dissemination of information about lawful, constitutionally-protected products and activities.

## II. SECTION 22949.80 FAILS *CENTRAL HUDSON*.

### A. <u>Section 22949.80 Targets Truthful, Non-Misleading Speech</u>.

The First Amendment protects commercial speech that is accurate and concerns lawful activity. *Washington Mercantile Ass'n v. Williams*, 733 F.2d 687, 691 (9th Cir. 1984). However, "there is far less reason to depart from the rigorous review that the First Amendment generally demands" when the government prohibits the dissemination of truthful commercial information "for reasons unrelated to the preservation of a fair bargaining process." *44 Liquormart, Inc.*, 517

U.S. at 501. Here, Section 22949.80 restricts a broad range of truthful speech concerning lawful activity.[5]

> **1. Section 22949.80 Prohibits Speech Regarding Lawful Products that Minors and Adults may Lawfully Purchase and Possess.**

The State insists the statute restricts only misleading advertisements because it is unlawful for minors to purchase firearms. *See* State Br. at 26–27. But this ignores that Section 22949.80, on its face, restricts advertisements that merely "encourage" a commercial transaction and, thus, extends to advertisements that simply promote interest in firearms and related products. It is not, as the State contends, limited to advertising that proposes illegally to sell a firearm to a minor. Indeed, the State has not identified a single advertisement offering to sell a firearm to minors, as opposed to their adult parents. Even if it did, California already prohibits false and misleading advertisements, such as one that proposes illegally to sell firearms to minors. *See* Cal. Bus. & Prof. Code §§ 17200 (prohibiting untrue and misleading advertising); 17500 (false advertising). Section 22949.80 goes further, barring truthful advertisements that merely encourage interest in firearms and gun culture.

What is more, Section 22949.80 prohibits advertisements not only by sellers and manufacturers, but also speakers who only "promot[e], encourag[e], or

---

[5] "[A]n offer to sell firearms or ammunition" is protected commercial speech. *Nordyke v. Santa Clara*, 110 F.3d 707, 710 (9th Cir. 2009).

advocat[e] for the purchase, use, or ownership of firearm-related products . . . ." *Id.* § 22949.80(c)(4)(A) & (B). The statute consequently sweeps within its scope, for example, an advertisement containing only an image of a firearm and a reference to the manufacturer's website[6] and an article endorsing a firearm-related product, even though neither communication proposes a commercial transaction. Section 22949.80 thus goes well beyond the traditional justification that unlawful speech is unprotected because it is a prelude to illegal conduct by the advertiser.

Furthermore, even putting aside the statute's amorphous definitions, the statute expressly precludes advertisements concerning a wide range of "firearm accessories" that are not illegal for minors to purchase or possess—such as scopes, bipods, and other accessories. *See id.* § 22949.80(c)(3), (5), & (6). Consider, for instance, the following advertisement for a firearm optic that appeared in the *Conservation Adventures* magazine:[7]

---

[6] *See, e.g.*, 3-ER-549 (advertisement for Browning firearm).

[7] 3-ER-547. *Conservation Adventures* is a conservation-based educational curriculum for high school students published by Appellant United States Sportsmens Alliance. *See* 3-ER-428 ¶¶ 7, 10.



There is nothing illegal about the products advertised here. Scopes and other firearm optics are dual-use items that can enhance a user's ability to operate a firearm. They are also indisputably lawful for both adults and minors to purchase, use, and possess. And yet, this advertisement violates Section 22949.80 because (i) the advertised product (a firearm optic) falls within the statute's definition of a "firearm accessory," *id.* § 22949.80(c)(3), and (ii) the advertisement was "placed in a publication created for the purpose of reaching an audience that is predominately composed of minors," *id*. § 22949.80(a)(2)(F). In this instance, both the advertiser and Appellant United States Sportsmen's Alliance, which "arrang[ed] for placement" of the advertisement, face liability under the statute. Ruinous penalties of $25,000 **per copy** await those whom the State chooses to prosecute. *Id.* § 22949.80(e)(1). And this is only one example among many other innocuous advertisements for lawful products that Section 22949.80 bans.

To support its interpretation of Section 22949.80, the State exaggerates the extent to which California law prohibits minors from ***possessing*** firearms. *See* State Br. at 26–27. But California law allows minors to possess and use firearms in a variety of circumstances. *See, e.g.*, Cal. Penal Code §§ 27505(b)(2) (loan of a firearm to a minor for lawful purposes); *id.* § 29615 (requiring adult supervision). Even without these exceptions, minors undeniably have a constitutional right to possess and use firearms subject to historical regulations.

The State also ignores the extent to which Section 22949.80 restricts advertisements intended for adults. Many, if not all, advertisements that might "reasonably appear[] to be attractive to minors"—such as the advertisement at 2-ER-216 depicting a father and child hunting together responsibly—are equally, if not more, attractive to adults and are intended to encourage adults to engage in lawful commercial transactions for a product their child can lawfully use and possess with parental supervision.[8] In fact, none of the advertisements banned by Section 22949.80 can plausibly be said to propose a commercial transaction with a minor, given the myriad of both federal and state restrictions on the purchase of firearms that would make that transaction impossible. For all its hyperbole about the dangers of these allegedly unlawful purchases, the State cannot point to a ***single instance***

---

[8] For instance, Section 22949.80(a)(2)(F) plainly contemplates advertisements that target a mixed audience of minors and adults.

where a minor has unlawfully purchased a firearm from a "firearm industry member," let alone due to advertising influences. Using simple common sense, to the extent any sale of a firearm is proposed, it is a lawful one to be consummated by an adult through a licensed firearms dealer.

### 2. Section 22949.80 Does Not Exclude Lawful Activity.

Section 22949.80 also lacks any scienter requirement limiting its application only to unlawful transactions. *See United States v. Stevens*, 559 U.S. 460, 474 (2010) (failure to require that unlawful "depiction[s] of animal cruelty" actually be cruel incidentally restricted lawful conduct). In *United States v. Williams*, by contrast, the statute specifically prohibited the "promotion" of unlawful products, which the Court construed to "refer[] to the recommendation of a particular piece of purported child pornography with ***the intent of initiating a transfer.***" 553 U.S. 285, 300 (2008) (emphasis added). This adequately ensured that lawful activity was not swept within the statute's scope. *Id.*

The issue here is not, as the State contends, that Section 22949.80 is directed toward abstract advocacy of an unlawful product, but rather that it restricts broad swathes of truthful, nonmisleading expression concerning lawful products and activities. Because Section 22949.80 does not require intent to initiate an unlawful transfer of a firearm to a minor, it fails to distinguish between speech "intended to

induce or commence illegal activities" and speech proposing lawful transactions. *Cf. id.* at 298.

**B.    Section 22949.80 Does Not Serve a Significant Government Interest.**

Despite the State's insistence that Section 22949.80 advances significant interests in (1) ensuring minors do not possess firearms, and (2) protecting citizens from gun violence, it effectively concedes what has been evident all along—these interests are a smoke screen for its improper attempt to dampen demand and prevent advocates from "attract[ing] future legal gun owners" and "recruiting children into the gun culture."[9] Bans like this "serve only to obscure an 'underlying governmental policy' that could be implemented without regulating speech." *44 Liquormart, Inc.*, 517 U.S. at 502–03.

While states may have a substantial interest in dampening demand where the underlying activity is illegal, there is no legitimate state interest in paternalistically reducing demand for a legal product (or worse, the exercise of a constitutional right). *See Sorrell*, 564 U.S. at 577–78 (states may not advance policy goals "through the indirect means of restraining certain speech by certain speakers" or "quiet the speech or burden its messengers" just because it "finds [the] expression too persuasive");. For instance, in  *United States v. Edge Broad. Co.*, the Supreme Court upheld a

---

[9] *See* 2-ER-305 ¶ 3; 2-ER-326–27.

statute prohibiting gambling advertisements because the underlying activity being advertised ***was illegal*** where the ads were broadcast. 509 U.S. 418, 429 (1993). But the Court in *Greater New Orleans Broad. Ass'n, Inc. v. United States* rejected the same paternalistic argument for commercial speech restrictions, holding that a law identical to the one in *Edge* could not be applied to restrict gambling advertisements in Louisiana where gambling ***was legal***. 527 U.S. 173, 188–90 (1999).

Put simply, California has no interest "in preventing the dissemination of truthful commercial information in order to prevent members of the public from making bad decisions with the information." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 374 (2002). Nor does it generally have an interest "in shielding its citizens from information" about constitutionally protected activities. *Bigelow*, 421 at 827–28. The State's demand-dampening justification is, therefore, "entitled to little, if any weight," *id.* at 828,[10] and is fundamentally illegitimate because the activity sought to be discouraged is both lawful and constitutionally-protected.

---

[10] Many of the at-issue advertisements are distributed nationwide, and California has no legitimate interest in regulating advertisements distributed outside its borders.

**C.** **Section 22949.80 Does Not Directly Advance Any of the State's Proffered Interests.**

    **1.** **The State Fails to Establish Any Relation between Firearm-Related Advertisements and Unlawful Possession or Use of Firearms by Minors.**

A restriction "cannot be sustained if it provides only ineffective or remote support for the government's purpose, or if there is little chance that the restriction will advance the State's goal." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 566 (2001) (cleaned up). But here, the State does not even attempt to "demonstrate that 'the harms it recites are real and that its restriction will in fact alleviate them *to a material degree*.'" *Bad Frog Brewery, Inc. v. New York State Liquor Auth.*, 134 F.3d 87, 98 (2d Cir. 1998) (bold added).

Despite the Legislature's declaration that "the proliferation of firearms to and among minors poses a threat to the health, safety, and security" of people in California, based in part on statistics relating to *unintentional shootings* by minors, it did nothing to connect this or any other violence to illegal firearm purchases by minors—let alone to firearm-related advertisements. *See* 2022 Cal. Stats., Ch. 77, § 1(a) (speculating that "[f]irearms marketing contributes to the unlawful sale of firearms to minors"). Given the substantial barriers to purchasing firearm-related products, it strains credulity to suggest that minors are obtaining firearms in this manner.

21

The real problem is not that minors are able to obtain firearms via **_purchase_**, but rather that they come to possess these weapons through unlawful (i.e., unsupervised) **_access_**. But as horrible as these incidents may be, there simply is no evidence that advertising restrictions will alleviate them to a material degree. To the contrary, California seeks to eliminate advertisements like the one at 2-ER-216, which promotes lawful and responsible firearms use. Furthermore, no licensed firearms dealer would dare to market an illegal sale, let alone actually sell a firearm to a minor, and illegal dealers obviously do not advertise their activities. *Cf.* State Br. at 35 (suggesting advertising encourages minors to purchase firearms unlawfully). Regardless, the issue of unlawful possession is far too attenuated from the commercial transaction for Section 22949.80's broad advertising ban to have a material effect. *Bad Frog Brewery*, 134 F.3d at 99 ("a prohibition that makes only a minute contribution to the advancement of a state interest" does not satisfy *Central Hudson*).

### 2. The State's Dampening Demand Justification Is Disconnected from Firearm-Related Advertisements.

Rather than drawing a direct connection between the State's declared interests and firearm-related advertisements, the State resorts to demand-dampening as a justification. Restricting advertisements that **_might_** be attractive to minors, the State argues, will reduce demand for firearms, which will then (allegedly) reduce unlawful possession and—even more speculatively—California's violence problem. As

discussed, however, the State has no legitimate interest in dampening demand for lawful products. Moreover, there is no evidence connecting the restricted advertisements and the unlawful purchases in which the State claims an interest.

The State contends that Section 22949.80 is analogous to bans on certain alcohol and tobacco advertisements, which courts have upheld on the grounds that reducing demand among minors was a significant government interest. But this comparison is inapposite for at least two reasons.

First, alcohol and tobacco are not constitutionally protected products. And both products are illegal for minors to purchase, use, and possess **under any circumstance**. *Cf. Educ. Media Co. at Virginia Tech v. Swecker*, 602 F.3d 583, 590 (4th Cir. 2010) (alcohol advertising ban targeted audience of underage college students). By contrast, minors may lawfully possess and use firearms under certain circumstances with adult supervision, and there is no law prohibiting minors from purchasing or using many firearm accessories, like separately-sold optics.

Second, the State's evidence does not purport to demonstrate a causal link between firearms advertising and the initiation of illegal youth purchases, let alone "the danger of intentional and unintentional gun violence perpetrated by minors." State Br. at 34.[11] The State cannot overcome this deficiency merely by pointing to studies purporting to establish that advertising generally increases demand. *See id.*

---

[11] *See also* 2-ER-266 (study examining **general** influence of marketing on minors).

at 7, 34–35. Even "[a]ssuming the accuracy of [a] causal chain" between advertising and the incidence of firearms sales, "it does not necessarily follow that the [State's] speech ban has directly and materially furthered the asserted interest" in curbing illegal youth firearm transactions or gun violence involving minors. *Greater New Orleans Broad.*, 527 U.S. at 189.

Unlike the cases the State cites, here, there is no inherent "common sense" connection that can be drawn between advertisements for firearm-related products and subsequent illegal activity. *Cf. Va. State Board of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 769 (1976); *Bates v. State Bar of Arizona*, 433 U.S. 350, 378 (1977); *Bolger*, 463 U.S. at 73. And the State's attempt to distinguish *Sorrell* and *Thompson* is unpersuasive, given that (1) minors may lawfully possess (and sometimes purchase) many of the products implicated by Section 22949.80, and (2) the State is similarly motivated by paternalism.

### D. Section 22949.80 Is Not Narrowly Tailored to Achieve the State's Interests.

Finally, Section 22949.80 fails *Central Hudson's* tailoring requirement not only because the State cannot demonstrate any plausible link between firearm-related advertisements and its interest in preventing unlawful possession and use of firearms by minors, but also because Section 22949.80 is still far too broad.

The State has the burden to establish a close fit between the ends and means of its speech-restrictive regulations. *See Central Hudson Gas & Elec. Corp. v. Pub.*

24

*Serv. Comm'n of New York*, 447 U.S. 557, 565 (1980). Because "the First Amendment directs that government may not suppress speech as easily as it may suppress conduct," the Supreme Court has instructed that "speech restrictions cannot be treated as simply another means that the government may use to achieve its ends." *44 Liquormart*, 517 U.S. at 512 (plurality). Thus, where options are "availab[le] . . . all of which could advance the [g]overnment's asserted interest in a manner less intrusive to . . . First Amendment rights," a speech restriction is "more extensive than necessary" and is invalid. *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 491 (1995); *see also Matal*, 582 U.S. at 246; *Thompson*, 535 U.S. at 371–72.

To artificially narrow the scope of Section 22949.80, the State attempts to circumvent the plain language of the statute by claiming that Section 22949.80 merely prohibits commercial speech that "encourage[s] commercial transactions involving firearms or closely related products, such as firearm components or ammunition," and that it does not prohibit advertisements "for all audiences, but only those designed, intended, or that reasonably appear to be attractive to minors." State Br. at 37. But as discussed, conspicuously absent from this definition is an acknowledgement that Section 22949.80 also prohibits advertisements involving firearm ***accessories***, which are lawful for minors to purchase, use, and possess. Further, nothing in the phrase "reasonably appears to be attractive to minors" ***actually limits the intended audience to minors***. *See Lorillard Tobacco*, 533 U.S.

at 565 (statute prohibiting advertising of tobacco products within 1,000 feet of schools failed narrow tailoring because it "unduly impinge[d]" on dissemination of commercial information to adults).

Contrary to the State's contention, Section 22949.80's exemptions do not make the law a "reasonable fit" for achieving the State's broad public safety objectives. Indeed, many lawful advertisements can "reasonably appear to be attractive to minors," but do not involve an exempted state-sanctioned activity under Cal. Bus. & Prof. Code § 22949.80(a)(3). For instance, even if the State's assumed limitations are adopted, Section 22949.80 continues to ban all lawful advertisements for youth-model firearms targeted at parents. And youth shooting events and educational courses will be driven out of business without sponsorship revenue.

If the State truly wanted to ensure a reasonable fit between its purported goal of limiting minors' unlawful access to firearms, it has multiple avenues to achieve this goal without restricting constitutionally-protected speech. *See Project 80's, Inc. v. City of Pocatello*, 942 F.2d 635, 638 (9th Cir. 1991). For instance, California has enacted numerous laws criminalizing or imposing civil liability intended to restrict unlawful purchases. *See, e.g.*, Cal. Pen. Code §§ 25100, 27505, 27510, 29610, 29650; Cal. Civ. Code § 1714.3. While the State summarily points to statistics purportedly showing that these laws alone have been insufficient, it provides no evidence to demonstrate that more robust enforcement or increasing the associated

26

penalties would be insufficient to meet its interests. State Br. at 39. Nor does the State show that dedication of additional educational resources would be ineffective. California could also enact a law narrowly restricting speech that offers an illegal sale.

Section 22949.80's lack of tailoring "raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Brown*, 564 U.S. at 802. As such, Section 22949.80 fails to satisfy *Central Hudson*.

## III. SECTION 22949.80 IS UNCONSTITUTIONALLY OVERBROAD AND VAGUE.

The doctrines of overbreadth and vagueness often go hand in hand, though they implicate separate constitutional concerns. Section 22949.80 fails scrutiny under both standards.

### A. Section 22949.80 is Overbroad.

Under the First Amendment overbreadth doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech." *Williams*, 553 U.S. at 292. The reason for this is simple: the *in terrorem* effect of overbroad statutes inevitably discourages protected First Amendment activity. *Bates*, 433 U.S. at 380.

As discussed, Section 22949.80 prohibits a substantial amount of lawful, constitutionally protected speech. The statute's reach is not, as the State contends, limited to advertising illegal firearms sales to minors. It also includes the broad

category of "firearm accessor[ies]." Cal. Bus. & Prof. Code § 22949.80(c)(3). And by including content-based factors ***unrelated to firearms*** (such as whether the advertiser also "[o]ffers brand name merchandise for minors"), Section 22949.80 also burdens swathes of non-commercial speech and will therefore chill constitutionally protected speech and activities. *See id.* § 22949.80(a)(2)(B)–(E).

### B. Section 22949.80 is Vague.

As discussed, Section 22949.80 intrudes upon "basic First Amendment freedoms," and is therefore subject to stringent vagueness review. *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972). Under that standard, the statute is impermissibly vague in multiple respects. The term "firearm-related product," arguably the statute's most important term, is unduly vague because it includes "firearm accessory" in its definition. *See* Cal. Bus. & Prof. Code § 22949.80(a)(1), (c)(3), & (c)(5). The latter term is defined so vaguely as to include a range of products that not only are useful for both firearm-related activities and non-firearm-related activities, but also are lawful for minors to use and possess. *See id.* § 22949.80(c)(3).

Attempting to cure this vagueness, the State advances a flawed interpretation that effectively re-writes the statute, as the district court did below. *See* Appellants' Br. at 35–36. As defined, "firearm accessory" includes much more than just a "device[s]" or "attachment[s]" that may be affixed to a firearm—it also includes any

device that "functions to alter or enhance . . . a shooter's ***ability to hold, carry, or use*** a firearm." Cal. Bus. & Prof. Code § 22949.80(c)(3) (emphasis added). This vague definition, in turn, renders the term "firearm-related product" indeterminate and incapable of objective application.

Second, Section 22949.80 is clothed in subjectivity. It requires judges individually to determine whether a particular advertisement is "attractive to minors" based on the "totality of the circumstances," including six ***non-exclusive*** factors. *Id.* § 22949.80(a)(2). These factors themselves are permeated by subjectivity, and their non-exclusivity invites arbitrary and discriminatory application. *Grayned*, 408 U.S. at 108–09 (a law may not "delegate[] basic policy matters to . . . judges . . . for resolution on an *ad hoc* and subjective basis").

## IV. SECTION 22949.80 VIOLATES APPELLANTS' RIGHT TO ASSOCIATE.

While Section 22949.80 does not ***textually*** prohibit advertising or marketing where people assemble and associate with each other, it nevertheless imposes a content- and speaker-based ***burden*** on the right to assemble. Although the State points to the select few "program[s]" and "events[s]" exempted *post hoc* from Section 22949.80, this is not an exhaustive list of associational gatherings. For instance, an advertisement for an exposition of youth-model firearms is still banned.

Further, the statute categorically prohibits sponsorship advertisements at these events—including those exempted by the State. This will consequently force these

Second Amendment-related activities out of existence, and, by extension, burden the rights of Appellants and members of the public to assemble and associate at them. Because the State cannot demonstrate that its legislative sledgehammer is necessary to achieve its declared interests, Section 22949.80 violates the First Amendment right to assemble. *See Button*, 371 U.S. at 433, 438–39.

## V.   SECTION 22949.80 VIOLATES APPELLANTS' EQUAL PROTECTION RIGHTS.

The State dismisses Appellants' equal protection claim because it incorrectly assumes that Section 22949.80 does not violate the First Amendment. However, as discussed, Section 22949.80 unconstitutionally discriminates based on viewpoint and content. And even if the statute's infringement of core speech were cast aside, it still violates *Central Hudson*. The State has no legitimate interest in singling out firearm industry members while allowing members of other industries to engage in the same speech. Further, the State cannot reasonably deny that the Legislature acted based on its animus against this politically disfavored group.[12]

## VI.   APPELLANTS SATISFY THE REMAINING PRELIMINARY INJUNCTION FACTORS.

Because Section 22949.80 violates the First Amendment, Appellants have established imminent and irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373

---

[12] *See* 2-ER-305 ¶ 3; 2-ER-326–27 (admitting the States' desire to prevent Second Amendment advocates from "attract[ing] future legal gun owners" and "recruiting children into the gun culture.").

(1976) ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").[13] The balance of the equities also tips in Appellants' favor for the same reasons discussed in their Opening Brief. Appellants' Br. at 77–79. To the extent that Section 22949.80 bans some unprotected speech, multiple California laws already address that problem. *See* Cal. Bus. & Prof. Code §§ 17200, 17500. And even if the State has a general public safety interest in preventing gun violence, this interest is outweighed by the harm caused by enforcement of an unconstitutional law that is attenuated from that interest.

## CONCLUSION

The district court committed reversable error in denying Appellants' motion for a preliminary injunction. Appellants, therefore, respectfully ask this Court to reverse and remand for further proceedings.

---

[13] Although the State contends this Court disfavors preliminary relief that is identical to the ultimate relief sought in the case, this is true only when the requested relief **alters** the status quo, rather than preserves it. *See Miracle v. Hobbs*, 427 F. Supp. 3d 1150, 1164–65 (D. Ariz. 2019), *aff'd*, 808 Fed. Appx. 470 (9th Cir. 2020).

Dated: April 28, 2023

SNELL & WILMER L.L.P.


By: */s/ Cameron J. Schlagel*
　　Michael B. Reynolds
　　Colin R. Higgins
　　Cameron J. Schlagel

Attorneys for Plaintiff-Appellants

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-15199

I am the attorney or self-represented party.

**This brief contains** | 6,995 | **words,** including | 72 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Cameron J. Schlagel | **Date** | April 28, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**        *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form15instructions.pdf

**9th Cir. Case Number(s)** | 23-15199

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address):*

**Description of Document(s)** *(required for all documents):*

APPELLANTS' REPLY BRIEF

**Signature** | s/ Cameron J. Schlagel | **Date** | April 28, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 15** | *Rev. 12/01/2018*

American LegalNet, Inc.
www.FormsWorkFlow.com