IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| **JUNIOR SPORTS MAGAZINES, INC., ET AL.,** | |
| Plaintiffs-Appellants, | No. 22-56090 |
| **v.** | |
| **ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, ET AL.,** | |
| Defendants-Appellees. | |
| **SAFARI CLUB INTERNATIONAL, ET AL.,** | |
| Plaintiffs-Appellants, | No. 23-15199 |
| **v.** | |
| **ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,** | |
| Defendant-Appellee. | |

On Appeal from the United States District Courts
for the Central and Eastern Districts of California

No. 2:22-cv-04663
Hon. Christina A. Snyder, Judge

No. 2:22-cv-1395
Hon. Dale A. Drozd, Judge

**PETITION FOR REHEARING EN BANC**

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MARK R. BECKINGTON
Supervising Deputy Attorney General

GABRIELLE D. BOUTIN
Deputy Attorney General
KEVIN J. KELLY
Deputy Attorney General
State Bar No. 337425
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013-1230
 Telephone: (213) 269-6615
 Email: kevin.kelly@doj.ca.gov
*Attorneys for Defendant-Appellee*

## TABLE OF CONTENTS

**Page**

Introduction and Rule 35 Statement ............................................................ 1

Statement.................................................................................................... 3

      A.    Legal Background ............................................................ 3

      B.    Procedural Background.................................................... 6

Reasons for Granting Rehearing En Banc .................................................. 8

   I.     The Panel Misapplied the Intermediate Scrutiny Standard
        in Holding that Section 22949.80 Does Not Directly
        Advance the State's Substantial Interests ................................. 9

   II.    The Panel Misapplied the Intermediate Scrutiny Standard
        in Holding that Section 22949.80 Is More Extensive
        Than Necessary ...................................................................... 15

   III.   This Case Involves Questions of Exceptional Importance ..... 18

Conclusion ................................................................................................ 19

i

# TABLE OF AUTHORITIES

**Page**

CASES

*44 Liquormart, Inc. v. Rhode Island*
    517 U.S. 484 (1996)................................................................. 13

*Bd. of Trustees of State Univ. of N.Y. v. Fox*
    492 U.S. 469 (1989)........................................................... 15, 19

*Burson v. Freeman*
    504 U.S. 191 (1992)................................................................. 10

*Cent. Hudson Gas & Electric Corp. v. Pub. Serv. Comm'n of
New York*
    447 U.S. 557 (1980)........................................................... *passim*

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*
    596 U.S. 61 (2022)................................................................. 10

*Coyote Publ'g, Inc. v. Miller*
    598 F.3d 592 (9th Cir. 2010) ...................................... 9, 11, 16

*Disc. Tobacco City & Lottery, Inc. v. United States*
    674 F.3d 509 (6th Cir. 2012) ...................................... 12, 14, 17

*Educ. Media Co. at Va. Tech, Inc. v. Swecker*
    602 F.3d 583 (4th Cir. 2010) ................................................ 12

*Fla. Bar v. Went For It, Inc.*
    515 U.S. 618 (1995)............................................. 9, 10, 15, 16

*Greater New Orleans Broad. Ass'n, Inc. v. U.S.*
    527 U.S. 173 (1999)................................................................. 15

*Lorillard Tobacco Co. v. Reilly*
    533 U.S. 525 (2001)................................................. 9, 15, 16

*Metromedia, Inc. v. City of San Diego*
    453 U.S. 490 (1981)........................................................... 10, 11

ii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Ohralik v. Ohio State Bar Ass'n*
  436 U.S. 447 (1978).................................................................. 19

*Rubin v. Coors Brewing Co.*
  514 U.S. 476 (1995).....................................................................9

*United States v. Edge Broad. Co.*
  509 U.S. 418 (1993).................................................................. 11

*Wash. Mercantile Ass'n v. Williams*
  733 F.2d 687 (9th Cir. 1984) ........................................... 16, 17

STATUTES

Cal. Bus. & Prof. Code § 22949.80 ...................................... *passim*

Cal. Penal Code § 27505....................................................................3

Cal. Penal Code § 27510....................................................................3

Cal. Penal Code § 29610....................................................................3

Cal. Penal Code § 29615....................................................................3

CONSTITUTIONAL PROVISIONS

First Amendment ............................................................ 1, 2, 6, 18

Fourteenth Amendment ...................................................................6

COURT RULES

Fed. R. App. P. 35............................................................................2

OTHER AUTHORITIES

Assem. B. 2571, Ch. 77 § 1 (Cal. 2022)...........................................6

## TABLE OF AUTHORITIES
### (continued)

Page

Cal. Dep't of Pub. Health, *California Tobacco Retailers Frequently Asked Questions (FAQ) About Tobacco Laws*, (July 16, 2020), available at https://www.cdph.ca.gov/Programs/CCDPHP/DCDIC/CTC B/CDPH%20Document%20Library/Tobacco21Law/Retail_ Tobacco_Laws_FAQ.pdf ........................................................................ 14

John P. Pierce, Ph.D. et al., *Tobacco Industry Promotion of Cigarettes and Adolescent Smoking*, 279 J. OF AM. MED. ASS'N 511, 511-15 (1998) ..........................................................................5

iv

## INTRODUCTION AND RULE 35 STATEMENT

The Supreme Court has long distinguished between speech at the core of the First Amendment and commercial speech, which is afforded more limited protection. Restrictions on commercial speech are evaluated under the intermediate scrutiny standard established by *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). Under that test, if the commercial speech at issue [1] concerns a lawful activity and is not misleading, then government regulation of the speech will be upheld so long as [2] the government asserts a substantial interest, [3] the regulation directly advances the government's asserted interest, and [4] the regulation is no more restrictive than necessary to serve that interest.

Both *Junior Sports Magazines, Inc. v. Bonta* (No. 22-56090) and *Safari Club International v. Bonta* (No. 23-15199) involve First Amendment challenges to a California law adopted to address the significant problem of gun-related injuries and fatalities among children. The law prohibits marketing and advertising of firearms "in a manner that is designed, intended, or reasonably appears to be attractive to minors." Plaintiffs in both cases sought reversal of the district courts' denial of their motions for preliminary injunction. But in concluding that the law likely violates the

1

First Amendment, a panel of this Court hearing both cases misapplied the third and fourth steps of the intermediate scrutiny standard in a manner that conflicts with Supreme Court and court of appeals precedent. *See* Fed. R. App. P. 35(b)(1)(A). The panel improperly held that the State failed to present empirical evidence that the law directly advances the State's substantial interests—even though this Court's precedent recognizes that common sense can support restricting advertising in order to dampen demand. The panel also erroneously concluded that the law was more extensive than necessary because it could imagine some overbroad applications—even though the Supreme Court and this Court have explained that laws are sufficiently tailored if the fit between means and ends is reasonable, even if the law is overinclusive in some circumstances.

The panel's misapplication of intermediate scrutiny also implicates "questions of exceptional importance." *See* Fed. R. App. P. 35(b)(1)(B). It jeopardizes California's ability to protect its residents, especially minors, from the scourge of gun violence. More generally, it risks undercutting the ability of the government to effectively regulate the advertising and marketing of inherently dangerous products to children. For these reasons, the State respectfully petitions for rehearing en banc.

2

## STATEMENT

### A.  Legal Background

California law generally prohibits (1) the loan or transfer of any firearm to a person under 21 years of age, (2) the sale of a firearm to a minor—someone younger than 18—under any circumstances, and (3) the possession of a firearm by a minor. *See* Cal. Penal Code §§ 27505, 27510, 29610. There are limited exceptions to these prohibitions, all of which require the possession to be for a specific recreational, agricultural, or artistic purpose and all of which require the supervision and/or permission of a parent, legal guardian, and/or a responsible adult, depending on the purpose for which the item is used and, in some cases, the age of the minor. *See* Cal. Penal Code §§ 27505, 29615; Opn. 6-7.[1]

The law at issue here is Section 22949.80 of the California Business and Professions Code. It prohibits a "firearm industry member" from advertising, marketing, or arranging for placement of an advertising or marketing communication offering or promoting any firearm-related products "in a manner that is designed, intended, or reasonably appears to be attractive to minors." Cal. Bus. & Prof. Code § 22949.80(a)(1); *see* Opn.

---

[1] All Opinion citations are to the published opinion in *Junior Sports Magazines Inc. v. Bonta*, No. 22-56090.

3

7-8. "[M]arketing or advertising" means "in exchange for monetary compensation, to make a communication to one or more individuals, or to arrange for the dissemination to the public of a communication, about a product, the primary purpose of which is to encourage recipients of the communication to engage in a commercial transaction." Cal. Bus. & Prof. Code § 22949.80(c)(6).

The statute directs courts to determine whether marketing or advertising is "attractive to minors" by "consider[ing] the totality of the circumstances, including" a non-exclusive statutory list of six characteristics. Cal. Bus. & Prof. Code § 22949.80(a)(2); *id.* § 22949.80(a)(2)(A)-(F). The law does not apply to communications offering or promoting firearm safety and hunting safety programs, firearm instructional courses, sport shooting events and competitions, and other similar programs, courses, and events. *Id.* § 22949.80(a)(3). It also does not apply to communications offering or promoting organizational memberships and lawful hunting activities, such as fundraising events, youth hunting programs, and outdoor camps. *Id.*

The Legislature adopted Section 22949.80 after considering disturbing evidence about gun-related injuries and fatalities among children. *See, e.g., Junior Sports Magazines*, 3-ER-417, 3-ER-500; *see also* Opn. 7. The author

4

of the law recognized that gun violence is now the third-leading cause of death for children and teens in California. *Junior Sports Magazines*, 3-ER-517. The Legislature observed that nearly half of all active shooting incidents at educational facilities in the United States from 2000 to 2019 were perpetrated by someone under the age of 18. *Junior Sports Magazines*, 3-ER-509. And the CDC recently reported that in 2020, for the first time, firearm-related injuries surpassed motor vehicle crashes as the leading cause of death nationwide among children and adolescents. *Junior Sports Magazines*, 3-ER-434; 3-ER-509. Indeed, when it comes to advertising and marketing, "children [are] a vulnerable consumer group because of their budding developmental abilities." *Junior Sports Magazines*, 3-ER-438; *see also Junior Sports Magazines*, 3-ER-476 ("Research on the effects of advertising has shown that [it] may be responsible for up to 30% of underage tobacco and alcohol use") (citing John P. Pierce, Ph.D. et al., *Tobacco Industry Promotion of Cigarettes and Adolescent Smoking*, 279 J. OF AM. MED. ASS'N 511, 511-15 (1998)). The Legislature designed Section 22949.80 to address the State's "compelling interest in ensuring that minors do not possess" firearms, because it recognized that "[f]irearms marketing contributes to the unlawful sale of firearms to minors, as well as the

unlawful transfer of firearms to minors by adults who may possess those weapons lawfully." Assem. B. 2571, Ch. 77 § 1 (Cal. 2022).

### B. Procedural Background

Plaintiffs in *Junior Sports Magazines* and in *Safari Club International* brought suit in the Central and Eastern Districts of California, respectively, challenging the constitutionality of Section 22949.80 under the First Amendment as well as the Fourteenth Amendment. Opn. 8-9; *Safari Club Int'l*, ER-3. In each case, they also moved for a preliminary injunction against Section 22949.80 in its entirety. *Id.* Each district court denied the plaintiffs' motion, applying the intermediate scrutiny test set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). *Junior Sports Magazines*, 1-ER-27-47; *Safari Club Int'l*, ER-21-28. After consulting relevant Supreme Court case law and comparable cases in other circuits, each district court concluded that Section 22949.80 directly and materially advances California's substantial public safety interests and is no more extensive than necessary to serve those interests. *Id.*

Plaintiffs in each matter appealed. In *Junior Sports Magazines*, the panel reversed, holding in key part that the plaintiffs had demonstrated a likelihood of success on their First Amendment claim because Section

6

22949.80 likely would not satisfy intermediate scrutiny under *Central Hudson*. Opn. 10-11. The panel acknowledged that "California has a substantial interest in reducing gun violence and unlawful use of firearms by minors." *Id.* at 5. But it held that Section 22949.80 does not directly and materially advance either interest, rejecting the State's argument that common sense demonstrates that restricting firearm-related advertising will reduce gun violence and unlawful firearm possession. *Id.* at 14-18. Even though it "agree[d] that advertising can theoretically stimulate demand" (*id.* at 16), the panel faulted the State for failing to invoke any "case of a minor in California unlawfully buying a gun" (*id.* at 14) or introduce empirical evidence "that minors are unlawfully using firearms because of advertisements for guns by the firearm industry" (*id.* at 17). The panel further held that the law is "more extensive than necessary" because "it sweeps in truthful ads about lawful use of firearms for adults and minors alike." *Id.* at 6; *see id.* at 18-20. The panel concluded that the remaining preliminary injunction factors also weighed in the plaintiffs' favor, and remanded the matter to the district court for further proceedings. *Id.* at 21.

In *Safari Club International*, the panel subsequently issued a Memorandum reversing the denial of preliminary injunction in that matter "for the reasons outlined" in its *Junior Sports Magazines* decision, and

similarly remanding that case to the district court for further proceedings.

*Safari Club Int'l*, Memorandum at 1-2. This Court granted the State's

requests in both appeals for a 45-day extension to file the instant petition.

*Junior Sports Magazines,* ECF 43; *Safari Club Int'l*, ECF 30. Plaintiffs in

*Junior Sports Magazines* moved for an injunction pending appeal, which this

Court denied. *Junior Sports Magazines*, ECF 48.

## REASONS FOR GRANTING REHEARING EN BANC

The intermediate scrutiny analysis in the panel's *Junior Sports*

*Magazines* opinion (incorporated in the memorandum disposition in *Safari*

*Club International*) conflicts with Supreme Court and circuit precedent by

demanding empirical evidence to demonstrate that Section 22949.80 furthers

the State's substantial interests, and by determining that a law is not

sufficiently tailored because some hypothetical applications could be

overinclusive. The panel's errors present concerns of exceptional importance

by undermining the State's ability to address public safety in this case and

creating uncertainty in future cases involving commercial speech

regulations.

# I. THE PANEL MISAPPLIED THE INTERMEDIATE SCRUTINY STANDARD IN HOLDING THAT SECTION 22949.80 DOES NOT DIRECTLY ADVANCE THE STATE'S SUBSTANTIAL INTERESTS

Precedent from the Supreme Court, this Court, and other circuits establishes that the State can meet its burden under *Central Hudson* to show that a law directly advances its substantial interests through common sense and logic. When it comes to advertising in particular, the Supreme Court has repeatedly "acknowledged the theory that product advertising stimulates demand for products, while suppressed advertising may have the opposite effect." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 557 (2001). And this Court has likewise observed that "[i]t is assuredly a matter of common sense" that restricting advertising will influence consumer behavior—and that principle can form the foundation of the government's showing that a regulation advances its interests. *Coyote Publ'g, Inc. v. Miller*, 598 F.3d 592, 608 (9th Cir. 2010) (quoting *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 489 (1995) (internal quotation marks omitted)). The panel decision conflicts with that precedent because it arbitrarily rejected the State's argument that firearm advertisements directed at minors increase the likelihood that minors will illegally purchase, possess, and use firearms; and instead demanded that the State make an empirical showing to justify that obvious relationship.

Under *Central Hudson*, the government must establish that its regulation of commercial speech "advances the Government's interest in a direct and material way." *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 625-626 (1995) (internal quotation marks omitted). To carry this burden, however, the government need not present empirical evidence and data, but can rely on "history, consensus, and 'simple common sense.'" *Fla. Bar*, 515 U.S. at 628 (quoting *Burson v. Freeman*, 504 U.S. 191, 211 (1992)); *see Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 509 (1981) (plurality opinion) (upholding speech restrictions based on "common-sense judgments" of lawmakers). In *Burson*, the Court held that—even under strict scrutiny—those considerations established that a ban on voter solicitation near a polling place advanced the State's interests in preventing voter intimidation and election fraud. *Id.* at 211; *see also Fla. Bar*, 515 U.S. at 628 (citing *Burson* in intermediate scrutiny context).

The Supreme Court has concluded that inferential reasoning can justify restrictions on advertising in particular, including in the absence of empirical evidence. In *Metromedia*, the Court held that a ban on off-premises commercial advertising directly advanced the government's stated interest in

traffic safety. 453 U.S. at 512 (plurality opinion).[2] The Court credited "the accumulated, common-sense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety" despite the "meager record" on that point. *Id.* at 508-509 (plurality opinion). Even more on point is *United States v. Edge Broadcasting Co.*, which upheld a federal restriction on lottery advertising by broadcasters in States that did not allow lotteries. 509 U.S. 418, 421 (1993). Without reviewing any data on this point, the Court relied on the basic proposition that advertising restrictions reduce demand. *Id.* at 434 ("[T]he Government may be said to advance its purpose [of decreasing demand for gambling] by substantially reducing lottery advertising, even where it is not wholly eradicated").

This Court and other federal courts of appeal have applied the same principle: "Common sense counsels that advertising tends to stimulate demand for products and services. Conversely, prohibitions on advertising tend to limit demand." *Coyote Publ'g.*, 598 F.3d at 608. *Coyote Publishing*

---

[2] Although the opinion was labeled a plurality, a fifth Justice joined the section upholding the restriction on offsite commercial advertising. *Metromedia*, 453 U.S. at 541 (Stevens, J., dissenting) (joining Part IV); *see City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 73 n.5 (2022).

relied on that chain of reasoning to conclude that Nevada's restriction on advertising the sale of sexual services advanced its policy of limiting commodification of sex. *Id.* ("[r]educing the demand for commercial sex acts in turn limits the commodification of sex"). The Fourth and Sixth Circuits have recognized similar logic in upholding laws that specifically restrict advertising of particular products to minors. *See Educ. Media Co. at Va. Tech, Inc. v. Swecker*, 602 F.3d 583, 589 (4th Cir. 2010) (relationship between State's interests and advertising restriction "need not be proven by empirical evidence" but "may be supported by history, consensus, and simple common sense") (internal quotation marks omitted); *Disc. Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 539-540 (6th Cir. 2012) (regardless whether government presented empirical evidence to support restriction, argument "that there is no causal connection between product advertising and the consumer behavior of children" would "stretch[] the bounds of credulity").

The panel here applied intermediate scrutiny in a way that directly conflicts with these precedents. The State defended the law based on the causal link—supported by precedent, common sense, and record evidence— between the influence of advertising and the use of certain products by youth. *See supra* at 5-6. The panel "agree[d] that advertising can

12

theoretically stimulate demand" (Opn. 16) and acknowledged California's arguments that restricting advertising of firearms to minors would "dampen[] demand for firearms among minors" and reduce "the overall likelihood that minors will illegally possess and use those products—not just purchase them" (*id.* at 14 (emphasis removed)). But the panel nonetheless reasoned that the State's regulation did not advance substantial interests based on its own assertion—unsupported by any citation—that "a state can invoke 'common sense' only if the connection between the law restricting speech and the government goal is so direct and obvious that offering evidence would seem almost gratuitous." *Id.* at 15. And it insisted that the State produce additional "evidence" or a specific "anecdote" that "minors are unlawfully using firearms because of advertisements" (*id.* at 17) or that a minor "unlawfully bought a firearm in California" (*id.* at 14).

The panel's flawed reasoning contravenes settled law. Other decisions applying intermediate scrutiny have not required the government to mount an empirical defense of the relationship between advertising and demand, but have accepted that basic logical premise. The panel's reliance on *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) (Opn. 15-16) does not prove otherwise: the plurality there agreed that "common sense supports the conclusion" that a restriction on alcohol price advertising would reduce

13

demand. 517 U.S. at 505 (plurality opinion). That principle was insufficient in that case because of specific evidence in the record that contravened the causal link. *See id.* (plurality opinion) (noting district court's "uncontradicted finding" that regulation would *not* significantly reduce demand for alcohol, as well as evidence showing that demand from "abusive drinker[s] will probably not be deterred").[3] Here, the panel's refusal to credit the State's logic does not rest on comparable facts.

---

[3] The panel also distinguished cases involving limitations on tobacco and alcohol advertisements by claiming that minors cannot legally consume tobacco or alcohol, but can use firearms in California under certain circumstances. Opn. 16 n.2 (citing *Disc. Tobacco*, 674 F.3d at 539-541). But as with firearms, it is not as a blanket matter unlawful for a minor to possess or consume tobacco under federal and California law. *See, e.g.*, Cal. Dep't of Pub. Health, *California Tobacco Retailers Frequently Asked Questions (FAQ) About Tobacco Laws*, at 3 (July 16, 2020), available at https://www.cdph.ca.gov/Programs/CCDPHP/DCDIC/CTCB/CDPH%20Document%20Library/Tobacco21Law/Retail_Tobacco_Laws_FAQ.pdf (describing that federal and state law do not prohibit the possession of tobacco by a person under the age of 21). The panel also pointed out that in *Discount Tobacco*, the record included empirical support showing that advertising contributes to underage substance abuse. Opn. 16 n.2; *see Disc. Tobacco*, 674 F.3d at 540. That is true, but it does not undermine the Sixth Circuit's observation that the connection between advertising and minors' behavior would be plain even without such evidence. *Disc. Tobacco*, 674 F.3d at 540.

## II. THE PANEL MISAPPLIED THE INTERMEDIATE SCRUTINY STANDARD IN HOLDING THAT SECTION 22949.80 IS MORE EXTENSIVE THAN NECESSARY

The Supreme Court and circuit courts have also recognized that a regulation of commercial speech may be sufficiently tailored even if it could be overinclusive in some circumstances. The panel's decision conflicts with that principle because it concludes that the law was more extensive than necessary based solely on the law's hypothetical application to marketing to adults and marketing that promotes rather than undermines public safety.

The fourth and final step of the *Central Hudson* test directs that a restriction on commercial speech must not be "more extensive than necessary to serve the interests that support it." *Greater New Orleans Broad. Ass'n, Inc. v. U.S.*, 527 U.S. 173, 188 (1999). Under intermediate scrutiny, the government need not choose "the least restrictive means," but only "a means narrowly tailored to achieve the desired objective." *Fla. Bar*, 515 U.S. at 632; *see also Lorillard Tobacco Co.*, 533 U.S. at 556. If a statute falls within those bounds, courts "leave it to governmental decisionmakers to judge what manner of regulation may best be employed." *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989).

The Supreme Court has explained that a speech restriction may be "reasonably well tailored to its stated objective" even if it reaches some

speech which does *not* directly serve the interests at hand. *See Fla. Bar*, 515 U.S. at 632-633. In *Florida Bar*, for example, the Court held that an antisolicitation regulation was sufficiently tailored to the state interest in "eliminating targeted mailings whose type and timing are a source of distress to Floridians" (*id.* at 633) despite plaintiffs' contention that the rule was "unconstitutionally overinclusive" because it also reached mailings "to citizens whose injuries or grief are relatively minor" (*id.* at 632-33). In *Lorillard Tobacco Co.*, 533 U.S. 525, the Court embraced similar principles; *Lorillard* thus does not support the panel's heightened view of the tailoring requirement. *Contra* Opn. 19. The Court there also recognized that intermediate scrutiny calls only for a "reasonable fit" between means and ends—which "does not mean that a State must demonstrate that there is no incursion on legitimate speech interests." *Lorillard Tobacco Co.*, 533 U.S. at 561, 565.

This Court, too, has reasoned that the tailoring analysis does not rise and fall based on the mere existence of potentially overbroad applications of the statute. Instead, when it comes to a facial challenge, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *Coyote Publ'g*, 598 F.3d at 610 (quoting *Wash. Mercantile Ass'n v. Williams*, 733 F.2d 687, 692 (9th Cir.

1984)); *Wash. Mercantile Ass'n*, 733 F.2d at 692 (court "need not consider every possible application of the statute that might impermissibly inhibit protected speech"). The Sixth Circuit also applied those principles in *Discount Tobacco*, holding that a restriction on tobacco advertising to minors was sufficiently tailored *even though* it might "sweep[] in vital speech to . . . adult tobacco customers." 674 F.3d at 541.

Again, the panel's decision stands in conflict with other precedents applying intermediate scrutiny. The panel held that Section 22949.80 is not narrowly tailored because it might "potentially" reach an advertisement that promotes a "camouflage-colored" gun for adults, or one that features a "safer gun for minors." Opn. 19. In so reasoning, the panel held the State to an unduly demanding burden of rebutting every conceivable application of the law to speech that does not directly promote gun violence among minors. Under *Central Hudson* and relevant precedent, the tailoring inquiry should have turned on a broader question: whether the chosen regulation reasonably focuses on restricting speech that causes the harms it targets. Section 22949.80 satisfies that standard because it regulates only a narrow category of commercial speech—advertising and marketing that promotes firearm

17

products and are designed, intended, or reasonably appear to be attractive to minors.[4]

## III. THIS CASE INVOLVES QUESTIONS OF EXCEPTIONAL IMPORTANCE

The panel's misapplication of the intermediate scrutiny standard implicates questions of exceptional importance. First, it undermines the State's ability to address the important public safety concerns at the heart of this law. Section 22949.80 represents the Legislature's focused effort to combat the serious problems of gun violence and minors' involvement therein. Opn. 13; *see*, *e.g.*, *Junior Sports Magazines*, 3-ER-417, 3-ER-517-518. By concluding that the law is likely unconstitutional based on an unduly rigorous application of intermediate scrutiny, the panel has impaired the Legislature's "needed leeway" to combat real and pervasive violence

---

[4] The panel's conclusion that the law was not sufficiently tailored also rested on its characterization of the regulation as "effectively constitut[ing] a blanket restriction on firearm-product advertising." Opn. 19. That interpretation is inconsistent with the plain text of the law, which is limited to communications that are attractive to minors based on the totality of the circumstances, including specific statutory factors which, while non-exclusive, all must be considered by a court. *See* Cal. Bus. & Prof. Code § 22949.80(a)(2). It also is inconsistent with the Legislature's stated intent, which expressly centered on "[m]arketing or advertising attractive *to minors*." *Id.* § 22949.80 (emphasis added).

18

that affects the lives of Californians. *See Fox*, 492 U.S. at 481.

Second, the panel's decision will create confusion in future cases involving commercial speech regulation. The Supreme Court has long recognized that "commercial speech [enjoys] a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values," and may be subjected to "modes of regulation that might be impermissible in the realm of noncommercial expression." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978). The panel's imposition of heightened burdens on the State is not consistent with those principles. If the opinion is left in place, it may encourage future challenges to reasonable restrictions on commercial speech—threatening the ability of States and other governments to effectively alleviate pressing harms.

## CONCLUSION

The petition for rehearing en banc in *Junior Sports Magazines* and *Safari Club International* should be granted.

Dated: November 13, 2023    Respectfully submitted,

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MARK R. BECKINGTON
Supervising Deputy Attorney General
GABRIELLE D. BOUTIN
Deputy Attorney General

*/s/ Kevin J. Kelly*

KEVIN J. KELLY
Deputy Attorney General
*Defendant-Appellee Rob Bonta, in His*
*Official Capacity as Attorney General of*
*the State of California*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 22-56090, 23-15199

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App.
P. 32(a)(4)-(6) and **contains the following number of words**: | 3,904 |.

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/Kevin J. Kelly | **Date** | Nov 13, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 11** *Rev. 12/01/2021*

# ADDENDUM

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JUNIOR SPORTS MAGAZINES INC.; RAYMOND BROWN; CALIFORNIA YOUTH SHOOTING SPORTS ASSOCIATION, INC.; REDLANDS CALIFORNIA YOUTH CLAY SHOOTING SPORTS, INC.; CALIFORNIA RIFLE AND PISTOL ASSOCIATION, INCORPORATED; THE CRPA FOUNDATION; GUN OWNERS OF CALIFORNIA, INC.; SECOND AMENDMENT FOUNDATION, | No. 22-56090<br><br>D.C. No.<br>2:22-cv-04663-CAS-JC<br><br><br>OPINION |
| *Plaintiffs-Appellants*, | |
| v. | |
| ROB BONTA, in his official capacity as Attorney General of the State of California; DOES 1 - 10, | |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted June 28, 2023
Pasadena, California

Filed September 13, 2023

Before:  N. Randy Smith, Kenneth K. Lee, and Lawrence
VanDyke, Circuit Judges.

Opinion by Judge Lee;
Concurrence by Judge VanDyke

## SUMMARY[*]

### First Amendment/Commercial Speech

The panel reversed the district court's denial of
plaintiffs' motion for a preliminary injunction seeking to
enjoin, pursuant to the First and Fourteenth Amendments, a
California law that prohibits the advertising of any "firearm-
related product in a manner that is designed, intended, or
reasonably appears to be attractive to minors."  California
Business and Professions Code § 22949.80.

The panel assumed that California's law regulates only
commercial speech and that intermediate scrutiny applies.

Applying intermediate scrutiny, the panel first concluded
that because California permits minors under supervision to
possess and use firearms for hunting and other lawful

---

[*] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

activities, Section 22949.80 facially regulates speech that concerns lawful activity and is not misleading.  Next, the panel held that section 22949.80 does not directly and materially advance California's substantial interests in reducing gun violence and the unlawful use of firearms by minors.  There was no evidence in the record that a minor in California has ever unlawfully bought a gun, let alone because of an ad.  Finally, the panel held that section 22949.80 was more extensive than necessary because it swept in truthful ads about lawful use of firearms for adults and minors alike.  Because plaintiffs had shown a likelihood of success on the merits and the remaining preliminary injunction factors weighed in plaintiffs' favor, the panel reversed the district court's denial of the preliminary injunction and remanded for further proceedings.

Concurring, Judge VanDyke wrote separately to emphasize that laws like section 2249.80, which attempt to use the coercive power of the state to eliminate a viewpoint from public discourse, deserve strict scrutiny.  This circuit's precedent is ambiguous about whether viewpoint-discriminatory laws that regulate commercial speech are subject to strict scrutiny.  In the appropriate case, this circuit should make clear they are.

## COUNSEL

Anna M. Barvir (argued) and Carl D. Michel, Michel & Associates PC, Long Beach, California; Donald Kilmer, Law Offices of Donald Kilmer, Caldwell, Idaho; for Plaintiffs-Appellants.

Gabrielle D. Boutin (argued), Deputy Attorney General, Office of the California Attorney General, Sacramento, California; Kevin J. Kelley, Deputy Attorney General, Mark R. Beckington, Supervising Deputy Attorney General; Thomas S. Patterson, Senior Assistant Attorney General; Rob Bonta, California Attorney General; Office of the California Attorney General, Los Angeles, California; for Defendants-Appellees.

Marc J. Randazza, Randazza Legal Group PLLC, Las Vegas, Nevada; Jay M. Wolman, Randazza Legal Group PLLC, Hartford, Connecticut; for Amicus Curiae Second Amendment Law Center, Jews for the Preservation of Firearm Ownership, and Citizens' Committee for the Right to Keep and Bear Arms.

## OPINION

LEE, Circuit Judge:

This case is not about whether children can buy firearms. (They cannot under California law.) Nor is this case about whether minors can legally use firearms. (California allows minors under adult supervision to possess and use firearms for hunting, target practice, and other activities.) And this

case is not about whether California has tools to combat the scourge of youth gun violence. (It does.)

Rather, this case is about whether California can ban a truthful ad about firearms used legally by adults and minors—just because the ad "reasonably appears to be attractive to minors." So, for example, an ad showcasing a safer hunting rifle with less recoil for minors would likely be unlawful in California. Under our First Amendment jurisprudence, states can ban truthful and lawful advertising only if it "materially" and "directly" advances a substantial government interest and is no more extensive than necessary. California likely cannot meet this high bar.

While California has a substantial interest in reducing gun violence and unlawful use of firearms by minors, its law does not "directly" and "materially" further either goal. California cannot straitjacket the First Amendment by, on the one hand, allowing minors to possess and use firearms and then, on the other hand, banning truthful advertisements about that lawful use of firearms. There is no evidence in the record that a minor in California has ever unlawfully bought a gun, let alone because of an ad. Nor has the state produced any evidence that truthful ads about lawful uses of guns—like an ad about hunting rifles in Junior Sports Magazines' *Junior Shooters*—encourage illegal or violent gun use among minors. Simply put, California cannot lean on gossamers of speculation to weave an evidence-free narrative that its law curbing the First Amendment "significantly" decreases unlawful gun use among minors. The First Amendment demands more than good intentions and wishful thinking to warrant the government's muzzling of speech.

California's law is also more extensive than necessary, as it sweeps in truthful ads about lawful use of firearms for adults and minors alike. For instance, an advertisement directed at adults featuring a camouflage skin on a firearm might be illegal because minors may be attracted to it.

Because Junior Sports Magazines has shown a likelihood of success on the merits and the remaining *Winter* factors favor it, we reverse the district court's denial of preliminary injunction and remand. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## BACKGROUND

### I. California enacts § 22949.80 to prohibit advertising firearm-related products "in a manner that is designed, intended, or reasonably appears to be attractive to minors."

California's gun restriction laws are considered among the strictest of any state in the nation. *2023 Everytown Gun Law Rankings*, Everytown Rsch. & Pol'y (Jan. 12, 2023), https://everytownresearch.org/rankings. Yet firearm-related activities, such as hunting and sport shooting, remain popular among Californians, including minors, across a vast swath of this state. *See, e.g.*, *License Statistics: Hunting Licenses*, Cal. Dept. of Fish & Wildlife (last visited July 24, 2023),
https://wildlife.ca.gov/Licensing/Statistics/action/review/content/6949#huntinglicenses. California allows minors—with the consent or supervision of a parent or guardian—to possess and use firearms for "lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity." Cal. Penal Code §§ 29615, 29610. In fact, California law encourages and incentivizes lawful firearm use among minors. *See, e.g.*,

*Hunting Licenses and Tags*, Cal. Dep't of Fish & Wildlife, https://wildlife.ca.gov/licensing/hunting (offering discounted license fees for "junior hunters," *i.e.*, those under sixteen years old).

Amid concerns about gun violence, however, the California legislature recently became wary of youth interest in firearms. According to the legislature, "the proliferation of firearms to and among minors poses a threat to the health, safety, and security of all residents of, and visitors to, [the] state," as "[t]hese weapons are especially dangerous in the hands of minors." Assemb. B. 2571, Ch. 77 § 1 (Cal. 2022). The legislature thus sought to quell that interest. But rather than repeal California's firearm-possession laws for minors (which could spark opposition from many Californians who use firearms lawfully), the legislature chose to regulate the "firearm industry" by limiting what it can say in the state. The resulting law, Assembly Bill (AB) 2571, is the subject of this appeal.

AB 2571, as later amended by AB 160, is codified at § 22949.80 of the California Business and Professions Code. The statute mandates that "[a] firearm industry member shall not advertise, market, or arrange for placement of an advertising or marketing communication offering or promoting any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors." Cal. Bus. & Prof. Code § 22949.80(a)(1). It thus applies only to marketing or advertising, which it defines as making, "in exchange for monetary compensation, . . . a communication, about a product, the primary purpose of which is to encourage recipients of the communication to engage in a commercial transaction." *Id.* § 22949.80(c)(6). The law does not apply, however, to communications "offering or promoting" firearm safety programs, shooting

competitions, hunting activities, or membership in any organization. *Id.* § 22949.80(a)(3).

For advertisements that fall within the scope of the regulation, § 22949.80 prescribes a totality-of-the-circumstances test to determine whether the marketing is "attractive to minors." *Id.* § 22949.80(a)(2). This assessment considers, for example, whether the advertisement "[o]ffers brand name merchandise for minors"; "[o]ffers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors"; or "[u]ses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related products." *Id.* § 22949.80(a)(2)(B)–(C), (E).

Section 22949.80 is enforced with civil penalties not exceeding $25,000 for each violation, and injunctive relief is available "as the court deems necessary to prevent the harm described in this section." *Id.* § 22949.80(e)(1), (4).

## II. The district court denies Junior Sports Magazines Inc. preliminary injunctive relief against the enforcement of § 22949.80.

Junior Sports Magazines Inc. publishes *Junior Shooters*, a youth-oriented magazine focused on firearm-related activities and products. According to Junior Sports Magazines, its ability to publish *Junior Shooters* depends on advertising revenue. Fearing liability under § 22949.80, Junior Sports Magazines has ceased distributing the magazine in California and has placed warnings on its website deterring California minors from accessing its content.

Shortly after California enacted AB 2571, Junior Sports Magazines challenged its constitutionality under the First

and Fourteenth Amendments. Junior Sports Magazines also moved to preliminarily enjoin the enforcement of § 22949.80. The district court denied the injunction, however, determining that Junior Sports Magazines was not likely to succeed on the merits of its claims. In particular, the court found that § 22949.80 regulates only commercial speech. It thus did not review the law under strict scrutiny—as would typically apply to laws restricting speech—and instead applied the less-stringent intermediate scrutiny standard established by *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). Under this standard, the court found that § 22949.80 is likely constitutional, determining that the law is no more restrictive than necessary to advance the government's substantial interest in reducing unlawful firearm possession and preventing violence. Junior Sports Magazines timely appealed the district court's order.

## STANDARD OF REVIEW

"A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The most important among these factors is the likelihood of success on the merits. *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018). This is especially true for constitutional claims, as the remaining *Winter* factors typically favor enjoining laws thought to be unconstitutional. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 837–38 (9th Cir. 2020) (order).

We review the district court's denial of a preliminary injunction for an abuse of discretion. *Harris v. Bd. of Supervisors*, 366 F.3d 754, 760 (9th Cir. 2004). Whether factual findings satisfy a First Amendment legal standard, like the *Central Hudson* test, however, is reviewed de novo. *See Peel v. Atty. Registration & Disciplinary Comm'n*, 496 U.S. 91, 108 (1990); *Prete v. Bradbury*, 438 F.3d 949, 967 (9th Cir. 2006).

## DISCUSSION

The parties dispute whether we should review § 22949.80 as a restriction of purely commercial speech under the test announced in *Central Hudson* or as a content- and viewpoint-based restriction of speech under strict scrutiny review. We need not decide this issue because "the outcome is the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011). We thus assume that California's law regulates only commercial speech and that *Central Hudson*'s intermediate scrutiny applies.[1]

---

[1] Junior Sports Magazines contends that the Supreme Court in *Sorrell* suggested that even commercial speech restrictions "must be tested by heightened judicial scrutiny" if they are content or viewpoint discriminatory. *Sorrell*, 564 U.S. at 563, 566. But California responds that our court has read *Sorrell* narrowly, holding that intermediate scrutiny still applies for at least content-based restrictions on commercial speech. *See Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 847 (9th Cir. 2017) (en banc). *But see Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 703, 705, 707–08 (6th Cir. 2020) ("[T]he intermediate-scrutiny standard applicable to commercial speech . . . applies only to a speech regulation that is content-neutral on its face."). We, however, do not need to answer this question to decide this case.

And even assuming that intermediate scrutiny applies, California's advertising restriction likely imposes an unconstitutional burden on protected speech.  The state has made no showing that broadly prohibiting certain truthful firearm-related advertising is sufficiently tailored to significantly advance the state's goals of preventing gun violence and unlawful firearm possession among minors. Because California fails to satisfy its burden to justify the proposed speech restriction, Junior Sports Magazines is likely to prevail on the merits of its First Amendment claim.

## I.   Junior Sports Magazine is likely to succeed on the merits of its First Amendment claim.

When a statute restricts only commercial speech, *Central Hudson* provides a multipart test to assess whether the law is constitutional.  Under this framework, we first ask whether the regulated speech is misleading or concerns unlawful activity.  *See Central Hudson*, 447 U.S. at 563–64.  Such speech receives no First Amendment protection.  *See id.*  If the regulated speech "is neither misleading nor related to unlawful activity, the government's power is more circumscribed."  *Id.* at 564.  It thus becomes the state's burden to show that the statute directly and materially advances a substantial governmental interest and that "it is not more extensive than is necessary to further that interest." *Id.* at 566; *see also Edenfield v. Fane*, 507 U.S. 761, 767 (1993); *Sorrell*, 564 U.S. at 572.

We hold that California has failed to justify its infringement on protected speech under the Supreme Court's *Central Hudson* framework.

### A.   Section 22949.80 regulates speech that is not misleading and that concerns lawful activity.

The state contends that § 22949.80 regulates misleading speech about unlawful activity because California law prohibits firearm sales to minors and restricts firearm possession by minors.

But California's argument founders on the fact that it permits minors under adult supervision to possess and use firearms for hunting, shooting competitions, and other lawful activities.  Cal. Penal Code §§ 29615, 29610.  So California's prohibition on advertisements that "reasonably appear[] to be attractive to minors" would include messages about legal use of guns by minors.  For example, many Californians hunt with their children, but it would likely be unlawful for a firearm industry member to show that lawful activity in its advertisements—not because it is misleading or involves illegal acts but because it "[u]ses images or depictions of minors . . . to depict the use of firearm-related products."  Cal. Bus. & Prof. Code § 22949.80(a)(2)(E).

In addition, § 22949.80 does not apply only to speech soliciting minors to purchase or use firearms unlawfully.  Instead, it applies to any advertisements "offering or promoting any firearm-related product in a manner that is designed, intended, or reasonably appears to be *attractive* to minors."    Cal. Bus. & Prof. Code § 22949.80(a)(1) (emphasis added).  Because of this broad wording, § 22949.80 facially encompasses speech directed at adults— who can lawfully purchase firearms—whenever that speech might also reach minors.  That alone refutes the state's argument that the law inherently concerns unlawful activity.  *See Educ. Media Co. at Va. Tech v. Swecker*, 602 F.3d 583, 589 (4th Cir. 2010) ("[A]dvertisements for age-restricted— but otherwise lawful—products concern lawful activity where the audience comprises both underage and of-age members."); *Centro de la Comunidad Hispana de Locust*

*Valley v. Town of Oyster Bay*, 868 F.3d 104, 113–14 (2d Cir. 2017) (holding that "commercial speech is not categorically removed from" *Central Hudson*'s test unless "all manifestations of the restricted speech" are misleading or relate to unlawful activity").

We thus hold that § 22949.80 facially regulates speech whose content concerns lawful activities and is not misleading. We now address whether the state has met its burden to show that the law directly and materially advances a substantial governmental interest and is no more extensive than necessary. We conclude that it has not.

### B. Section 22949.80 does not directly and materially advance California's substantial interests.

California articulates two interests for its speech restriction: (1) preventing unlawful possession of firearms by minors and (2) protecting its citizens from gun violence and intimidation. We recognize that these interests are substantial. *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 435 (2002) (plurality opinion); *Nordyke v. Santa Clara County*, 110 F.3d 707, 713 (9th Cir. 1997).

But simply having a substantial interest does not validate the state's advertising prohibition. Under *Central Hudson*, a state seeking to justify a restriction on commercial speech bears the burden to prove that its law directly advances that interest to a material degree. 447 U.S. at 564; *Edenfield*, 507 U.S. at 770. To satisfy its burden, California must provide evidence establishing "that the harms it recites are real," *Edenfield*, 507 U.S. at 770–71, and that its speech restriction will "*significantly*" alleviate those harms, *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505–06 (1996) (plurality opinion). This burden is at its highest where, as here, a state "takes aim at accurate commercial information," *44*

14      JUNIOR SPORTS MAGAZINES, INC. V. BONTA

*Liquormart*, 517 U.S. at 503, 507 (plurality opinion), in an express effort to regulate "a popular but disfavored product," *Sorrell*, 564 U.S. at 577–79.

California's defense of § 22949.80 falls well short of this requirement. The state insists that the law will advance its substantial interests by dampening demand for firearms among minors. Yet every argument that it makes to bolster this theory lacks supporting evidence.

To start with the obvious, a state may not restrict protected speech to prevent something that does not appear to occur. *See Edenfield*, 507 U.S. at 770–71. Yet here—despite enacting a bill whose statement of purpose asserts that "[f]irearms marketing contributes to the unlawful sale of firearms to minors"—the state admitted at oral argument that it is unaware of a *single* instance in which a minor unlawfully bought a firearm in California (presumably because a minor would not pass background check and other requirements). Assemb. B. 2571, Ch. 77 § 1 (Cal. 2022); *cf. Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 557–61 (2001) (citing multiple studies connecting tobacco-industry advertising to underage tobacco use). And if the state cannot cite a single case of a minor in California unlawfully buying a gun, then an advertisement about firearms logically could not have contributed to such a sale.

Changing tack, the state contends that because firearm advertising generally creates demand for firearm-related products, it also increases the overall likelihood that minors will illegally *possess and use* those products—not just purchase them. The state reasons that by restricting firearm-related advertising, § 22949.80 will materially prevent unlawful firearm possession and limit gun violence. Rather than support this argument with any evidence, California

maintains that "common sense"—which, in reality, is just speculation here—provides all the justification it needs. But the First Amendment requires more than fact-free inferences to justify governmental infringement on speech.

There are certainly cases in which "history, consensus, and 'simple common sense'" are enough to justify a law restricting speech. *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) (quoting *Burson v. Freeman*, 504 U.S. 191, 211 (1992)). But a state can invoke "common sense" only if the connection between the law restricting speech and the government goal is so direct and obvious that offering evidence would seem almost gratuitous. But as the government's justifications for a regulation become more attenuated, bare appeals to common sense quickly veer into impermissible speculation. In such cases, the state needs to provide evidence to substantiate that its law will meaningfully further its stated objectives.

The Supreme Court's decision in *44 Liquormart, Inc. v. Rhode Island*, is instructive. Rhode Island had banned advertising alcohol prices, arguing that the law would decrease price competition and ultimately lead to less alcohol consumption. *44 Liquormart*, 517 U.S. at 489, 504–05. Writing for a plurality of the Court, Justice Stevens conceded that common sense could suggest that a ban on pricing advertisements would tend to lead to less price competition, causing higher market prices. *Id.* at 505. He further assumed that demand for alcohol is "somewhat lower" when prices are higher. *Id.* But the Court concluded that the state had to do more than appeal to common sense and a chain of inferences to prove that the law would "*significantly* advance the State's interest in promoting temperance": it had to provide "evidentiary support." *Id.* (emphasis added); *see also id.* at 523 (Thomas, J.,

concurring) (disagreeing with the plurality's approach as too permissive); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 188–89 (1999) (noting that even if "advertising concerning casino gambling increases demand for such gambling, which in turn increases the amount of casino gambling that produces those social costs . . . . it does not necessarily follow that the Government's speech ban has directly and materially furthered the asserted interest").

California's argument suffers from a similar flaw. To be sure, we agree that advertising can theoretically stimulate demand. *See Coyote Pub., Inc. v. Miller*, 598 F.3d 592, 608 (9th Cir. 2010).[2] But that is not enough here for the simple reason that firearm use by minors is not per se unlawful. As explained earlier, California allows minors to possess and use guns with adult supervision for hunting, shooting competitions, target practice, and other lawful activities. California even encourages demand for gun use by minors by giving permit discounts for young hunters. *See Greater New Orleans Broad*, 527 U.S. at 189 ("[A]ny measure of the effectiveness of the Government's attempt to minimize the social costs of gambling cannot ignore Congress' simultaneous encouragement of tribal casino gambling.").

---

[2] California argues that this truism is enough to meet its burden, citing cases involving limitations on tobacco and alcohol advertisements. *See, e.g.*, *Disc. Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 539–41 (6th Cir. 2012) (underage smoking); *Swecker*, 602 F.3d at 589–90 (underage drinking). But minors cannot legally consume tobacco or alcohol, so ads touting those products to minors would be per se unlawful. In contrast, minors are allowed to use firearms with adult supervision in California for certain activities. Moreover, that advertising contributes to underage substance use is an empirically supported consensus opinion. *See Lorillard Tobacco Co.*, 533 U.S. at 557–61 (citing studies); *Disc. Tobacco*, 674 F.3d at 541.

Given that minors can use guns in California, dampened demand for firearms among minors cannot by itself be a substantial government interest. Rather, decreasing demand for firearms can only be a means to an end for California. Ultimately, the state hopes that § 22949.80's restrictions on truthful advertising will decrease demand for guns, which in turn will "*significantly* reduce" either *unlawful* firearm possession by minors or gun violence. *See 44 Liquormart*, 517 U.S. at 505 (plurality opinion).

But by relying on a chain of inferences, California cannot merely gesture to "common sense" to meet its burden of showing that the law will "significantly" advance its goals. If anything, "common sense" suggests the contrary: minors who unlawfully use guns for violence likely are *not* doing so because of, say, an advertisement about hunting rifles in *Junior Shooters* magazine. The state has provided no evidence—or even an anecdote—that minors are unlawfully using firearms because of advertisements for guns by the firearm industry. With no evidence connecting truthful and lawful firearm advertising to unlawful firearm possession or gun violence, California has not shown that § 22949.80 directly advances its interests to a material degree. *See id.* at 505–07; *Greater New Orleans Broad.*, 527 U.S. at 189. And even if California could provide some evidence, it would have to show that its law restricting speech would "significantly" advance the state's goals. *44 Liquormart*, 517 U.S at 505 (plurality opinion).

In the end, California spins a web of speculation—not facts or evidence—to claim that its restriction on speech will significantly curb unlawful firearm use and gun violence among minors. The First Amendment cannot be so easily trampled through inferences and innuendo. We thus conclude that California has not justified its intrusion on

protected speech.  To hold otherwise "would require us to engage in the sort of 'speculation or conjecture' that is an unacceptable means of demonstrating that a restriction on commercial speech directly advances the State's asserted interest."  *44 Liquormart*, 517 U.S. at 505–07 (plurality opinion) (quoting *Edenfield*, 507 U.S. at 770).

### C.  Section 22949.80 is more extensive than necessary.

Even if California's advertising restriction significantly slashes gun violence and unlawful use of firearms among minors, the law imposes an excessive burden on protected speech.  *Central Hudson* requires the government to show "a reasonable fit between the means and ends of the regulatory scheme," *Lorillard Tobacco Co.*, 533 U.S. at 561, such that the "suppression of speech ordinarily protected by the First Amendment is no more extensive than necessary to further the State's interest," *Central Hudson*, 447 U.S. at 569–70.  So "if the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so."  *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 371 (2002); *see also Central Hudson*, 447 U.S. at 566 n.9 ("We review with special care regulations that entirely suppress commercial speech in order to pursue a nonspeech-related policy.  In those circumstances, a ban on speech could screen from public view the underlying governmental policy."); *Sorrell*, 564 U.S. at 575 (citing *44 Liquormart*, 517 U.S. at 503 (plurality opinion)).

We emphasize again that § 22949.80 is not limited to speech encouraging minors to illegally buy firearms.  Nor is it circumscribed to reach only speech depicting unlawful possession of firearms.  It also is not narrowly focused on speech encouraging minors to engage in unlawful uses of firearms. *See Sorrell*, 564 U.S. at 573.  And it does not target

advertisements in contexts geared exclusively to minors. *See, e.g.*, *Swecker*, 602 F.3d at 590–91 (affirming the constitutionality of an alcohol advertising restriction that applied only to "campus publications targeted at students under twenty-one"). Instead, it applies to any firearm-product advertisement—no matter the audience—so long as it "reasonably appears to be attractive to minors."

Under the plain—and sweeping—language of the statute, a company potentially could not market a camouflage-colored gun for adults because it could "reasonably appear[] to be attractive to minors." § 22949.80(a)(1). And bizarrely, California's law would likely ban advertisements promoting safer guns for minors—for example, a hunting rifle designed for young hunters that has less recoil or that comes with a more secure trigger safety—if they are directed at minors and their parents. *Id.*

In view of its apparent lack of any limiting principles, § 22949.80 effectively constitutes a blanket restriction on firearm-product advertising. A speech restriction of that scope is not constitutionally sound under any standard of review. *See Lorillard Tobacco Co.*, 533 U.S. at 561–65 (determining that a regulation "prohibit[ing] any smokeless tobacco or cigar advertising within 1,000 feet of schools or playgrounds" was too broad because "[i]n some geographical areas, [it] would constitute nearly a complete ban on the communication of truthful information about smokeless tobacco and cigars to adult consumers"); *Valle Del Sol*, 709 F.3d at 826.

Because the state cannot justify its broad advertising restriction, we conclude that Junior Sports Magazines is likely to prevail on the merits of its First Amendment claim.[3]

## II. Because Junior Sports Magazines is likely to succeed on the merits, the remaining *Winter* factors weigh in its favor.

After demonstrating a likelihood of success on the merits of its claim, a party seeking a preliminary injunction must establish that it is "likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "When the government is a party, the last two factors merge." *Azar*, 911 F.3d at 575; *see also Nken v. Holder*, 556 U.S. 418, 435 (2009).

But when a party has established likelihood of success on the merits of a constitutional claim—particularly one involving a fundamental right—the remaining *Winter* factors favor enjoining the likely unconstitutional law. *See Melendres*, 695 F.3d at 1002 ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))); *Index Newspapers*, 977 F.3d at 838 (recognizing "the significant public interest in upholding First Amendment principles" (quoting *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012))). It is no different here.

### CONCLUSION

---

[3] Given this holding, we need not address its constitutional association and equal protection claims.

California has many tools to address unlawful firearm use and violence among the state's youth. But it cannot ban truthful ads about lawful firearm use among adults and minors unless it can show that such an intrusion into the First Amendment will significantly further the state's interest in curtailing unlawful and violent use of firearms by minors. But given that California allows minor to use firearms under adult supervision for hunting, shooting, and other lawful activities, California's law does not significantly advance its purported goals and is more extensive than necessary. In sum, we hold that § 22949.80 is likely unconstitutional under the First Amendment, and we thus **REVERSE** the district court's denial of a preliminary injunction and **REMAND** for further proceedings consistent with this opinion.

VANDYKE, Circuit Judge, concurring,

California wants to legislate views about firearms. The record for recently enacted California Assembly Bill 2751 (AB 2751) indicates a legislative concern that marketing firearms to minors would "seek[] to attract future legal gun owners," and that that's a negative thing. No doubt at least some of California's citizens share that view. They may dream that someday everyone will be repulsed by the thought of using a firearm for lawful purposes such as hunting and recreation. But just as surely some of California's citizens disagree with that view. Many hope their sons and daughters will learn to responsibly use firearms for lawful purposes. Firearms are controversial products, and don't cease to be so when used by minors. But as the majority opinion explains well, there are a variety of

ways a minor can lawfully use firearms in California. And the State of California may not attempt to reduce the demand for lawful conduct by suppressing speech favoring that conduct while permitting speech in opposition. That is textbook viewpoint discrimination.

That is precisely what California did in Assembly Bill 2751. Under this law, those who want to discourage minors from lawfully using firearms (such as for hunting or shooting competitions) are free to communicate their messages. Certain speakers ("firearm industry members") who want to promote the sale of firearms to minors, however, are silenced. I agree with the majority opinion that, even assuming intermediate scrutiny applies, California's nascent speech code cannot withstand it. I write separately to emphasize that laws like AB 2751, which attempt to use the coercive power of the state to eliminate a viewpoint from public discourse, deserve strict scrutiny. Our circuit's precedent is ambiguous about whether viewpoint-discriminatory laws that regulate commercial speech are subject to strict scrutiny. In the appropriate case, we should make clear they are.

## I. The California Legislature and Governor Targeted Speech that Encourages Lawful Conduct They Dislike.

In June 2022, California enacted Assembly Bill 2751. AB 2751 restricts speech on the basis of viewpoint. "If a law is facially neutral, we will not look beyond its text to investigate a possible viewpoint-discriminatory motive." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 899 (9th Cir. 2018). But AB 2751 is not "facially neutral" between viewpoints on the topic of minors using firearms. *Id.* It prohibits advertisements about the use of firearms by

minors that make a "firearm-related product … appear[] to be attractive to minors," while allowing those that don't. Cal. Bus. & Prof. Code § 22949.80(a)(1). More specifically, the law prohibits "firearm industry members" from "advertis[ing], market[ing], or arrang[ing] for placement of an advertising or marketing communication offering or promoting any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors." *Id.* Because the law discriminates on its face, "we may peel back the legislative text and consider legislative history and other extrinsic evidence to probe the legislature's true intent." *Interpipe Contracting, Inc.*, 898 F.3d at 899.

When the text is peeled back, the legislative record indicates an intention that the law will stop the message that minors should lawfully use firearms, and a hope that the law will prevent minors from eventually becoming adults who have a favorable view of gun ownership and use. The very beginning of the legislative analysis of the bill identifies the messages that California attempted to stop in passing AB 2571: messages that "entice children to be interested in possessing and using firearms." One of the legislators who authored AB 2751 lamented in the press release announcing the bill that "[g]un manufacturers view children as their next generation of advocates." Revealing even more animus, the bill's author characterized firearms designed for minors as "disturbing products."

The record also indicates that California viewed stopping youth from possessing firearms as itself a compelling interest, independent of California's concern with gun violence or misuse of firearms. AB 2751 itself includes a finding that California, independent of any concern for gun violence, "has a compelling interest in ensuring that minors do not possess these dangerous weapons." The analysis

prepared for the Assembly Committee on Judiciary explicitly separated California's interest in "protecting its citizens" from its "compelling interest in ensuring that minors do not possess these dangerous weapons."

Elsewhere in the legislative record, it is indicated that the bill "[was] prompted by the incidence of marketing and advertising of firearm-related products to children," advertising that "arguably [sought] to attract future legal gun owners." California is concerned with the prospect of children growing up to become "legal" gun owners. One ostensibly concerning example of marketing was a gun manufacturer marketing a firearm as being "the first in a line of shooting platforms that will *safely* help adults introduce children to the shooting sports." (Emphasis added.**)**. The same analysis quotes a news article stating that some members of the gun industry "see kids as a vital group of future gun buyers who need to be brought into the fold at a young age."

The bill's author warns: "Gun manufacturers view children as their next generation of advocates and customers." Thus, the State must take "away" the "tool" of advertisement "from the gun industry." The author's animus toward positive messages about firearm usage is underlined by the legislative record's reference to a report criticizing the firearm industry's purported attempt to cultivate interest in firearms from minors.

The governor of California, who sponsored the bill, shared the legislature's open animus against the messages targeted by AB 2751. The announcement that Governor Newsom signed the bill stated that the "legislation … directly targets the gun lobby and [firearm] manufacturers." After signing the law, Governor Newsom

took to Twitter and described the messages prohibited by the bill as "sick marketing ploys" and stated that the bill "goes into effect immediately because decent human beings, people with common sense, know that we should not be allowing [these messages]."

The executive branch and the bill's proponents in the legislature did not work in vain to extinguish a viewpoint from the public discussion on firearms. AB 2751 effectively removes one viewpoint from the public conversation over the proper role of firearms in our society, while leaving the opposite viewpoint free to participate. Under AB 2751, those opposed to minors using firearms for competitions, hunting, and other lawful uses may advocate against such usage. Those who "advocat[e] for the purchase, use, or ownership of firearm-related products," however, may not promote firearm-related products to minors, even though the minors can use these products for lawful activities. *See, e.g.*, Cal. Bus. & Prof. Code § 22949.80(a)(1), (c)(4)(B).

Take, for example, a picture depicting a father and son hunting. Without worrying about violating any California law, that picture could be placed in a magazine with the tagline, "Unsafe! Kids Should Shoot Baskets, Not Birds." AB 2751 would, however, prohibit a gun manufacturer from placing an advertisement using that very same picture with the tagline, "Our New Rifle Shoots with Precision and Minimal Recoil—Great for Training Young Shooters to Shoot Safely!" AB 2751 would suppress the latter while permitting the former. "This is blatant viewpoint discrimination." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 124 (2001) (Scalia, J., concurring); *see also Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) (noting that the "essence of viewpoint discrimination" is when a law

"reflects the Government's disapproval of a subset of messages it finds offensive" (citation omitted)).

California has thus singled out a particular message it does not like and prohibited its proliferation. Its intent to stamp out this speech is evident from the record. And it crafted a targeted legislative scheme to get the job done. This kind of effort to stamp out disliked viewpoints deserves the strictest of scrutiny. "A legislature cannot privilege one set of speakers as the good guys, while restraining another set of speakers as the baddies." *Ass'n of Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726, 739 (9th Cir. 1994) (Noonan, J., dissenting).

## II. California's Undisguised Viewpoint-Discrimination Should Be Subjected to Strict Scrutiny.

The First Amendment, almost universally, "forbids" laws that restrict speech on the basis of viewpoint. *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984). The Supreme Court has carved out one exemption allowing the government to discriminate between viewpoints: when the government is itself speaking. *See, e.g.*, *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 541 (2001). The Court has not been so explicit about carving out any restriction from the First Amendment's blanket disapprobation of viewpoint discrimination for when the speech is commercial. Given the strong default rule that viewpoint-discriminatory laws are simply impermissible under the First Amendment, and the lack of an express carveout for commercial speech restrictions, there is no good reason a law like AB 2751 should be subjected to anything less than strict scrutiny. Admittedly, our own circuit's precedent leaves room to argue for a lower level of scrutiny. But as explained below, our precedent doesn't compel a

lower level of scrutiny either. And it would be good for us to clarify in the right case that commercial speech isn't an exception to the almost-universal rule that governmental attempts to police viewpoints are subjected to the highest form of judicial skepticism.

Start with first principles. Government action that regulates speech on the basis of that speech's *content* is inherently suspect and "presumptively unconstitutional" under the First Amendment. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). A content-based restriction regulates the "public discussion of an entire topic." *Id.* at 156 (citation omitted). If California had, for example, prohibited any advertisements related to the use of firearms by minors, then arguably it would have been engaging "only" in content-based discrimination.

But courts have always viewed attempts to regulate *viewpoints* with even greater suspicion than regulating content. Viewpoint discrimination is a type of content discrimination, but a "more blatant" type, *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995), which is why the Supreme Court has described the First Amendment as almost universally "forbid[ding] the government [from] regulat[ing] speech in ways that favor some viewpoints or ideas at the expense of others," *Members of City Council*, 466 U.S. at 804. Viewpoint discrimination falls only a little short of being per se invalid under the First Amendment. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009) (noting that content-based restrictions

"must satisfy strict scrutiny," but "restrictions based on viewpoint are prohibited").[1]

Indeed, the reason for this "pocket of absolutism" in the Court's First Amendment jurisprudence, where it almost never permits viewpoint-discriminatory speech restrictions, is not hard to comprehend.[2] "The First Amendment creates an open marketplace in which differing ideas about political, economic, and social issues can compete freely for public acceptance without improper government interference." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 309 (2012) (cleaned up). When the government attempts to stamp out the presentation of one viewpoint, no matter how much the government may dislike it, it short-circuits the public's ability to reason together. "The best test of truth is the power of the thought to get itself accepted in the competition of the market, and the people lose when the government is the one deciding which ideas should prevail." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2375 (2018) (cleaned up).

---

[1] The Supreme Court has repeatedly emphasized the First Amendment's near-absolute prohibition on laws that restrict speech based on the viewpoint of the speaker. *See Fowler v. Rhode Island*, 345 U.S. 67, 69–70 (1953) (citing *Niemotko v. Maryland*, 340 U.S. 268, 273–73 (1951)); *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209 (1975); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 785–86 (1978); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 48–49 (1983); *Members of City Council*, 466 U.S. at 804; *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993); *Rosenberger*, 515 U.S. at 828–29; *Iancu*, 139 S. Ct. at 2299.

[2] Rodney A. Smolla, *Smolla & Nimmer on Freedom of Speech* § 4:8.

Putting first principles to the side, the Supreme Court has also stated that "the Constitution … accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980). California argues that this means that AB 2751 need withstand only *Central Hudson*'s intermediate scrutiny. But as multiple circuits have indicated, even though *content*-based speech restrictions on commercial speech must only survive intermediate scrutiny, there is good reason to conclude that a law restricting commercial speech on the basis of *viewpoint* merits strict scrutiny. *See Greater Phila. Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 139 (3d Cir. 2020) ("We realize, of course, that it may be appropriate to apply strict scrutiny to a restriction on commercial speech that is viewpoint-based."); *Dana's R.R. Supply v. Att'y Gen., Fla.*, 807 F.3d 1235, 1248 (11th Cir. 2015) ("[M]erely wrapping a law in the cloak of 'commercial speech' does not immunize it from the highest form of scrutiny due government attempts to discriminate on the basis of viewpoint."); *cf. Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 708 (6th Cir. 2020) (applying strict scrutiny to a restriction of commercial speech based on content).

The Supreme Court has never invoked *Central Hudson* to apply intermediate scrutiny to a law that discriminates between viewpoints, even in the commercial context. *Cf. R.A.V. v. City of St. Paul*, 505 U.S. 377, 434 (1992) (Stevens, J., concurring in the judgment) (noting that "in upholding subject-matter regulations we have carefully noted that viewpoint-based discrimination was not implicated"). The closest the Supreme Court has come to addressing whether commercial speech restrictions enjoy an exemption from the

default rule of strict scrutiny for viewpoint discrimination was in *Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011). The Court there described the law's "practical operation" as "go[ing] beyond mere content discrimination[] to actual viewpoint discrimination." *Id.* at 565. The Court thus concluded that "heightened judicial scrutiny [was] warranted." *Id.* Although it did not there define "heightened judicial scrutiny," the Court cited two cases, one of which discussed intermediate scrutiny and one of which discussed strict scrutiny. *See id.* (citing *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 418 (1993) (discussing intermediate scrutiny), and *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994) (discussing strict scrutiny)).

The Supreme Court noted that it could apply either "a special commercial speech inquiry," *i.e.*, something like *Central Hudson*'s intermediate scrutiny, "or a stricter form of judicial scrutiny." *Id.* at 571. The Court then assumed without deciding that something like *Central Hudson*'s intermediate scrutiny applied because "the outcome [was] the same" regardless of which scrutiny the Court applied. *Id.* But if the Court in *Sorrell* had definitely concluded that commercial speech restrictions receive less than strict scrutiny even when they target certain viewpoints, it would have been odd for it to merely assume that something like intermediate scrutiny applied. *Sorrell* thus suggests that the Supreme Court has never carved out commercial speech from the default rule that viewpoint-discriminatory speech restrictions invoke strict scrutiny. It certainly doesn't compel the opposite conclusion.

The fact that the Supreme Court has never expressly exempted commercial speech from the standard application of strict scrutiny for viewpoint-discriminatory laws is especially probative given that the Court *has* exempted

government speech, and done so expressly. As several members of the Court pointed out, "[i]t is telling that the Court's precedents have recognized just one narrow situation in which viewpoint discrimination is permissible: where the government itself is speaking or recruiting others to communicate a message on its behalf." *Matal v. Tam*, 582 U.S. 218, 253 (2017) (Kennedy, J., concurring in part and concurring in the judgment). "[W]hen the government speaks for itself, the First Amendment does not demand airtime for all views." *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1587 (2022). By contrast, the Court has never clearly exempted commercial speech.

Indeed, it is not even clear that our own circuit's precedent requires we subject a law like AB 2751 to anything less than strict scrutiny. California cites *Retail Digital Network, LLC v. Prieto* to support its contention that AB 2751, even if content-based, should receive only intermediate scrutiny. *See* 861 F.3d 839, 846 (9th Cir. 2017) (en banc). That is because our court there held that *Sorrell* did not change the applicability of *Central Hudson*'s intermediate scrutiny test to content-based restrictions on commercial speech. *Id.* at 849. Then-Chief Judge S.R. Thomas wrote a persuasive dissent in that case, explaining how our court misread *Sorrell*. *Id.* at 851. I agree with him that *Sorrell* "requires 'heightened judicial scrutiny,' rather than traditional intermediate scrutiny under *Central Hudson*." *Id.*

But putting aside whether *Retail Digital Network* was correctly decided, it is not obvious that the analysis in *Retail Digital Network* even controls laws that, like here, discriminate on the basis of viewpoint. Our court in *Retail Digital Network* never discussed the relevance of the test applied in *Sorrell* to *viewpoint*-based restrictions on

commercial speech.  The court instead reasoned that *Sorrell* did not change the applicability of *Central Hudson* to *content*-based restrictions on speech.  *Id.* at 848–49.  While *Retail Digital Network* does not mention viewpoint-discrimination, one could argue that, in describing the scrutiny applicable to restrictions of commercial speech on the basis of *content*, our court also implicitly set the level of scrutiny applicable to restrictions of commercial speech on the basis of *viewpoint*—because the latter is a subset of the former.  *See Rosenberger*, 515 U.S. at 829.  But the Supreme Court has also been clear in regularly distinguishing "mere" content-based discrimination from the even more troubling viewpoint-based discrimination.  *See R.A.V.*, 505 U.S. at 391 ("In its practical operation, moreover, the ordinance goes even beyond mere content discrimination, to actual viewpoint discrimination.").  I have my doubts that we should read a level of scrutiny applicable to less concerning laws (content-based restrictions), as automatically applying to more concerning laws (viewpoint-based restrictions)—especially given that the First Amendment all but flatly prohibits those more concerning laws.

In short, there are good reasons to believe the First Amendment subjects viewpoint-discriminatory commercial speech restrictions to strict scrutiny.  I see a lot in the Supreme Court's precedent supporting that conclusion, and nothing in our precedent preventing it.  But there is no need to wrestle these questions to the ground in this case.  In the appropriate case where it makes a difference, we should look at that question closely—and I would be surprised and disappointed if the result was that we failed to subject to strict scrutiny a law that targets speech because of its viewpoint.

***

The Court long ago held that commercial speech deserves less protection under the First Amendment than other speech. *See Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 563. Many have criticized the coherence and foundation of that position. *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 520 & n.2 (1996) (Thomas, J., concurring in part and concurring in the judgment) (collecting cases). This case illustrates one aspect of the damage done to our republic by the commercial speech doctrine. It has become an attractive nuisance to reactive legislatures that reflexively attempt to target ideas the legislature finds disagreeable. AB 2751 is a particularly egregious example. The summary of AB 2751 emphasizes a belief that, just because a law addresses commercial speech, the government enjoys a carveout from the typical scrutiny applied to a law that directly targets ideas and messages for suppression. In other words, the record suggests that California believed it could rely on the courts' lessened protection for "commercial speech" to get away with activity—suppressing ideas and messages the government merely finds disagreeable—that strikes right at the heart of the First Amendment.

But even *Central Hudson* recognized that we should "review with special care regulations that entirely suppress commercial speech in order to pursue a nonspeech-related policy." 447 U.S. at 566 n.9. What might justify a truly neutral regulation cannot "save a regulation that is in reality a facade for viewpoint-based discrimination." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 811 (1985). As the majority opinion correctly concludes, California here did such a bad job that its attack on a disfavored viewpoint cannot even withstand intermediate scrutiny. But we should be cognizant of the risks that the commercial speech doctrine

engenders from governments eager to impose their vision of rightthink on the people.  And in the appropriate case, we should carefully consider whether our precedent and the Supreme Court's precedent are truly open to the manipulation of free speech by governments that clothe their disapprobation of certain viewpoints in restrictions on commercial speech.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 22 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL, an Arizona nonprofit corporation; et al., <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> ROB BONTA, in his official capacity as Attorney General of the State of California, <br><br> Defendant-Appellee. | No. 23-15199 <br><br> D.C. No. 2:22-cv-01395-DAD-JDP <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Argued and Submitted June 28, 2023
Pasadena, California

Before: N.R. SMITH, LEE, and VANDYKE, Circuit Judges.

Safari Club International, et al., challenge the district court's order denying a

preliminary injunction against the enforcement of California's recently enacted

firearm-advertising law. Cal. Bus. & Prof. Code § 22949.80. For the reasons

outlined in *Junior Sports Magazines v. Bonta*, No. 22-56090 (9th Cir. Sept. 13,

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

2023), we reverse the denial of preliminary injunction and remand for further proceedings consistent with that opinion.

**REVERSED** and **REMANDED.**