*Appeal No. 23-15199*

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SAFARI CLUB INTERNATIONAL,
an Arizona nonprofit corporation, et al.,

Plaintiff-Appellants,

v.

ROB BONTA, in his official capacity as
Attorney General of the State of California,

Defendant-Appellee.

On Appeal from the United States District Court
for the Eastern District of California
Hon. Dale A. Drozd
Case No. 2:22-cv-01395-DAD-JDP

## APPELLANTS' OPPOSITION TO PETITION FOR REHEARING EN BANC

Michael B. Reynolds
Colin R. Higgins
Cameron J. Schlagel
SNELL & WILMER L.L.P.
600 Anton Blvd, Suite 1400
Costa Mesa, California 92626-7689
Telephone: 714.427.7000
Facsimile: 714.427.7799
mreynolds@swlaw.com
chiggins@swlaw.com
cschlagel@swlaw.com

Attorneys for Plaintiff-Appellants

TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT .........................................................................................................4

I.  The Panel's Decision Faithfully and Correctly Applies Both Supreme Court and Ninth Circuit Precedent. ............................................................4

  A.  Section 22949.80 Does Not Directly and Materially Advance California's Interests. ...................................................................5

  B.  Section 22949.80 Is Not Narrowly Tailored. ....................................11

    1.  The State Erroneously Assumes Advertising Prohibited by Section 22949.80 Causes Illegal Firearm Possession and Violence by Minors. ............................................................11

    2.  California Utterly Fails To Address Less Restrictive Alternatives. ..................................................................13

II. This Case Does Not Involve Questions of Exceptional Importance. ...........15

CONCLUSION ....................................................................................................15

Certificate of Compliance ....................................................................................16

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*44 Liquormart, Inc. v. Rhode Island*,
   517 U.S. 484 (1996) .................................................................................. passim

*Bad Frog Brewery, Inc. v. New York State Liquor Auth.*,
   134 F.3d 87 (2d Cir. 1998) ................................................................................. 9

*Barr v. Am. Ass'n of Pol. Consultants*,
   140 S. Ct. 2335 (2020) ........................................................................................ 5

*Bigelow v. Virginia*,
   421 U.S. 809 (1975) ............................................................................................ 9

*Bolger v. Youngs Drug Prods.*,
   463 U.S. 60 (1983) .............................................................................................. 9

*Brown v. Ent. Merchants Ass'n*,
   564 U.S. 786 (2011) ....................................................................................... 7, 14

*Carey v. Population Servs. Int'l*,
   431 U.S. 678 (1977) ............................................................................................ 9

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
   447 U.S. 557 (1980) .................................................................................. passim

*Edenfield v. Fane*,
   507 U.S. 761 (1993) .................................................................................. 6, 8, 10

*Greater New Orleans Broad. Ass'n v. United States*,
   527 U.S. 173 (1999) .................................................................................... 10, 13

*Greater New Orleans Broad. Ass'n v. United States*,
   528 U.S. 173 (1999) ............................................................................................ 5

*Ibanez v. Florida. Dep't of Bus. & Pro. Regulations, Bd. of Accountancy*,
   512 U.S. 136 (1994) ............................................................................................ 6

*Lorillard Tobacco Co. v. Reilly*,
   533 U.S. 525 (2001) .................................................................................. 5, 7, 11

*Project 80's, Inc. v. City of Pocatello*,
   942 F.2d 635 (9th Cir. 1991) ....................................................................... 13, 14

*Rubin v. Coors Brewing Co.*,
   514 U.S. 476 (1995) .............................................................................. 10, 11, 12

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ........................................................................................ 3, 8

*Thompson v. Western States Medical Center*,
   535 U.S. 357 (2002) .......................................................................................... 12

# TABLE OF AUTHORITIES
(continued)

Page(s)

*United States v. Playboy Entm't Grp., Inc.*,
  529 U.S. 803 (2000)..................................................................................14
*Valle Del Sol Inc. v. Whiting*,
  709 F.3d 808 (9th Cir. 2013) ....................................................................14
*Victory Processing, LLC v. Fox*,
  937 F.3d 1218 (9th Cir. 2019) ..................................................................14
*WV Ass'n of Club Owners and Fraternal Services, Inc. v. Musgrave*,
  553 F.3d 292 (4th Cir. 2009) ......................................................................6
*Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*,
  471 U.S. 626 (1985)....................................................................................6

**Statutes**

Cal. Bus. & Prof. Code § 17200 .................................................................14
Cal. Bus. & Prof. Code § 17500 .................................................................14
Cal. Bus. & Prof. Code § 22949.80 ....................................................... passim
Cal. Bus. & Prof. Code § 22949.80(a)(1) ....................................................2
Cal. Civ. Code § 1714.3 ..............................................................................14
Cal. Pen. Code § 25100................................................................................14
Cal. Pen. Code § 27505................................................................................14
Cal. Pen. Code § 27510................................................................................14
Cal. Pen. Code § 29610................................................................................14
Cal. Pen. Code § 29650................................................................................14

**Rules**

Fed. R. App. P. 35..........................................................................................1

**Other Authorities**

2022 Cal. Stats., Ch. 77, §§ 1(b) & 3............................................................2
AB 2571 .........................................................................................................2

**INTRODUCTION**

In June 2022, the California Legislature opened a new chapter in its decades-long assault on the First Amendment rights of firearm industry members and proponents of hunting and the shooting sports. Section 22949.80 of California's Business and Professions Code restricts truthful speech concerning the lawful use of firearms by adults and minors. The statute was motivated by animus. California hopes its speech restrictions will stunt the growth of Second Amendment culture among future generations and stifle demand for lawful firearm products.

A three-judge panel of this Court correctly concluded that California's sweeping advertising ban likely violates the First Amendment. In reaching that conclusion, the panel faithfully followed *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980). The State disagrees with the panel's application of *Central Hudson*, but fails to establish that the panel decision conflicts with precedent as Rule 35 requires. Nor does the State explain why en banc review is necessary at the preliminary injunction stage of the proceedings.

California targets a disfavored viewpoint under the pretext of regulating commercial speech. But even assuming Section 22949.80 regulates only commercial speech (and is not subject to strict scrutiny because it is content- and viewpoint-based), California failed to show that the law directly and materially

1

advances its interest in the prevention of illegal firearm possession and violence among minors. It also failed to show the statute is narrowly tailored to achieve those interests. It is Section 22949.80, not the panel's decision invalidating it, that is the constitutional outlier. This Court should not grant further review.

## BACKGROUND

On June 30, 2022, "to further restrict the marketing and advertising of firearms to minors," the California Legislature passed, and Governor Newsom signed into law, AB 2571, adding Section 22949.80 to California's Business and Professions Code. 2022 Cal. Stats., Ch. 77, §§ 1(b) & 3. Then, in August 2022, the Legislature amended Section 22949.80, attempting unsuccessfully to cure some of the statute's numerous constitutional infirmities.

As amended, Section 22949.80 broadly prohibits "firearm industry members" from making, distributing, or arranging for the placement of "an advertising or marketing communication" that offers or promotes "any firearm-related product" in a manner that "is designed, intended, or reasonably appears to be attractive to minors." Cal. Bus. & Prof. Code § 22949.80(a)(1). The statute restricts speakers, like Appellants, who engage in a broad range of communications and advertisements concerning lawful Second Amendment conduct, for example, magazine articles about youth engagement in shooting-sports activities.

Appellants challenged Section 22949.80 because, among other things, it violates their First Amendment right to free speech.[1] Appellants promptly moved to preliminarily enjoin enforcement of Section 22949.80. The district court denied their motion, holding in relevant part that Appellants were not likely to succeed on their free speech claim.[2]

Applying commercial speech scrutiny under *Central Hudson*, the panel reversed. Slip Op.6.[3] It first held that Section 22949.80 regulates nonmisleading speech concerning lawful activities. Slip Op.12–13.[4] The panel also recognized California's substantial interest in "(1) preventing unlawful posession of firearms by minors and (2) protecting its citizens from gun violence and intimidation." Slip Op.13. However, the panel concluded the statute violates the First Amendment because it does not directly and materially advance California's interests and, due to its lack of limiting principles, is more extensive than necessary. Slip Op.13–20.

Judge VanDyke wrote separately to address the unresolved question "about whether viewpoint-discriminatory laws that regulate commercial speech are

---

[1] *See* 3-ER-555–601 (First Amend. Compl.).
[2] *See* 1-ER-16–29.
[3] A two-judge majority declined to address Appellants' argument that Section 22949.80 is content- and viewpoint-based, reasoning "the outcome [would be] the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied." Slip Op.10 (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011)).
[4] California does not contest the panel's findings on the first two prongs of the *Central Hudson* test.

3

subject to strict scrutiny." Slip Op.21. Drawing from evidence in the legislative record showing that Section 22949.80 was enacted to curb interest among minors in firearms and lawful Second Amendment activities, Judge VanDyke explained the statute "effectively removes one viewpoint from the public conversation over the proper role of firearms in our society, while leaving the opposite viewpoint free to participate." Slip Op.25. Therefore, in view of the "strong default rule that viewpoint-discriminatory laws" are presumptively unconstitutional and "the lack of an express carveout for commercial speech restrictions," Judge VanDyke concluded "California's undisguised viewpoint-discrimination should be subjected to strict scrutiny." Slip Op.26. Judge VanDyke nonetheless joined the majority's opinion because California "did such a bad job that its attack on a disfavored viewpoint cannot even withstand intermediate scrutiny." Slip Op.33.

## ARGUMENT

**I. THE PANEL'S DECISION FAITHFULLY AND CORRECTLY APPLIES BOTH SUPREME COURT AND NINTH CIRCUIT PRECEDENT.**

The test for commercial speech is composed of four steps. A court first determines whether the restricted speech is protected, meaning it "must concern lawful activity and not be misleading." *Cent. Hudson*, 447 U.S. at 566. Second, the government must show that the asserted interest is substantial. *Id.* Then, "[i]f both inquiries yield positive answers," a court "must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more

4

extensive than is necessary to serve that interest." *Id.* The panel faithfully applied this standard.

The statute's blatant viewpoint discrimination cries out for strict scrutiny. At least three Supreme Court justices would apply strict scrutiny here. *See, e.g.*, *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335, 2347 (2020) (Kavanaugh, J., plurality); *id* at 2364 (Gorsuch, J., concurring in the judgment and dissenting in part); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 572 (2001) (Thomas, J., concurring in part and concurring in the judgment). But the majority declined to break new ground and instead followed the well-trodden path that is the commercial speech doctrine. This undermines California's argument at the outset. It begs the question why the panel would decline to hold that viewpoint-based restrictions of commercial speech are subject to strict scrutiny, only to then rely on a novel application of *Central Hudson*.

The answer is simple: the panel did not misapply *Central Hudson*. Rather, California essentially proposes rational basis review, an obvious and direct conflict with Supreme Court and circuit precedent.

A. **Section 22949.80 Does Not Directly and Materially Advance California's Interests.**

The third *Central Hudson* step requires the government to show "the speech restriction directly and materially advances the asserted governmental interest[s]." *Greater New Orleans Broad. Ass'n v. United States*, 528 U.S. 173, 188 (1999).

5

"The State's burden is not slight." *Ibanez v. Florida. Dep't of Bus. & Pro. Regulations, Bd. of Accountancy*, 512 U.S. 136, 143 (1994). "[S]peculation or conjecture" is not enough—the government "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993); *see also Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 646 (1985) (rejecting "common sense" argument, holding that "broad prophylactic rules may not be so lightly justified if the protections afforded commercial speech are to retain their force"). Otherwise, "a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression." *Id.* at 771.

California argues that Section 22949.80 can be justified based solely "on common sense." Pet.9–10. The panel supposedly erred by holding that "a state can invoke 'common sense' only if the connection between the law restricting speech and the government goal is so direct and obvious that offering evidence would almost seem gratuitous." Pet.13 (quoting Slip Op.15). *Cf. WV Ass'n of Club Owners and Fraternal Services, Inc. v. Musgrave*, 553 F.3d 292, 303 (4th Cir. 2009) (under *Central Hudson*, courts "do not simply defer to [the government's] contention because it is a legislative judgment").

But the panel merely noted the obvious point that "common sense" is lacking where the regulation "provides only ineffective or remote support for the government's purpose . . . , or if there is 'little chance' that the restriction will advance the State's goal." *Lorillard Tobacco*, 533 U.S. at 566 (cleaned up). What is more, "common sense" does not stand alone under the Supreme Court's standards—it is conjunctive with *history and consensus*. *See Lorillard Tobacco*, 533 U.S. at 555. But California focuses solely on the purported "common sense" support for the regulation—it does not explain how its self-described novel approach is supported by history and consensus. *Cf. Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 795 (2011) ("California's argument would fare better if there were a longstanding tradition in this country of specially restricting children's access to depictions of violence, but there is none.").

In any event, the burden on this prong "is at its highest where, as here, a state 'takes aim at accurate commercial information.'" Slip Op.13 (quoting *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505–06 (1996)). Unsurprisingly, the State simply ignores the panel's conclusion that "even if California could provide some evidence, it would have to show that its law restricting speech would 'significantly' advance the state's goal." Slip Op.17.

The panel did not "arbitrarily reject[] the State's argument that firearm advertisements directed at minors increase the likelihood that minors will illegally

7

purchase, possess, and use firearms." Pet.9. Nor did the panel "demand[] that the State make an empirical showing to justify that obvious relationship." *Id.* Instead, the problem is that the "common sense" connection the State relies on simply does not exist. *See* Slip Op.14–17. "If anything, 'common sense' suggests" that "minors who unlawfully use guns for violence likely are *not* doing so because of, say, an advertisement about hunting rifles. . . ." Slip Op.17. *Cf. Edenfield*, 507 U.S. at 772 (the record tended to "contradic[t], rather than strengthe[n]," the state's argument).

Despite citing a litany of cases applying the "common sense" standard, California still fails to show how "common sense" demonstrates that a reduction in advertising-stimulated demand will significantly alleviate the targeted harms of unlawful firearm possession and violence by minors. Slip Op.13. California instead relies on the conclusory assertion that there is a "causal link—supported by precedent, common sense, and record evidence—between the influence of advertising and the use of *certain products* by youth." Pet.12 (emphasis added).

This creative phrasing is a sleight of hand: for reasons that are quite apparent, California does *not* assert an interest in preventing the *lawful use* of firearms by minors;[5] rather, it claims a narrower interest in preventing *illegal*

---

[5] The State conspicuously avoids claiming this broad interest because there is no legitimate interest in paternalistically reducing demand for a legal product (or worse, the exercise of a constitutional right). *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011) (states may not advance policy goals "through the indirect means of restraining certain speech by certain speakers" just because it "finds [the] expression

8

firearm possession and violence. In view of the substantial barriers to purchasing firearm-related products, however, it strains credulity to suggest that minors are obtaining firearms through illegal sales, let alone due to advertising influences. The real problem is not that minors obtain firearms via *purchase*, but rather that they come to possess these firearms through unsupervised *access*. But the State failed to show that advertising restrictions will alleviate these harms in a material way.

In the face of existing State and federal laws strictly regulating firearm sales, the State's "common sense" argument that advertising restrictions will provide anything but the most "marginal degree of protection" against illegal possession or firearm violence cannot be credited. *Bolger v. Youngs Drug Prods.*, 463 U.S. 60, 73 (1983). The issues of unlawful possession and violence are far too attenuated from the commercial transaction for Section 22949.80's broad advertising ban to have a material effect. *Bad Frog Brewery, Inc. v. New York State Liquor Auth.*, 134 F.3d 87, 99 (2d Cir. 1998) (law "that makes only a minute contribution to" advancing the state's interest does not satisfy *Central Hudson*). California does not—and cannot—address this logical disconnect.

---

too persuasive"); *Bolger*, 463 U.S. at 69 (similar); *Bigelow v. Virginia*, 421 U.S. 809, 827–28 (1975) (no legitimate state interest in "shielding its citizens from information" about constitutionally-protected activities). To acknowledge this would be to admit that Section 22949.80 is not based on the elimination of harmful advertising effects, but rather, on the censorial theory that favorable messages about firearms must be suppressed. *See Carey v. Population Servs. Int'l*, 431 U.S. 678, 701, n.28 (1977).

Instead, the State points to studies showing advertising affects demand for *non-firearm products* generally. That falls far short of demonstrating a causal link between legitimate firearm-related product advertising and illegal firearm possession or violence by minors. *See* Pet.4–6, 9. Even "[a]ssuming the accuracy of [a] causal chain" between lawful advertising and illegal purchases, "it does not necessarily follow that the [State's] speech ban has directly and materially furthered the asserted interest" in curbing illegal firearm possession or violence by minors. *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 189 (1999).

Given the lack of any intuitive connection here, the panel correctly concluded that California's appeal to "common sense" is nothing more than an attempt to rely on impermissible speculation. Slip Op.15. California does not seriously contest that conclusion, nor does it explain how this logic conflicts with precedent. *Cf.* Pet.12–14. Speech restrictions are routinely invalidated where, as here, the government fails to provide even anecdotal support for its "common sense" suppositions. *See, e.g.*, *Edenfield*, 507 U.S. at 772; *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 491 (1995). The panel here did not foist an empirical standard on the State to the exclusion of "common sense" considerations—it simply concluded that "common sense" did not support California's argument. Slip Op.17. That conclusion is wholly consistent with precedent. *See, e.g.*, *44 Liquormart, Inc.*,

10

517 U.S. at 505 (despite some inferential support, the state "presented no evidence to suggest that its speech prohibition [would] *significantly*" advance its interest); *Rubin*, 514 U.S. at 488 ("common sense" did not overcome "the overall irrationality" of the regulatory scheme).

**B.      Section 22949.80 Is Not Narrowly Tailored.**

The final step of *Central Hudson* requires the government to prove "the speech restriction is not more extensive than necessary to serve the interests that support it." *Lorillard Tobacco*, 533 U.S. at 556 (cleaned up). The "last step of the *Central Hudson* analysis 'complements' the third step." *Lorillard Tobacco*, 533 U.S. at 556.

**1.      The State Erroneously Assumes Advertising Prohibited by Section 22949.80 Causes Illegal Firearm Possession and Violence by Minors.**

California argues the panel erred because it "held the State to an unduly demanding burden of rebutting every conceivable application of the law to speech that does not directly promote gun violence among minors." Pet.17. According to the State, the panel should have focused on a broader question: "whether the chosen regulation reasonably focuses on restricting speech that causes the harms it targets." Pet.17. This argument is fatally flawed because it assumes firearm-related product advertising "causes" illegal firearm possession and gun violence among minors. Pet.17. As discussed in the preceding section, however, California has

11

made no such showing. The State also fails to identify a conflict with precedent; instead it regurgitates legal standards without explaining how the panel erred in applying them. *See* Pet.15–18.

As the panel correctly observed, the fourth step of *Central Hudson* reflects the view that, "[i]f the First Amendment means anything, it means that regulating speech must be a last—not first—resort." *Thompson v. Western States Medical Center*, 535 U.S. 357, 373 (2002). Thus, where options are "availab[le] . . . all of which could advance the [g]overnment's asserted interest in a manner less intrusive to . . . First Amendment rights," a speech restriction is "more extensive than necessary" and is invalid. *Rubin*, 514 U.S. at 491. Courts thus "review with special care regulations that entirely suppress commercial speech in order to pursue a nonspeech-related policy." Slip Op. 18 (quoting *Cent. Hudson*, 447 U.S. at 566 n.9). That is precisely what Section 22949.80 does: it suppresses commercial speech to combat the nonspeech-related issue of gun violence. Courts rightly treat such regulations with skepticism because "a ban on speech could screen from public view the underlying governmental policy." *Cent. Hudson*, 447 U.S. at 566 n.9; *see also 44 Liquormart*, 517 U.S. at 497–98 (citing cases invalidating restrictions of commercial speech unrelated to consumer protection).

With this concern in mind, the panel correctly emphasized Section 22949.80's sweeping language: it "applies to any firearm-product advertisement—

12

no matter the audience—so long as it 'reasonably appears to be attractive to minors." Slip.Op.19. Contrary to California's contention, the statute "is not limited to speech encouraging minors to illegally buy firearms," nor is it restricted to "reach only speech depicting unlawful possession of firearms." Slip Op.18; *cf.* Pet.17–18. It is not narrowly focused on "speech encouraging minors to engage in unlawful uses of firearms," and it targets advertisements beyond "contexts geared exclusively to minors." *Id.* (citations omitted).[6] Given "its apparent lack of any limiting principles," the panel reasoned, "[Section] 22949.80 constitutes a blanket restriction on firearm-product advertising." Slip.Op.19. On its face, Section 22949.80 is substantially overbroad in relation to its plainly legitimate sweep, which is narrow given the already-attenuated relationship to the State's interests.

### 2. California Utterly Fails To Address Less Restrictive Alternatives.

California's simplistic argument also overlooks the numerous "practical and nonspeech-related forms of regulation" that "could more directly and effectively" accomplish the professed goals of preventing illegal firearm possession and violence among minors. *Greater New Orleans Broad.*, 527 U.S. at 192. The State did not have "to choose suppression over a less speech-restrictive policy." *44 Liquormart*, 517 U.S. at 509; *see Project 80's, Inc. v. City of Pocatello*, 942 F.2d

---

[6] *See, e.g.*, 2-ER-216.

13

635, 638 (9th Cir. 1991) ("restrictions which disregard far less restrictive and more precise means are not narrowly tailored"). California could, *inter alia*: (1) strictly enforce its laws prohibiting unlawful firearm purchases, *see, e.g.*, Cal. Pen. Code §§ 25100, 27505, 27510, 29610, 29650; Cal. Civ. Code § 1714.3; (2) bring enforcement actions under existing laws that prohibit unfair business practices, including false or misleading advertisements, s*ee, e.g.*, Cal. Bus. & Prof. Code §§ 17200 & 17500; or (3) sponsor educational programs on firearm safety.

The availability of these plausible, less-restrictive alternatives underscores Section 22949.80's lack of tailoring. *See Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 826–27 (9th Cir. 2013) (invalidating speech restriction where enforcement of preexisting laws would serve the government's interest without burdening speech); *Project 80's, Inc.*, 942 F.2d at 638. California had the burden to explain why these less-restrictive alternatives are insufficient. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000). The State failed even to address these plausible alternatives, let alone to demonstrate, based on more than supposition, that they are ineffective. *Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1228 (9th Cir. 2019) ("the state must provide more than . . . supposition"). This "raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Brown*, 564 U.S. at 802.

14

## II. THIS CASE DOES NOT INVOLVE QUESTIONS OF EXCEPTIONAL IMPORTANCE.

The panel's decision does not implicate questions of exceptional importance. First, the opinion does not undermine California's ability to "address the important public safety concerns at the heart of [Section 22949.80]." Pet.18. If the advertising-related harms California recites are indeed real, they can be addressed by enforcing existing laws prohibiting the sale of firearms to minors and false advertisements (or any related "unlawful" or "unfair" business practices). Second, because the panel faithfully applied the relevant standards, and in view of longstanding commercial speech jurisprudence, there is no risk of "confusion in future cases involving commercial speech regulation." Pet.19. California's contention that the panel's decision may "encourage future challenges to reasonable restrictions on commercial speech" is speculative.

## CONCLUSION

For the foregoing reasons, the Court should deny the petition for rehearing en banc.

Dated: January 25, 2024     SNELL & WILMER L.L.P.

By: */s/ Michael B. Reynolds*
Michael B. Reynolds
Colin R. Higgins
Cameron J. Schlagel

Attorneys for Plaintiff-Appellants

15

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure, Rule 27 because it contains 3,355 words according to the word count feature of the word processor used to prepare this brief, and complies with the type face and type style requirements of Rule 32 because it uses a 14-point proportionally-spaced font.

Dated: January 25, 2024    SNELL & WILMER L.L.P.

By: */s/ Michael B. Reynolds*
Michael B. Reynolds
Colin R. Higgins
Cameron J. Schlagel

Attorneys for Plaintiff-Appellants